IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| NEW LOUISIANA HOLDINGS, LLC, | ) | Chapter 11 |
| et al. | ) | |
| Debtors. | ) | Case No. 14-50756 |
| | ) | |
| | ) | Jointly administered |

**MOTION OF SPRINGDALE HEALTH CENTERS, LLC AND LONGHORN PROPERTIES, INC. FOR ORDER (I) REQUIRING PRODUCTION OF DOCUMENTS, AND (II) AUTHORIZING THE ORAL EXAMINATION OF <u>REPRESENTATIVES OF THE DEBTORS</u>**

TO THE HONORABLE ROBERT R. SUMMERHAYS,
UNITED STATES BANKRUPTCY JUDGE:

Springdale Health Centers, LLC ("Springdale") and Longhorn Properties, Inc. ("Longhorn") (together, "Springdale"), creditors and parties in interest in these proceedings, file this motion (the "Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, requesting production of documents and authority to take the oral examination (the "Rule 2004 Examination") of the representative(s) (the "Representative(s)") of the Debtors (defined below). In support thereof, Springdale respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for relief requested herein are Bankruptcy Rule 2004 and Rule 2004-1 of the Local Bankruptcy Rules of the Bankruptcy Court for the Western District of Louisiana.

**BACKGROUND**

3. Commencing on June 25, 2014, New Louisiana Holdings, LLC, Acadian 4005

Tenant, LLC, Atrium 6555 Tenant, LLC, Citiscape 5010 Tenant, LLC, Fountain View 215 Tenant, LLC, Jackson Manor 1691 Tenant, LLC, Lakewood Quarters Assisted 8585 Tenant, LLC, Lakewood Quarters Rehabilitation 8225 Tenant, LLC, Regency 14333 Tenant, LLC, St. Charles 1539 Tenant, LLC, and Sherwood 2828 Tenant, LLC (collectively, the "Initial Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. Thereafter, on July 28, 2014, SA-PG Operating Holdings, LLC, SA-PG Ocala, LLC, SA-PG Clearwater, LLC, SA-PG Gainesville, LLC, SA-PG Jacksonville, LLC, SA-PG Largo, LLC, SA-PG North Miami, LLC, SA-PG Orlando, LLC, SA-PG Pinellas, LLC, SA-PG Port St. Lucie, LLC, SA-PG Sun City Center, LLC, SA-PG Tampa, LLC, SA-PG Vero Beach, LLC, SA-PG West Palm Beach, LLC, SA-PG Winter Haven LLC (collectively, the "Florida Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Together, the Initial Debtors and Florida Debtors are referred to herein as the "Debtors."

5. Springdale formerly leased, as landlord, certain nursing facilities in Florida to the Florida Debtors pursuant to leases with SA-PG Operating Holdings, LLC ("SA-PG Operating") and subleases between SA-PG Operating and the other Florida Debtors. The leases with SA-PG Operating expired by their terms on October 31, 2013, but the Florida Debtors remain liable to Springdale for various breaches of those leases, including but not limited to unpaid rent, unpaid taxes, and various other charges and breaches under the leases. On or about November 27, 2013, Springdale filed a lawsuit against the Florida Debtors in Florida state court for the amounts due under the leases. Springdale was preparing to move for summary judgment in that matter when the Florida Debtors filed for bankruptcy protection. Springdale estimates that its claim against the Florida Debtors related to the breach of leases will exceed $6 million.[1] Further, Springdale

---

[1] Springdale's debt is scheduled in the SA-PG Operating case in the incorrect amount of approximately $3.2 million.

2

and certain of its affiliates have additional claims against the Florida Debtors related to an Operations Transfer Agreement that was executed in connection with a transition of the leased properties from the Florida Debtors to new operators of the facilities. Those claims could exceed $2 million. Accordingly, Springdale is by far the largest non-insider creditor of any of the Debtors.

6. The Debtors' cases are jointly administered under the New Louisiana Holdings, LLC case number. According to the Debtors' pleadings, of the twenty-six Debtor entities, the only operating entity is Regency 14333 Tenant, LLC ("Regency"), which operates a single nursing home in Baton Rouge, Louisiana. As set forth in Regency's statement of financial affairs, its gross revenue was approximately $6.3 million and $5.9 million for the years 2013 and 2012 respectively. Regency's schedules indicate that it has only $1.6 million in assets[2] compared to approximately $2.8 million in debt. Accordingly, Regency's operations appear to be minimal at best.

