IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, | § | CASE NO. 14-50756 |
| et al. | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

### DEBTORS' OBJECTION TO MOTION FOR RELIEF
### FROM STAY FILED BY THE ESTATE OF RUTH CORNELIUS

SA-PG Ocala, LLC ("Ocala") and SA-PG Operator Holdings, LLC ("PG Holdings"), two of the debtors and debtors-in-possession in the above-captioned, jointly administered bankruptcy cases (collectively, the "Debtors"),[1] file this objection (the "Objection") to the motion for relief from stay (the "Motion") [Docket No. 126] filed by the Estate of Ruth Cornelius, by and through MaryLew DePatto (the "Movant"), and in support state as follows:

### I. PRELIMINARY STATEMENT

1.  Ocala and PG Holdings, together with certain affiliated entities (collectively, the "Palm Garden Debtors"),[2] commenced their bankruptcy cases on July 28, 2014, in part to efficiently resolve the large number of personal injury litigation claims and other liabilities

---

[1] The "Debtors" in the above-captioned, jointly-administered bankruptcy cases are: New Louisiana Holdings, LLC; Acadian 4005 Tenant, LLC; Atrium 6555 Tenant, LLC; Citiscape 5010 Tenant, LLC; Fountain View 215 Tenant, LLC; Jackson Manor 1691 Tenant, LLC; Lakewood Quarters Assisted 8585 Tenant, LLC; Lakewood Quarters Rehab 8225 Tenant, LLC; Panola 501 Partners, LP; Regency 14333 Tenant, LLC; Retirement Center 14686 Tenant, LLC; Sherwood 2828 Tenant, LLC; St. Charles 1539 Tenant, LLC; Woodland Village 5301 Tenant, LLC; SA-PG Ocala LLC; SA-PG Operator Holdings LLC; SA-PG Clearwater LLC; SA-PG Gainesville LLC; SA-PG Jacksonville LLC; SA-PG Largo LLC; SA-PG North Miami LLC; SA-PG Orlando LLC; SA-PG Pinellas LLC; SA-PG Port St. Lucie LLC; SA-PG Sun City Center LLC; SA-PG Tampa LLC; SA-PG Vero Beach LLC; SA-PG West Palm Beach LLC; SA-PG Winterhaven LLC; SA-Lakeland, LLC; SA-Clewiston, LLC; SA-St. Petersburg, LLC; CHC-CLP Operator Holding, LLC; CHC-SPC Operator, Inc.; Cypress Health Care Holdings, LLC; and Cypress Health Care Management, LLC.

[2] The "Palm Garden Debtors" include SA-PG Operator Holdings, LLC, SA-PG Ocala, LLC, SA-PG Clearwater, LLC, SA-PG Gainesville, LLC, SA-PG Jacksonville, LLC, SA-PG Largo, LLC, SA-PG North Miami, LLC, SA-PG Orlando, LLC, SA-PG Pinellas, LLC, SA-PG Port St. Lucie, LLC, SA-PG Sun City Center, LLC, SA-PG Tampa, LLC, SA-PG Vero Beach, LLC, SA-PG West Palm Beach, LLC, and SA-PG Winter Haven LLC.

1

asserted against the Palm Garden Debtors following the cessation of their operations. Commencing their Chapter 11 cases provides an opportunity to resolve those liabilities in a centralized forum – this Court – instead of dealing with them on an ad hoc basis . An efficient resolution of such claims is in the best interests of the Palm Garden Debtors, their estates and all creditors because funds that would otherwise be spent litigating such claims in various forums can instead be used to pay creditor claims.

2. As of its petition date, at least eight (8) personal injury litigation claims were pending against Ocala, whereas PG Holdings was responding to thirty (30) such claims. Collectively, the Palm Garden Debtors were facing fifty-eight (58) such claims. Thus, the Movant is one of dozens of personal injury claimants that are asserted against the Palm Garden Debtors, and the Motion must be viewed in that context.

