THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, | § | CASE NO. 14-50756 |
| et al. | § | |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**DEBTORS' SUPPLEMENTAL MOTION FOR
FINAL ORDER (A) REAFFIRMING FINAL DIP ORDER; (B) DISMISSING
MOTION FOR RECONSIDERATION; (C) AUTHORIZING THE USE OF THE DIP
FACILITY, AMENDMENTS TO THE DIP CREDIT AGREEMENT AND
EXECUTION OF SUPPLEMENTAL DIP AGREEMENTS; AND (D) GRANTING
ADDITIONAL SECURITY INTERESTS AND SUPERPRIORITY CLAIMS
PURSUANT TO SECTIONS 361(2), 363(e), 364(c) AND (d) AND 507 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(b) AND (c)**

NOW COME the Debtors, as debtors and debtors-in-possession (collectively, the "Debtors")[1], which file this motion (the "Supplemental Motion"), and in support thereof, state as follows:

---

[1] New Louisiana Holdings, LLC (Case No 14-50756), Jackson Major 1691 Tenant, LLC (Case No. 14-507967), Fountain View 215 Tenant, LLC (Case No. 50797), Acadian 4005 Tenant, LLC (Case No. 14-50850), Atrium 6555 Tenant, LLC (Case No. 14-50851), Citiscape 5010 Tenant, LLC (Case No. 14-50853); Lakewood Quarters Assisted Living 8585 Tenant, LLC (Case No. 14-50854, Lake Quarters Rehab 8225 Tenant, LLC (Case No. 14-50855), Panola 501 Partners LP (Case No. 14-50862), Regency 14333 Tenant, LLC (Case No. 14-50861), Retirement Center 14868 Tenant, LLC (Case No. 14-50856), Sherwood 2828 Tenant, LLC (Case No. 14-50857), St. Charles 1539 Tenant, LLC (Case No. 14-50858), and Woodland Village 530 Tenant, LLC (Case No. 14-50756); SA-PG-Ocala, LLC (July 28, 2014), SA-PG Operating Holdings, LLC (July 28, 2014), SA-PG-Clearwater, LLC (July 28, 2014), SA-PG-Gainesville, LLC (July 28, 2014), SA-PG-Jacksonville, LLC (July 28, 2014), SA-PG-Largo, LLC (July 28, 2014), SA-PG-North Miami, LLC (July 28, 2014), SA-PG-Orlando, LLC (July 28, 2014), SA-PG-Pinellas, LLC (July 28, 2014), SA-PG-Port St. Lucie, LLC (July 28, 2014), SA-PG-Sun City Center, LLC (July 28, 2014), SA-PG-Tampa, LLC (July 28, 2014), SA-PG-Vero Beach, LLC (July 28, 2014), SA-PG-West Palm Beach, LLC (July 28, 2014), SA-PG-Winterhaven, LLC (July 28, 2014) are referred to herein as the "Palm Garden Debtors".

Cypress Health Care Management, LLC, Cypress Health Care Holdings, LLC (collectively the "Cypress Debtors"); SA-St. Petersburg, LLC, SA-Clewiston, LLC, SA-Lakeland, LLC, CHC-CLP Operator Holdings, LLC, and CHC-SPC Operator, Inc. (collectively the "Palm Terrace Debtors"); and SA-GA Operator Holdings, LLC, CHC-Carrollton Nursing & Rehab Ctr., LLC, CHC-Cedar Ridge Nursing & Rehab Ctr, LLC, CHC-Chestnut Ridge Nursing & Rehab Ctr, LLC, CHC-Haralson Nursing & Rehab Ctr, LLC, CHC-Hart Care Ctr, LLC, CHC-Pine Knoll Nursing & Rehab Ctr, LLC, CHC-Roswell Nursing & Rehab Ctr, LLC, CHC-Social Circle Nursing & Rehab Ctr, LLC, CHC-University Nursing & Rehab Ctr, LLC, and CHC-Woodstock Nursing & Rehab Ctr, LLC (collectively the "Georgia Debtors" and together with the Palm Garden Debtors and the Cypress Debtors (the "Affiliated Debtors"). The Affiliated Debtors and the Palm Garden Debtors are referred to herein as the "Debtors".