7. On August 25, 2014, each of the Florida Debtors filed their respective schedules and statement of financial affairs. As with the Initial Debtors, the Florida Debtors' assets are allegedly very limited. Indeed, other than approximately $25,000 in cash held at SA-PG Operating, the Florida Debtors' schedules alleged only assets are receivables of approximately $1.3 million from an unnamed entity with the same address as the Debtors. While, the Florida Debtors' schedules identify a significant amount debt allegedly owing to affiliates, the respective statement of financial affairs appears to omit any transfers of funds to those affiliates. It is clear from a cursory review of all of the Debtors' schedules that there was a complicated web of intercompany transactions that occurred prior to these filings. What is not clear from the various

---

[2] Regency's assets are primary made up of cash of approximately $337,642 and an approximate $1 million account receivable from an unnamed entity with the same address as all of the Debtors.

schedules and statement of financial affairs is the basis for these transfers and the impact that such transfers may have had upon the estates.

8. The Debtors have engaged two law firms to assist in these bankruptcy cases. Neligan Foley LLP ("Neligan") is the lead law firm, and according to Neligan's employment application, it was paid a $260,000 retainer, of which $240,000 was paid by Cypress Health Group - - an affiliate of the Debtors. The Debtors have also retained Baker Donelson Bearman Caldwell & Berkowitz, P.C. ("Baker"). Baker's retainer of $50,000 was entirely paid by Cypress Health Group.

## ARGUMENTS AND AUTHORITIES

9. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

10. The purpose of Bankruptcy Rule 2004 is "to show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *Cameron v. United States,* 231 U.S. 710, 717 (1914)).

> The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purpose of the examination is to enable a party to probe into matter which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquire is allowed.

*In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 378 (Bankr. N.D. Ill. 1996). It is well established that a Bankruptcy Rule 2004 exam "can be in the nature of a fishing expedition." *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr.E.D.N.Y. 1983)(denying motion to quash 2004 exam of third party, where third party was interconnected with debtor, even paying the legal fees of individuals associated with the debtor.")

4

11. Pursuant to Bankruptcy Rule 2004, a party in interest may examine any entity in a Chapter 11 case on the following:

    a. the acts, conduct, or property or to the liabilities and financial condition of the debtor;

    b. any matter which may affect the administration of the debtor's estate;

    c. any matter which may affect the debtor's right to a discharge;

    d. the operation of any business and the desirability of its continuance;

    e. the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given therefor; and

    f. any other matter relevant to the case or to the formulation of a plan.

FED. R. BANKR. P. 2004(b).

12. Here, the Debtors have filed twenty-five chapter 11 proceedings for entities that allegedly have little to no assets. Moreover, the only operating Debtor in this labyrinth of entities - - Regency - - is a relatively small nursing home with what appear to be limited assets. Notwithstanding the lack assets and/or operations, the Debtors have engaged two law firms, and affiliates or insiders have paid almost $300,000 to those firms for what would otherwise appear to be cases that could have been simply filed under chapter 7. Indeed, if the non-operating cases had been filed as a chapter 7, a trustee would have the authority and duty to investigate these Debtors and their affiliates to determine why the Debtors have little to no assets and whether any avoidable transfers have been made in the period of time leading up to the filings. Under Bankruptcy Rule 2004, Springdale has the right to obtain discovery from the Debtors related to these filings, the assets (or alleged lack thereof), and the Debtors' plans for moving forward.

13. Pursuant to Bankruptcy Rule 2004, Springdale respectfully requests that the Court enter an order (A) requiring the Debtors to produce the documents on the attached Exhibit "A" to Springdale on or before October 3, 2014 (or at such other time and place as agreed to in writing

5

by Springdale and the Debtors), and (B) authorizing Springdale to take the oral examination(s) of the Debtors' Representative(s) concerning the subject matters on the attached Exhibit "B" on October 14, 2014 (or at such other time and place as agreed to in writing by the Springdale and the Debtors)[3].

WHEREFORE, Springdale respectfully requests that the Court grant the relief requested herein and grant Springdale such other relief to which Springdale is entitled.