3. The Motion should be denied for multiple reasons. First and foremost, Movant has failed to carry her burden of proof in demonstrating "cause" to lift the stay. Second, granting the Motion will encourage similarly situated claimants to file motions seeking relief from stay, which would force the Debtors to expend substantial time and resources litigating dozens of claims around the country. Third, the Motion should be denied because Ocala and PG Holdings are self-insured, and will bear the costs of defending and paying any judgment or settlement. Thus, the Motion is based on an erroneously belief that there are insurance proceeds available to satisfy Movant's claim should she prevail. Finally, even if there were any insurance proceeds, the Motion should still be denied as those proceeds should be available to satisfy the allowed claims of all similarly situated creditors and not just those of Movant, if any.

2

14-50756 - #149 File 09/08/14 Enter 09/08/14 18:04:18 Main Document Pg 2 of 11

## II. FACTUAL & PROCEDURAL BACKGROUND

4. Commencing on June 25, 2014 and periodically thereafter (as applicable, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Palm Garden Debtors commenced their Chapter 11 cases on July 28, 2014 (the "Palm Garden Petition Date"). The Debtors' respective cases are being jointly-administered under the caption *In re New Louisiana Holdings, LLC*, Case No. 14-50756.

5. Prior to the Palm Garden Petition Date, the Palm Garden Debtors operated skilled nursing facilities in Florida. More specifically, Ocala operated a skilled nursing facility in Ocala, Florida that did business under the name of Palm Garden of Ocala. Due to the dramatic increase in nursing home litigation activity in the state of Florida over the past decade, increasing numbers of insurers have abandoned the Florida market which has resulted in more facilities, included those operated by the Palm Garden Debtors, being forced to self-insure themselves. In 2010, PG Holdings obtained a fronting policy from American Safety Indemnity Company that provided professional liability coverage in the aggregate amount of $1,500,800 (the "Policy"). Ocala and certain other of the Palm Garden Debtors were named as additional insureds. Claims made under the policy were administered by Millenia Claims Management, and all expenses associated with defending and paying such claims were paid by the Palm Garden Debtors. As of the Palm Garden Petition Date, the limits under the policy had been reached and all funds had been exhausted. Consequently, the Palm Garden Debtors believe that there is no coverage or available funds remaining under the Policy.

6. Prior to the Palm Garden Petition Date, Movant commenced an action against Ocala and PG Holdings styled *Ruth Ada Cornelius Deceased, by and through her Personal Representative, MaryLew DePatto v. SA-PG-Ocala LLC d/b/a Palm Garden of Ocala and SA-*

3

*PG-Operator Holdings LLC*, Case No. 12-2279-CA-G, in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, State of Florida Civil Division (the "Cornelius Litigation").

7. As of the Palm Garden Petition Date, the Cornelius Litigation was not ready for trial, and no trial date had been set. The Cornelius Litigation was stayed under Section 362 of the Bankruptcy Code upon the commencement of Ocala's and PG-Holdings' bankruptcy filings.

### III. ARGUMENT & AUTHORITIES

A. The Automatic Stay Prevents Piecemeal Litigation and a "Race to the Courthouse"

8. The automatic stay imposed by Section 362 of the Bankruptcy Code is one of the most fundamental protections to a debtor under the bankruptcy laws, a principal purpose of which is to permit a debtor to focus its energies on the reorganization without facing diversions and litigation brought on by its creditors. *See, e.g., Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). The automatic stay protects both creditors and debtors since, without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005). The automatic stay prevents such a scramble by providing "breathing room" for a debtor and the bankruptcy court to institute an organized repayment plan which provides for the equitable disbursement of estate property among creditors. *Id.* (*citing In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004), and *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)).

9. Pursuant to Section 362(d)(1) of the Bankruptcy Code, the automatic stay may only be lifted upon a showing of "cause" by the Movant. In a request for stay relief based upon "cause," the moving party bears the initial burden to demonstrate that cause exists for lifting the stay, and the court may deny the motion if the movant fails to make an initial showing of

4

"cause." *In re Busch*, 294 B.R. 137, 140-141 (10th Cir. BAP 2003); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

10. In determining whether "cause" exists to lift the automatic stay to allow litigation to proceed in another forum, courts generally consider the following twelve factors, which are commonly referred to as the "*Sonnax* factors":

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*See, e.g., In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). Not all of the *Sonnax* factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich ( In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir.2002) (*citing Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999)).