# I.
# JURISDICTION

1. This Court has jurisdiction to consider this Supplemental Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# II.
# BACKGROUND

2. On September 3-4, 2014 (the "Petition Date"), the Palm Terrace Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Also, prior to and after the Petition Date, the Affiliated Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors' Chapter 11 cases are being jointly administered.

4. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties, affairs and assets as debtors-in-possession.

5. A detailed description of the Debtors' businesses, pre-petition debt and the events leading to the commencement of the Palm Terrace Debtors' Chapter 11 cases is set forth in the *Palm Terrace Debtors' Motion (I) For Interim and Final Orders (A) Authorizing and Approving Debtor-in-Possession Financing; (B) Granting Security Interests and Superpriority Claims Pursuant to Section 364(c) and (d) and 507 of the Bankruptcy Code and Bankruptcy Rule 4001(c); and (C) Modifying the Automatic Stay; and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* ("Original DIP Motion")[2] and the Declaration of James A. Blalock, III

---

[2] Capitalized terms not defined herein are as defined in the Original DIP Motion or the Debtor in Possession Loan and Security Agreement entered into between the Palm Terrace Debtors and the DIP Lender on October 7, 2014 (the "DIP Credit Agreement").
.

{00344995-2}

(the "First Day Declaration") attached thereto, and is incorporated herein by reference.

6. On the Petition Date, the Palm Terrace Debtors filed the Original DIP Motion, requesting that the Court authorize the Palm Terrace Debtors to obtain senior secured, postpetition financing up to an aggregate principal amount of up to $3,000,000, and grant to the DIP Lender first priority liens and security interests on substantially all of the Palm Terrace Debtors' assets as well as superpriority claims. The Palm Terrace Debtors sought immediate financing for operating expenses of up to $600,000 and, upon entry of a final order and after a challenge period had expired to challenge the liens of PacWest with no such challenges being made, authority to borrow funds from the DIP Lender to pay in full all obligations owed to PacWest.

7. The Palm Terrace Debtors also filed the *Emergency Motion for Interim and Final Orders Authorizing the Debtor to Use Cash Collateral and to Provide Adequate Protection to Prepetition Lenders* ("Cash Collateral Motion"), requesting the authority to use cash collateral and to grant adequate protection liens.

8. On September 16, 2014, the Court entered an *Interim Order Authorizing and Approving (A) Debtor in Possession Financing Under Section 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c) and (B) Modification of the Automatic Stay Under Section 362 of the Bankruptcy Code* [Dkt. No. 209] ("Interim DIP Order"), authorizing the Palm Terrace Debtors to obtain up to $600,000 in financing on an emergency basis prior to the final hearing on the Original DIP Motion. On September 8, 2014, the DIP Lender loaned the Debtors an Interim Advance in the amount of $450,000.

9. On September 16, 2014, the Court also entered the *Amended Interim Order (A) Authorizing Debtors to (I) Use Cash Collateral Pursuant to 11 U.S.C. §363 and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§361 and 363 and (B) Scheduling a Final Hearing*

{00344995-2}

*Pursuant to Bankruptcy Rule 4001* [Dkt. No. 208] ("Interim Cash Collateral Order"), (1) authorizing the Palm Terrace Debtors' use of cash collateral, and (2) allowing any party-in-interest or committee to investigate and challenge the validity, enforceability, priority, perfection or amount of PacWest's pre-petition debt, and PacWest's security interests in and liens on the Palm Terrace Debtors' assets, or to assert any claims or causes of action against PacWest prior to the final hearing on the Palm Terrace Debtors' Cash Collateral Motion.