Dated: September 2, 2014

Respectfully submitted,

CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, L. L. C.

By: ____/s/ David F. Waguespack____
David F. Waguespack, T.A. (#21121)
Stephen P. Scullin, Bar No. 30717
1100 Poydras Street, Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Telecopier: (504) 585-3801

HOLLAND & KNIGHT LLP
Robert W. Jones (Texas State Bar No. 10951200)
Brent R. McIlwain (Texas State Bar No. 24013140)
(*Pro Hac Vice* to be filed)
200 Crescent Court, Suite 1600
Dallas, Texas 75201-8001
Telephone: (214)-964-9500
Telecopier: (214)-964-9501

*Attorneys for Springdale Health Centers, LLC Springdale and Longhorn Properties, Inc.*

---

[3] The request for production of documents set forth on Exhibit A and the subject matters listed on Exhibit B are governed by the definitions set forth in Exhibit C attached hereto.

## CERTIFICATE OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1

Pursuant to Local Bankruptcy Rule 2004-1, the undersigned counsel for the Springdale attempted to contact Patrick Neligan, counsel for the Debtors in an attempt to coordinate a mutually satisfactory date, time and place for the examination of the Debtor. As of the filing of this motion, the parties have not been able to reach a resolution, but will continue to work to reach agreement prior to a hearing on the matter.

                                                       */s/ Brent R. McIlwain.*
                                                       Brent R. McIlwain

## CERTIFICATE OF SERVICE

This is to certify that service of this document has been made on the 2nd day of September, 2014 by electronic service through the Court's transmission facilities upon those persons listed as recipients of electronic notice on the Notice of Electronic Filing document generated by the Court's System at the time of the filing of this document.

                                                       /s/ David F. Waguespack
                                                     David F. Waguespack

# EXHIBIT A

## INSTRUCTIONS

A.        The scope of these Requests for Production (each a "Request", and collectively, the "Requests") is not limited to evidence that would be admissible evidence before the Bankruptcy Court, but includes evidence that would reasonably lead to the discovery of admissible evidence.

B.        The Documents must be produced as they are kept in the ordinary course of business or organized and labeled to correspond with the categories of Documents described herein.

C.        Any Documents produced in electronic format shall be provided in native format.

D.        In the event that You object to any of the following Requests, the reasons for the objection shall be stated. The objections are to be signed by the attorney making them.

E.        In responding to the Requests, You must furnish all available information. If You cannot respond to the following Requests in full after exercising reasonable diligence to secure the information to do so, You must so state and respond to the extent possible. If You refuse to produce a Document is stated on the grounds that the answer or production is unduly burdensome, You must identify the number and nature of Documents needed to be searched, the location of the Documents, and the estimated number of work hours and costs required to conduct the search.

F.        Whenever a Request calls for a Document that is withheld on a claim of privilege or work product or for any other reason, You must provide a list identifying, for each Document, the following: the privilege claimed; the date, subject matter, and location of the Document; the identities of the Persons who authored and received it; the identity of each Person to whom the contents have been communicated; and the specific part of the Request to which the Document is responsive.

G.        Whenever a Request calls for a Document that is not available to You in the form requested but which is available in another form or can be obtained at least in part from another form, You must so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

H.        All Documents that relate or respond, in whole or in part, to any Request or the subject matter thereof shall be produced in their entirety, including all attachments and enclosures. All copies of all such Documents (including drafts, translations and/or non-identical copies of such Documents) that have handwritten or other notations, comments, underlining, or marks of any kind also shall be produced in their entirety, without abbreviation or redaction.

I.        Whenever a Request calls for a Document that has been destroyed or otherwise disposed of or transferred, identify each such Document and state the date of, and the circumstances and reasons for, such destruction or disposal; identify the Persons responsible for the destruction or disposal of the Document and the Persons who have knowledge of the said

8

destruction or disposal; and provide all other information that would be of use (i) in obtaining the Document, a copy thereof, or the data contained in the Document, or (ii) in ascertaining the causes of, and circumstances surrounding, the Document's destruction or disposal. If the Document was destroyed or disposed of by You, describe Your procedures and policies for Document destruction and retention in effect at the time of the Document's destruction or disposal, and identify each Document that constitutes, refers to, or relates to each such policy or procedure.