11. While the foregoing factors were not specifically addressed by Movant, Movant appears to primarily rely on the fifth factor in support of its Motion (whether the debtor's insurer has assumed full responsibility for defending it), as Movant seeks to the lift the stay to allow it "liquidate damages and to settle with the insurer up to the limits of insurance." *See* Motion at ¶9. As discussed below, however, Movant has failed to satisfy its burden of proof, and application of the *Sonnax* factors to this case warrant a continuation of the automatic stay as it relates to the Cornelius Litigation.

B.     The Automatic Stay Should Not be Lifted

***The First, Tenth and Eleventh Factors: Whether Relief Would Result in Partial or Complete Resolution, the Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation, and Whether the Parties are Ready for Trial.***

12. While relief from stay may eventually result in partial or complete resolution of the claim at hand, the Cornelius Litigation is still in an early stage. Discovery was ongoing as of the Palm Garden Petition Date and no trial setting had been set. Thus, discovery remains to be completed, a trial setting must be obtained, and all trial preparation must be completed. The litigation could easily proceed for an extended period of time before there is a resolution. Therefore, the first, tenth and eleventh *Sonnax* factors weigh against lifting the stay.

***The Second Factor: Lack of Any Connection or Interference with the Bankruptcy Case.***

13. Lifting the stay to allow Movant to proceed with her damages claims in Florida could open the floodgates for other movants who also seek stay relief. As stated above, as of its Petition Date, Ocala, PG Holdings and the other Palm Garden Debtors are defendants in numerous lawsuits pending in various forums. Lifting the automatic stay to permit the Cornelius Litigation to go forward would pave the way for dozens of motions by litigants making similar claims. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to

reorganize, forcing the Debtors to utilize time and resources that would otherwise be spent resolving these chapter 11 cases. Accordingly, the second *Sonnax* factor strongly weighs in favor of keeping the stay in place, as lifting the stay will interfere with the Debtors' chapter 11 cases.

### *The Third Factor: Whether the Other Proceeding Involves the Debtor as a Fiduciary.*

14. Movant does not assert that the Ocala or PG Holdings are liable as fiduciaries. Consequently, the third *Sonnax* factor weighs against lifting the stay.

### *The Fourth Factor: Whether a Specialized Tribunal with the Necessary Expertise has Been Established to Hear the Cause of Action.*

15. While the state court overseeing the Cornelius Litigation is not a specialized tribunal, this Court lacks jurisdiction to try personal injury claims and render a final order with respect thereto. However, the Debtors intend to file a motion seeking the implementation of alternative dispute resolution procedures pertaining to personal injury claims to facilitate an efficient resolution of such claims while minimize costs and expenses for all parties. The proposed procedures will be similar to those approved by other courts and will preserve a claimant's right, if any, to have its claim liquidated in another forum. Requiring Ocala and PG Holdings to defend Movant's damages claims in another forum at the outset of the commencement of their bankruptcy cases would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court...." *Public Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir.1992). Consequently, the fourth *Sonnax* factor does not weigh in favor of lifting the stay at this stage of these bankruptcy cases.

7

***The Fifth Factor: Whether the Debtor's Insurer has Assumed Full Responsibility for Defending the Debtor.***

16. No insurer has assumed responsibility for defending the Cornelius Litigation. To the contrary, Ocala and PG Holdings would need to pay all expenses in litigating the action with out-of-pocket funds from their bankruptcy estates. As a result, the fifth *Sonnax* factor does not support relief from the stay.

***The Sixth Factor: Whether the Action Primarily Involves Third Parties.***

17. Ocala and PG Holdings, both debtors in these jointly administered bankruptcy cases, are the only defendants in the Cornelius Litigation, and no other third parties are involved. The Court should not grant relief from the stay under the sixth *Sonnax* Factor given that these Debtors are the only parties to the litigation.