10. On October 3, 2014, the Official Committee of Unsecured Creditors (the "Committee") was appointed.

11. On October 7, 2014, the Court entered the *Final Order Authorizing and Approving (A) Debtor in Possession Financing Under Section 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c), and (B) Modification of the Automatic Stay Under Section 362 of the Bankruptcy Code* [Dkt. No. 239] ("Final DIP Order"), authorizing the Palm Terrace Debtors to obtain the remaining $2,400,000 in financing ($400,000 for additional working capital and up to $2 million to pay off PacWest) and granting the DIP Lender first priority liens and superpriority claims to secure the DIP Obligations.

12. Contemporaneously therewith and after a hearing, the Court entered the *Final Order Authorizing Debtors to (I) Use Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 After a Final Hearing Pursuant to Bankruptcy Rule 4001* [Dkt. No. 238] ("Final Cash Collateral Order", and collectively with the Final DIP Order, the "Financing Orders"), authorizing the Palm Terrace Debtors to use the cash collateral of PacWest until it paid off the PacWest debt, and then, to use the cash collateral of the DIP Lender. Since there had been no challenge to PacWest's security interests or its debt, upon entry of the Financing Orders, on October 7, 2014, the Palm Terrace Debtors and the DIP Lender executed the DIP Credit Agreement and other DIP Loan Documents,

{00344995-2}

and the DIP Lender loaned the Palm Terrace Debtors $1,872,418.56, which the Palm Terrace Debtors used to pay PacWest in full. As of December 31, 2014, the DIP Lender advanced $2,322,418.56 to the Debtors under the DIP Credit Agreement.

13. On November 4, 2014, the Committee filed the *Motion of the Official Committee of Unsecured Creditors, Pursuant to Rule 59 of the Federal Rules of Civil Procedure, as Made Applicable by Bankruptcy Rule 9023 of the Federal Rules of Bankruptcy Procedure, or in the Alternative, Rule 60 of the Federal Rules of Civil Procedure, as Made Applicable by Bankruptcy Rule 9024, for Reconsideration of the Financing Orders* [Dkt. No. 319] ("Motion to Reconsider"), requesting that the Court reconsider the Financing Orders pursuant to Rule 59 of the Federal Rules of Civil Procedure, made applicable by Rule 9023, or, in the alternative, Rule 60 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 9024.

## IV.
## RELIEF REQUESTED

14. By this Supplemental Motion, the Debtors request entry of a final order (the "Supplemental DIP Order") (i) reaffirming the Final DIP Order, together with all rights, liens and claims granted therein, and dismissing with prejudice the Motion for Reconsideration thereof, (ii) granting the Palm Terrace Debtors the authority to use the proceeds from the DIP Facility and Collateral in order to provide, in conjunction with other assets of the Debtors, a source of funds to pay administrative expenses of the Debtors pursuant to the DIP Budget attached hereto as **Exhibit A**, in the event each of the Debtors does not have sufficient funds to pay in full its own administrative expenses (collectively any advances of funds from one Debtor to another Debtor for the purposes of paying administrative expenses, the "Intercompany Administrative Expense Advances"), (iii) providing the DIP Lender with superpriority liens and claims against the Affiliated Debtors, (iv) authorizing an amendment of the DIP Credit Agreement and the

execution of supplemental DIP agreements (collectively, the "Amended DIP Credit Agreements"); and (v) providing for the relief requested in this Supplemental Motion.

15. The Debtors request that the Court (i) authorize the Palm Terrace Debtors to use the DIP Facility for the purposes stated herein, (ii) order that, in addition to the Final Borrowing Liens and Superpriority Claims provided on the Collateral in the Final DIP Order on the assets of the Palm Terrace Debtors to secure the repayment in full of all DIP Obligations, the DIP Lender is also granted superpriority claims and liens securing the superpriority claims on the assets of the Affiliated Debtors to secure the repayment of any Intercompany Administrative Expense Advances pursuant to the Supplemental DIP Order attached hereto as **Exhibit B**, the DIP Credit Agreement attached hereto as **Exhibit C**, and the Amended DIP Credit Agreements.