      J.      In lieu of producing originals or copies thereof, You may, at Your option, submit legible photographic or other reproductions of such Documents, provided that the originals or copies from which such reproductions were made are retained by You until the disposition of this litigation.

      K.      All uses of the conjunctive should be interpreted as including the disjunctive and vice versa. Words in the singular should be interpreted as including the plural and vice versa. Words in the present tense should be interpreted as including the past tense and vice versa. Words of one gender should be interpreted as including the other gender.

      L.      Each Request shall be considered a continuing request. If, after production, You obtain or find further responsive Documents, then You must promptly produce such additional Documents in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

      M.      If You do not have any Documents in your possession, custody, access or control that are responsive to a particular Request, or if no Documents exist which are responsive to a particular Request, Your response to that Request should indicate unambiguously that You do not have any Documents responsive to the Request or that no Documents exist which are responsive to that Request.

      N.      Each Request seeks information relating to the period from June 25, 2010, through the date You answer or supplement Your answer, inclusive, unless the Request specifies another time period.

# REQUEST FOR PRODUCTION OF DOCUMENTS

1. All Documents and Communications reviewed by any Representative in preparation for the Rule 2004 Examination(s).

2. All bank statements, deposits and withdrawal receipts, wire transfers and related Documents for all bank accounts or other financial accounts maintained by or on behalf of the Debtors from June, 25, 2013 to the present.

3. All Documents and Communications which embody, relate or refer to bank statements concerning the Debtors' bank accounts or other financial accounts from June, 25, 2013 to the present.

4. All Documents and Communications which embody, relate or refer to any transfer of monies from the Debtors' bank accounts or other financial accounts to any Affiliates, the Schwartzberg Trusts, or Cypress.

5. All Documents and Communications which embody, relate or refer to any transfer of any assets of any of the Debtors to any Affiliates, the Schwartzberg Trusts, or Cypress.

6. All Documents and Communications which embody, relate or refer to any management fees or expenses paid by any of the Debtors to any management company, including, but not limited to, Cypress.

7. All Documents and Communications which embody, relate or refer to any payments made from the Debtors' to Halcyon Rehabilitation, or any of its Affiliates.

8. All Documents and Communications which embody, relate or refer to any payments made from the Debtors to any Affiliates.

9. All Documents and Communications which embody, relate or refer to any revenues received by the Florida Debtors.

10. All Documents and Communications which embody, relate or refer to any collection of accounts receivable or other monies, including but not limited to any collections from Medicare or Medicaid, by any of the Florida Debtors, or on behalf of any of the Florida Debtors, from October 31, 2012 to present.

11. All Documents and Communications which embody, relate or refer to any credit facilities, loan agreements, or other financial accommodations to which any of the Florida Debtors are or were a party.

12. All Documents and Communications which embody, relate or refer to any credit facilities loan agreements, or other financial accommodations, pursuant to which any of the Florida Debtors guaranteed any liability of any other Person.

13. All Documents and Communications which embody, relate or refer to any funds made available to any of the Florida Debtors from any credit facilities, loan agreements, or other

financial accommodations of any of the Debtors or Affiliates of the Debtors.

14. All Documents and Communications which embody, relate or refer to the payment of any obligations under any credit facilities, loan agreements, or other financial accommodations, by any of the Debtors or Affiliates of any of the Debtors with revenue generated by the Florida Debtors or in connection with operation of the Florida Debtors.

15. All Documents and Communications which embody, relate or refer to any debt or liability allegedly owing from the Debtors to any Affiliates, the Schwartzberg Trusts or Cypress, including but not limited to the $39,012,210.14 alleged debt listed on the "List of Creditors Holding 20 Largest Unsecured Claims" filed in the SA-PG Operator Holdings, LLC case, Docket No. 2, filed on July 28, 2014.

16. All Documents and Communications which embody, relate or refer to the account receivable in the amount of $1,083,431.92 listed on Regency 14333 Tenant, LLC's schedule B filed with the Bankruptcy Court on August 6, 2014.

17. All Documents and Communications which embody, relate or refer to any Medicare or Medicaid cost reports filed by any of the Florida Debtors, or on behalf of the Florida Debtors, from October 2010 to present.

18. All of the Debtors' tax returns, including both state and federal, for the taxable years 2010-2013, including all attachments thereto.