***The Seventh Factor: Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors.***

18. The seventh *Sonnax* factor weighs strongly against lifting the stay. As noted above, Ocala and PG Holdings believe that the Policy has been exhausted. However, even if there are any proceeds available, the proceeds are greatly exceeded by the claims asserted against the Palm Garden Debtors. The Court should deny stay relief to one claimant where, as here, the available insurance coverage is inadequate to compensate other similarly situated claimants. *See, e.g., In re Davis*, 730 F.2d 176, 185 (5th Cir.1984) (affirming the bankruptcy court's decision to keep stay in place because "intact insurance coverage [i]s a bulwark against erosion of the estate"); *see also In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988) (in many cases, "[a]llowing one claimant to collect the policy proceeds in a state court judgment would deplete the insurance pool to the detriment of all remaining creditors"); *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (court enjoined plaintiff's state court action against debtor's insurer,

8

14-50756 - #149 File 09/08/14 Enter 09/08/14 18:04:18 Main Document Pg 8 of 11

where liability insurance was deemed inadequate to satisfy all claims under the insurance); *In re Sunland, Inc.*, 508 B.R. 739 (Bankr. D. New Mexico) (denying relief from stay because proceeding with lawsuit could deplete the pool of available insurance funds at the expense of other claimants); *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984) (affirming bankruptcy court's stay of state court proceedings where creditors' claims exceeded both debtor's insurance policy and entire net worth); *Matter of Gatke Corp.*, 117 B.R. 406, 410 (Bankr.N.D.Ind.1990) (stay motion denied because insurance was not adequate to pay all claims).

### *The Eight and Ninth Factors: Whether the Judgment Claim Arising from the Other Action is Subject to Equitable Subordination, or Whether Movant's Success in the Other Proceeding Would Result in a Judicial Lien Avoidable by the Debtor.*

19. Ocala and PG Holdings do not believe that any judgments entered in the Cornelius Litigation would be subject to equitable subordination or an avoidable lien. Consequently, these factors weigh in favor of lifting the stay, but are outweighed by the application of the other *Sonnax* factors which are more relevant in this case.

### *The Twelfth Factor: Impact of the Stay on the Parties and the Balance of Harms.*

20. For many of the reasons stated above, the twelfth *Sonnax* factor, the balance of the harms, weighs in favor of continuing the stay of the Cornelius Litigation. Lifting the stay would open the floodgates to dozens of similar motions, leading to piecemeal litigation and driving up administrative expenses of these estates. Forcing the Debtors to return to courts around the country to liquidate claims at this early stage of these Chapter 11 cases not only risks diverting the attention of the Debtors from pressing issues in these cases, but more importantly increases the costs for both the Debtors and creditors thereby jeopardizing potential creditor recoveries in these cases. Additionally, to the extent there are any insurance proceeds available

9

under the Policy, the amount of claims asserted against the Palm Garden Debtors greatly exceeds the Policy. Similarly situated claimants should share pro rata in any such proceeds, and Movant should not be permitted to jump to the front of the line at the expense of such creditors.

## IV. CONCLUSION & PRAYER

For the reasons set forth above, the Debtors request the entry of an order (i) denying the Motion and (ii) awarding the Debtors any further relief the Court deems appropriate.

Dated: September 8, 2014

Respectfully submitted,

NELIGAN FOLEY LLP

By: */s/ Patrick J. Neligan, Jr.*
Patrick J. Neligan, Jr.
Texas State Bar No. 14866000
pneligan@neliganlaw.com
James P. Muenker
Texas State Bar No. 24002659
jmuenker@neliganlaw.com

325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5300
Facsimile: 214-840-5301

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Jan M. Hayden*
Jan M. Hayden (#06672)
Erin E. Pelleteri (30666)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
jhayden@bakerdonelson.com
epelleteri@bakerdonelson.com

**COUNSEL FOR SA-PG OCALA, LLC AND SA-PG OPERATOR HOLDINGS, LLC**

10

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, a true and correct copy of the foregoing document was served on those parties receiving electronic notification via the Court's ECF system.

*/s/ Patrick J. Neligan, Jr.*
Patrick J. Neligan, Jr.

8063Docs 80669v.4