16. Since the filing of the Motion to Reconsider, the Debtors, the DIP Lender, and the Committee have been negotiating (and are still negotiating) the provisions of the proposed Supplemental DIP Order which reaffirms and restates the terms and conditions of the Final DIP Order, the DIP Credit Agreement, and the DIP Loan Documents, and will amend the attached DIP Credit Agreement and provide for the Amended DIP Credit Agreements which will provide the following[3]:

- Use of Proceeds: To pay the administrative expenses of all the Debtors pursuant to the DIP Budget in the event each Debtor does not have sufficient funds to pay its administrative expenses.
- Additional Collateral/Superpriority Claim: In addition to the Final Borrowing Liens and Superpriority Claims provided for under the Final DIP Order to secure all DIP Obligations, the DIP Lender shall also have a superpriority claim (the "Affiliated Debtors' Superpriority Claim") with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552, 726, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve Out, which is secured by a perfected first priority lien ("Affiliated Debtors' Lien") on all any and all pre- and post-petition assets (as

---

[3] This summary is qualified in its entirety by reference to the provisions of the DIP Credit Agreement and Amended DIP Credit Agreements. Capitalized terms in this summary not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement.

{00344995-2}

described in the DIP Loan Documents and the Amended DIP Credit Agreements, the "Affiliated Debtors' Collateral"[4]) of any Affiliated Debtor in the amount of any and all Intercompany Administrative Expense Advances pursuant to Sections 361(2), 363(e), (364(c)(2) and (d)(1).

- Maturity Date: The definition of Maturity Date provided for in the DIP Credit Agreement and Final DIP Order will be replaced by the definition of Maturity Date provided herein:

  "**Maturity Date**" means the date which is the earliest of:

  (i)      (a) June 1, 2015[5], (b) the occurrence of an Event of Default , (c) the closing of any sale of any material part of the Collateral or Affiliated Debtors' Collateral pursuant to section 363 of the Bankruptcy Code, or (d) the Effective Date of a Plan of Reorganization of any Debtor;
  (ii)     entry of an order reversing or modifying in any respect without the written approval of the DIP Lender, the Final DIP Order or Supplemental DIP Order;
  (iii)    the conversion of any of the Debtors' Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code;
  (iv)    the appointment of a trustee or an examiner with special powers in any of the Chapter 11 Cases; and
  (v)     the dismissal of any of the Chapter 11 Cases.

- Subrogation. After the indefeasible payment in full of all DIP Obligations, the Affiliated Debtors' Lien and Affiliated Debtors' Superpriority Claim shall be preserved for the benefit of and may be exercised by any Debtor to secure repayment from any other Debtor of any Intercompany Administrative Expense Advances, provided however, no such rights or claims shall be exercised or exercisable by any Debtor until after the indefeasible payment in full of all DIP Obligations to the DIP Lenders.

- Carve-Out. The Carve Out provided in the DIP Credit Agreement and Final DIP Order is replaced by the Carve Out provided herein:

  Prior to an Event of Default (or an event for which notice of default has been given and which with the lapse of time would constitute an Event of Default), (a) the DIP Lender's liens on the Collateral of the Debtors, (b) the DIP Lender's superpriority claims provided for in the Final DIP Order, (c) the Affiliated Debtors' Collateral and (d) the Affiliated Debtors' Superpriority Claim provided for in this Supplemental DIP Order, shall be subject to a carve out (the "Carve-Out") in an amount not to exceed (i) the fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court that are due upon the occurrence of an Event of Default; and (ii) subject to any required Court approval, any unpaid budgeted fees and expenses of court approved professionals employed by the Debtors and the Committee for services rendered during time periods

---

[4] The Affiliated Debtors' Collateral shall exclude avoidance actions under sections 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code.
[5] The Original DIP Facility provided for a maturity date of six months after the entry of the Interim Order, or March 15, 2015.

{00344995-2}

provided in the DIP Budget which were incurred prior to the occurrence of an Event of Default.