19. All Documents and Communications which embody, relate or refer to any of the Debtors' failure to timely file tax returns or pay tax liability, whether imposed by the federal, state or local government or other regulatory agency.

20. Documents sufficient to identify the officers, directors and owners and/or managers of each of the Debtors.

21. Documents sufficient to identify the officers, directors, owners and/or managers of all other entities owned or controlled (whether directly or indirectly) by the Schwartzberg Trusts.

22. Documents sufficient to identify the officers, directors, owners and/or managers of all other entities owned or controlled (whether directly or indirectly) by Cypress.

23. All certificates of formation, limited liability company agreements, and all similar or equivalent organizational documents of the Debtors.

24. All Documents and Communications which embody, relate or refer to any board of director meetings, manager meetings, or any equivalent meetings of parties in control of or in charge of managing the Debtors.

25. All Documents and Communications which embody, relate or refer to any management agreements to which any of the Debtors is or was a party, or pursuant to which any of the Debtors is or was operated.

11

26. All Documents and Communications which embody, relate or refer to any intercompany transfers or claims as between the respective Debtors.

27. All management and employment agreements relating to stockholders, executive officers, and key employees of the Debtors (including, without limitation, change-in-control and "parachute" contracts, stockholders or similar agreements, voting and co-sale agreements, and other agreements relating to corporate governance and control matters).

28. Documents sufficient to identify the current legal ownership of each of the Debtors.

29. All Documents and Communications which embody, relate or refer to any schedules filed by any of the Debtors or on behalf of any of the Debtors.

30. All financial statements of the Debtors (whether in draft or final format), including, but not limited to, balance sheets, cash flow statements, income statements, operating reports, budges, projections and pro formas relating to the operation and financial performance of the Debtors.

31. All monthly operating reports for the Debtors (whether in draft or final format), whether such reports are drafts or final reports and whether or not such reports were filed with the bankruptcy court.

# EXHIBIT B

## MATTERS ON WHICH EXAMINATION IS REQUESTED

1. All Documents and Communications reviewed by any Representative in preparation for the Rule 2004 Examination.

2. All Documents produced by the Debtors or on behalf of the Debtors with respect to the Rule 2004 Examination.

3. The Debtors' schedules and statement of financial affairs filed in the each of the Debtors' bankruptcy cases.

4. Any and all litigation any of the Debtors are involved in and matters related thereto.

5. The financial performance of the Debtors.

6. The ownership and management of each of the Debtors.

7. The utilization of revenue generated by the Florida Debtors or in connection with operation of the Florida Debtors.

8. Any and all transfers made by any of the Debtors to any Affiliates of the Debtors from June 25, 2010 to present.

9. The collection of accounts receivable by the Debtors for period of June 25, 2013 to present.

10. The maintenance and operation of the Florida Debtors' facilities.

11. The Debtors' potential chapter 11 reorganization and any other matters related to the Chapter 11 cases.

12. Any and all transfers made by the Debtors to any of the other Debtors or to any Affiliates.

# EXHIBIT C

## DEFINITIONS

As used in <u>Exhibit A</u> and <u>Exhibit B</u>, the following terms shall have the meaning(s) set forth below, regardless of whether the defined term is capitalized or in its plural form:

**A.      "And" and "or" shall be construed disjunctively as well as conjunctively. The use of the word "including" shall be construed without limitation.**

**B.      "Affiliate" means any parent, subsidiary or other Person controlling, controlled by or under common control with such person. For purposes of this definition, "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.**

**C.      "Bankruptcy Court" means the United States Bankruptcy Court, Western District of Louisiana, Lafayette Division.**

**D.      "Communication" means any exchange or transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether written or oral, including, but not limited to, any Documents or exchanges of information in conversation and correspondence. The terms include, without limitation of generality, both communications and statements which are face-to-face, and those which are transmitted by means of intercom, telephone, television, radio, electronic mail or the regular mail.**

**E.      "Cypress" means Cypress Health Group, LLC, Cypress Master Holdings, LLC, CHG Legacy Group & Affiliates, as well as all their present and former Affiliates, managers, managing members, members, directors, officers, employees, brokers, agents, attorneys, and representatives and/or other persons acting on their joint or individual behalf.**