Following an Event of Default (or an event for which notice of default has been given and which with the lapse of time would constitute an Event of Default), the (a) DIP Lender's liens on the Collateral of the Debtors, (b) the DIP Lender's superpriority claims provided for in the Final DIP Order, (c) the Affiliated Debtors' Collateral and (d) Affiliated Debtors' Superpriority Claim provided for in this Supplemental DIP Order, shall be subject to an aggregate carve out (the "<u>Burial Carve-Out</u>") in an amount not to exceed (i) the fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court that are due in the quarter of the occurrence of an Event of Default; (ii) subject to any required Court approval, the fees and expenses of court-approved professionals employed by the Committee, for services rendered after the Event of Default in an amount not to exceed $100,000; and (iii) subject to any required Court approval, fees and expenses of court approved professionals retained by the Debtors for services rendered after the Event of Default up to the amount of, and payable solely from, any prepetition retainers held by such professionals. The Burial Carve-Out shall be applicable only after all other sources of payment from the Debtors are exhausted for the payment of fees and expenses of the Committee and the Debtors incurred after an Event of Default.

17. The Debtors, the Committee and the DIP Lender have engaged in arm's length, good faith negotiations with respect to the terms and conditions of the proposed Supplemental DIP Order. These negotiations are still ongoing but the Debtors expect they will culminate in a final agreement upon the form of the Supplemental DIP Order.

## VI.<br>AUTHORITY

**A. The Intercompany Administrative Expense Advances, Affiliated Debtors' Liens and Affiliated Debtors' Superpriority Claims Should Be Authorized**

18. Approval of the Intercompany Administrative Expense Advances will provide the Debtors with immediate and ongoing access to borrowing availability to pay their administrative expenses in the event each Debtor does not have sufficient funds to pay its administrative expenses.

19. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section

503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in sections 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364. Section 364(d)(1) of the Bankruptcy Code provides that the Court may authorize a debtor to incur debt secured by a senior or equal lien on property of the estate that is subject to a lien only if (a) the debtor is unable to obtain such credit otherwise, and (b) there is adequate protection of the interest of the holder of the lien on which such senior or equal lien is to be granted. The Debtors propose to provide the DIP Lender superpriority claims, security interests, and liens on the Affiliated Debtors' Collateral pursuant to sections 361(2), 363 and 364(c)(l) and (3), subject only to the Carve-Out and any valid, unavoidable and enforceable pre-petition security interests on the Affiliated Debtors' Collateral.

20. The Debtors have been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1). The Debtors have not been able to obtain postpetition financing or other financial accommodations sufficient to pay their administrative expenses on more favorable terms and conditions than those for which approval is sought herein.

21. The Debtors, the DIP Lender and the Committee negotiated the terms and conditions of the Supplemental DIP Order at arm's length and in good faith. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith. *See, e.g., See, e.g, Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789* F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y.

{00344995-2}

1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985).

22. Here, the Debtors have been unable to procure the required funding absent the proposed claims and liens. The use of the DIP Facility and Collateral and terms and conditions of the proposed Supplemental DIP Order are fair and reasonable, and were negotiated extensively by well-represented parties in good faith and at arm's length. Accordingly, the DIP Lender and all obligations incurred under the DIP Facility and the Intercompany Administrative Expense Advances should be accorded the benefits of section 364(e) of the Bankruptcy Code.

### Notice

23. The Debtors are serving notice of this Supplemental Motion on (i) the Office of the United States Trustee for the Western District of Louisiana, (ii) counsel to the DIP Lender, (iii) all parties listed on the Debtors' Special Notice List; (iv) counsel to the Committee; (v) all parties having filed a notice of appearance in the above-captioned case; and (vi) other junior lienholders. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

**WHEREFORE**, the Debtors respectfully request entry of an order on substantially the same terms and conditions as set forth on Exhibit B and granting the relief requested herein and such other or further relief as is just.

{00344995-2}

14-50756 - #437  File 01/12/15  Enter 01/12/15 19:58:19  Main Document  Pg 10 of 15

Dated: January 12, 2015

Respectfully submitted,

NELIGAN FOLEY LLP

By:    */s/ Patrick J. Neligan, Jr.*
      Patrick J. Neligan, Jr.
      Texas State Bar No. 14866000
      pneligan@neliganlaw.com
      James P. Muenker
      Texas State Bar No. 24002659
      jmuenker@neliganlaw.com
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5300
Facsimile: 214-840-5301

COUNSEL FOR THE DEBTORS

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 12, 2015, a true and correct copy of the foregoing document was served on each of the parties on the attached list by U.S. First Class Mail, postage prepaid.