**F.      "Debtors" refers collectively to the Initial Debtors and the Florida Debtors.**

**G.      "Documents" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes writings of every kind, source, and authorship, both originals and/or all non-identical copies thereof, in Your possession, custody, or control, or known by You to exist, irrespective of whether the writing is one intended for or transmitted internally by You, or intended for or transmitted to any other Person or entity, including, without limitation, any government agency, department, administrative entity, or personnel. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include all Communications, whether in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration, and not limitation, the term shall**

14

include: correspondence; transcripts of testimony; letters; notes; reports; papers; files; books; other Communications sent or received; diaries; calendars; logs, notes, or memoranda of telephonic or face-to-face conversations; term sheets; drafts; work papers; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, and other records of obligations and expenditures; canceled checks, vouchers, receipts, and other records of payments; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including published books, articles, speeches, and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; parts lists; memoranda of all kinds to and from any Person, agency, or entity; evaluations, advice, recommendations, commentaries, conclusions, studies, tests, manuals, procedures, data, reports, and results; records of administrative, technical, and financial actions taken or recommended; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

**H.** "Each," "any" and/or "all" mean "each, any, and all."

**I.** "Embody," "Refer," or "Relate" mean constituting, reflecting, relating to, concerning, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, or evaluating.

**J.** "Florida Debtors" mean SA-PG Operating Holdings, LLC, SA-PG Ocala, LLC, SA-PG Clearwater, LLC, SA-PG Gainesville, LLC, SA-PG Jacksonville, LLC, SA-PG Largo, LLC, SA-PG North Miami, LLC, SA-PG Orlando LLC, SA-PG Pinellas LLC, SA-PG Port St. Lucie LLC, SA-PG Sun City Center LLC, SA-PG Tampa LLC, SA-PG Vero Beach LLC, SA-PG West Palm Beach LLC, and SA-PG Winter Haven LLC, as well as all their present and former Affiliates, managers, managing members, members, directors, officers, employees, brokers, agents, attorneys, and representatives and/or other persons acting on their joint or individual behalf.

**K.** "Initial Debtors" mean New Louisiana Holdings, LLC, Acadian 4005 Tenant, LLC, Atrium 6555 Tenant, LLC, Citiscape 5010 Tenant, LLC, Fountain View 215 Tenant, LLC, Jackson Manor 1691 Tenant, LLC, Lakewood Quarters Assisted 8585 Tenant, LLC, Lakewood Quarters Rehabilitation 8225 Tenant, LLC, Regency 14333 Tenant, LLC, St. Charles 1539 Tenant, LLC, and Sherwood 2828 Tenant, LLC, as well as all their present and former Affiliates, managers, managing members, members, directors, officers, employees, brokers, agents, attorneys, and representatives and/or other persons acting on their joint or individual behalf.

**L.** "Person" means all individuals and entities, and shall be deemed to include natural Persons, firms, partnerships, associations, organizations, joint ventures, corporations, affiliates, and any other entities.

15

**M.** "Relate or refer," "relating or referring," "reflect," "reflecting," "concern," "concerning," "involve," and "involving" mean in any way to comprise, constitute, describe, discuss, evidence, identify, memorialize, reflect, support, refute, make a statement about, deal with, consist of, refer to, relate to, pertain to, or being in any way logically or factually connected with, in whole or in part, the subject matter of the discovery Request.

**N.** "Representative" means the Person or Persons designated by the Debtors to provide or assist the Person or Persons who provide oral testimony at the 2004 Exam.

**O.** "Rule 2004 Exam" means the examination Debtors' representative(s) ordered by the Bankruptcy Court.

**P.** "Schwartzberg Trusts" means the Harris Schwartzberg 2004 GST Trust 1, the Judith Schwartzberg Starer 2004 GST Trust, the Schwartzberg Family 2004 GST Trust, and the Schwartzberg 2004 Descendants trust, or any other trust or related entity that owns or controls any of the Debtors.

**Q.** "You", "Your", "Yourself or "Yourselves" means, unless a particular Request specified otherwise, the Debtor, any employee, agent, or representative of the Debtor, and each person acting or having authority to act on behalf of the Debtor, all affiliates of the Debtor, and all subsidiaries of the Debtor.

4821-4848-6174, v. 1