           */s/ Patrick J. Neligan, Jr.*
           Patrick J. Neligan, Jr.

80600v.5

# MASTER SERVICE LIST
*New Louisiana Holdings, LLC, et al.*

**Debtor**

New Louisiana Holdings, LLC
Attn: Raymond P. Mulry
4 West Red Oak Lane, Suite 201
White Plains, NY 10604

**Debtor's Counsel**

Neligan Foley LLP
Attn: Patrick J. Neligan, Jr.
325 N. St. Paul, Suite 3600
Dallas, TX 75201

Baker Donelson Bearman Caldwell &
Berkowitz, PC
Attn: Jan M. Hayden
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170

**U.S. Trustee**

Office of the United States Trustee
300 Fannin Street, Suite 3196
Shreveport, LA 71101

**30 Largest Creditors on Consolidated Basis (Excluding Insiders)**

Agency for Health Care Administration
P.O. box 13749
Tallahassee, FL 32317-3749

Airgas USA, LLC
P.O. Box 532609
Atlanta, GA 30353-2609

American Pharmaceutical Services
P.O. Box 102082
Atlanta, GA 30368-2082

American Health Associates, Inc.
15712 SW 41st Street, Suite 16
Davie, FL 33331

Bay Pharmacy
Omnicare Billing
P.O. Box 715268
Columbus, OH 43271-5268

Belfor USA Group Inc.
185 Oakland Avenue, Suite 300
Birmingham, MI 48009-3433

Bayfront Medical Center, Inc.
701 6th Street South
St. Petersburg, FL 33701

Chicago Health Care Leasing LLC
455 N. Cityfront Plaza, Suite 15
Chicago, IL 60611

Compos Medical Pharmacy
660 Distributors Row, Suite A &B
Jefferson, LA 70123

CHC Labs Inc.
P.O. Box 277522
Atlanta, GA 30384-7522

Department of Health and Hospitals
P.O. Box 3767
Baton Rouge, LA 70821-3767

Direct Supply, Inc.
6767 N. Industrial Road
Milwaukee, WI 53223

Direct Supply Healthcare Equipment
P.O. Box 88201
Milwaukee, WI 53288-0201

Georgia Department of Community Health
2 Peachtree Street, NW
Atlanta, GA 30303

Health Services Group, Inc.
3220 Tillman Drive, Suite 300
Bensalem, PA 19020

Joerns Healthcare, Inc.
P.O. Box 933733
Atlanta, GA 31193

Karl Koch
Koch Law Firm
637 St. Ferdinand Street
Baton Rouge, LA 70802

Mobilex USA/Symphony Inc.
930 Ridgebrook Road, 3rd Floor
Sparks Glencoe, MD 21152

Liberty Ambulance Service Inc.
1626 Atlantic University Cir.
Jacksonville, FL 32207

Maintenance Warehouse
P.O. Box 509058
San Diego, CA 92150-9058

Medline Industries
P.O. Box 382075
Pittsburgh, PA 15251-8075

Medical Imaging, Inc.
5000 North West 27th Ct., Suite B
Gainesville, FL 32606

Omnicare Pharmacy
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

Phelps Dunbar LLP
P.O. Box 974798
Dallas, TX 75397-4798

Palm Garden Health Care Inc.
2033 Main Street, Suite 300
Sarasota, FL 34237

Respiratory Health Services, LLC
P.O. Box 7247-6524
Philadelphia, PA 19170-6524

RK Collaborative
720 Garden Plz
Orlando, FL 32803

Recovercare LLC
Key Bank – LB #713222
895 Central Avenue, Suite 600
Cincinnati, OH 45202

U.S. Food Service
3682 Collection Center Drive
Chicago, IL 60693-0036

Vista Clinical Diagnostics, Inc.
4290 South Hwy.27, Suite 201
Clemont, FL 34711

### Creditors' Committee

Healthcare Services Group, Inc.
Attn: Patrick Orr
3220 Tillman Drive, Suite 300
Bensalem, PA 19020

Medline Industries, Inc.
Attn: Shane Reed
1 Medline Place
Mundelein, IL 60060

Omnicare, Inc.
Attn: Joann Billman
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

**Counsel For Creditors' Committee**

Pepper Hamilton LLP
Attn: Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streetsw
Philadelphia, PA 19103-2799

McGlinchey Stafford, PLLC
Attn: Heather LaSalle Alexis
601 Poydras Street, 12th Floor
New Orleans, LA 70130

**Parties Requesting Notice**

Robert M. Hirsh
Jordana L. Renert
Arent Fox LLP
1675 Broadway
New York, NY 10019

Paul N. Debaillon
Debaillon & Miley
201A Travis Street
P.O. Box 51387
Lafayette, LA 70505

Robert Lapowsky
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Joseph Corrigan
Iron Mountain Information
Management LLC
One Federal Street
Boston, MA 02110

Indian River County Tax Authority
Attn: Bankruptcy Department
P.O. Box 1509
Vero Beach, FL 32961-1509

Noel Steffes Melancon
William E. Steffes
Steffes, Vingiello & McKenize, LLC
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA 70817

Mildred Tagmeyer
c/o Eugene R. Preaus
Fowler Rodriguez
400 Poydras Street, 30th Floor
New Orleans, LA 70130

Darryl J. Foster
Leland G. Horton
Bradley Murchison Kelly & Shea LLC
1100 Poydras Street, Suite 2700
New Orleans, LA 70163

William H. Patrick III
Tristan Manthey
Cherie D. Nobles
Heller Draper Patrick Horn & Dabney LLC
650 Poydras Street, Suite 2500
New Orleans, LA 70130

Joseph P. Hebert
Liskow & Lewis
822 Harding Street
Lafayette, LA 70503

Robert W. Jones
Brent R. McIlwain
Holland & Knight LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201

H. Kent Aguillard
P.O. Box 391
Eunice, LA 70535

80306v.2

Baton Rouge Total Care Center
c/o William A. Ball, President
P.O. Box 82279
Baton Rouge, LA 70884-2279

Master Tenant, LLC
4 South Broadway, Suite 614
White Plains, NY 10601

Kirk A. Patrick, III
James C. Donohue
Donohue Patrick & Scott, P.L.L.C.
450 Laurel Street, Suite 1600
Baton Rouge, LA 70801

Karin H. Berg
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661

John J. Lamoureux
Carlton Fields Jorden Burt, P.A.
4221 West Boy Scout Blvd., 10th Floor
Tampa, FL 33607-5736

Lourdes A. Naranjo
Agency for Health Care Administration
Office of the General Counsel
8333 N.W. 53rd Street, Suite 300
Miami, FL 33166

Michael A. Crawford
Taylor Porter Brooks & Phillips LLP
P.O. Box 2471
Baton Rouge, LA 70821-2471

Regency 14333 LLC
c/o Westside Houses, Inc.
1411 Broadway
New York, NY 10018

Michael T. Perry
Attorney at Law
5635-S Government Street
Baton Rouge, LA 70806-6035

John Vanker O'Grady, Kathleen Clark Knight
And Joanna M. Greber
Wilkes & McHugh
One North Dale Mabry Hwy, Ste 800
Tampa, FL 33609

David F. Waguespack
Stephen P. Scullin
1100 Poydras Street, Suite 1300
New Orleans, LA 70163

Ross Cicardo
Cicardo Law Office, LLC
2110 West Pinhook Road
P.O. Box 80917
Lafayette, LA 70598

Lourdes A. Naranjo
Florida Agency for Health
Care Administration
Office of the General Counsel
8333 N.W. 53rd Street, Suite 300
Miami, FL 33166