## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| NEW LOUISIANA HOLDINGS, LLC, et al., | ) | |
| | ) | Case No. 14-50756 |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

### PALM TERRACE DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS, (B) APPROVING BREAK-UP FEE, (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER (A) APPROVING THE SALE, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF

SA-Lakeland, LLC, SA-Clewiston, LLC and SA-St. Petersburg, LLC (each, a "Debtor" and collectively, the "Palm Terrace Debtors"), debtors and debtors in possession, respectfully file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order"): (a) approving bidding and auction procedures (collectively, the "Bidding Procedures"), a copy of which is attached hereto as Exhibit B, in connection with the potential sale(s) of substantially all assets (the "Purchased Assets" or "Operations") of the Palm Terrace Debtors' estates (the "Estates"), free and clear of all claims and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations, and encumbrances of any kind whatsoever (collectively, the "Interests"), except to the extent identified in a Successful Bidder's (as defined below) asset purchase agreement; (b) approving a Break-Up Fee (as defined below); (c) approving the form and manner of sale notices (the "Notice Procedures"); (d) scheduling an auction (the "Auction") if, subject to the Bidding Procedures, the Palm Terrace Debtors receive more than one Qualified Bid (as

#32038543 v4

defined below), and setting a date and time for a sale hearing (the "<u>Sale Hearing</u>") for the sale (the "<u>Sale</u>") of the Purchased Assets; and (e) granting certain related relief.

The Palm Terrace Debtors further request that, subject to the results of the Auction and the Bidding Procedures, the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u> (the "<u>Sale Order</u>"): (i) approving and authorizing the Sale of the Purchased Assets free and clear of all Interests except to the extent set forth in a Successful Bidder's asset purchase agreement; and (ii) authorizing the assumption and assignment of certain agreements. In support hereof, the Palm Terrace Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.     The Palm Terrace Debtors' Business

2.     The Palm Terrace Debtors lease and operate skilled nursing facilities located in Lakeland, Clewiston and St. Petersburg, Florida (the "<u>Facilities</u>"). More specifically, Lakeland is the licensed operator of Palm Terrace of Lakeland, a skilled nursing facility with 185 licensed beds in Lakeland, Florida. Clewiston is the licensed operator of Palm Terrace of Clewiston, a skilled nursing facility with 155 beds in Clewiston, Florida. St. Petersburg is the licensed operator of Palm Terrace of St. Petersburg, a skilled nursing facility with 96 beds in St. Petersburg, Florida.

3.     The Facilities are owned or controlled by NAE Florida, LLC, 29-31 Florida LLC, Lovely Hills Florida LLC, Sagamore Florida LLC and VLC Florida LLC

(collectively, "Master Lessor").[1]  SA-PT Master Tenant, LLC ("Master Tenant") leases the Facilities from Master Lessor, and subleases the Facilities to Lakeland, Clewiston and St. Petersburg (each, a "Facility Lease" and collectively, the "Facility Leases").

4.     On September 3, 2014 (the "Petition Date"), the Palm Terrace Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Commencing on June 25, 2014 and periodically thereafter, certain affiliates of the Palm Terrace Debtors (collectively with Palm Terrace Debtors, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors' respective cases are being jointly-administered under the caption *In re New Louisiana Holdings, LLC*, Case No. 14-50756.

5.     The Debtors continue to operate their businesses and manage their properties, affairs and assets as debtors-in-possession.

6.     On October 3, 2014, the United States Trustee appointed a single Official Committee of Unsecured Creditors (the "Committee") for the Debtors' cases.

7.     The Palm Terrace Debtors have determined, in the exercise of their business judgment and in consultation with the Committee, to sell their interests in the Operations.

8.     Separately, the Palm Terrace Debtors are filing an application with the Court to retain Senior Living Brokerage, Inc. ("SLBI") to assist them with the marketing and sale of the Operations.  The Palm Terrace Debtors, with the assistance of SLBI, intend to implement a Sale Process that will be competitive and result in maximum value for the Estates. SLBI will, among other things, (a) assist the Palm Terrace Debtors in drafting an offering

---

[1] The Clewiston facility is subject to a long-term ground lease in favor of Master Lessor, whereas the remaining facilities are owned by Master Lessor.  Certain Schwartzberg family trusts own direct or indirect minority interests in the Master Lessor.  The remaining majority interests in the Master Lessor are owned by third parties. Certain Schwartzberg family trusts also own indirect interests in the Palm Terrace Debtors.

#32038543 v4

document describing the Palm Terrace Debtors, their operations, their historical performance and future prospects; (b) assist the Palm Terrace Debtors in identifying, contacting and screening potential purchasers of the assets or business of the Palm Terrace Debtors; (c) assist the Palm Terrace Debtors in contacting such potential purchasers; (d) assist the Palm Terrace Debtors in preparing a due diligence data room and in coordinating the due diligence investigations of potential purchasers; (e) assist the Palm Terrace Debtors in analyzing proposals received from potential purchasers; and (f) advise and assist the Palm Terrace Debtors in negotiating the financial aspects of any proposed sale transaction.

9.     SLIB has informed the Palm Terrace Debtors that the market of prospective purchasers for the Operations would be enhanced if such purchasers also had the opportunity to purchase the Facilities and related real estate, and that SLIB may also represent the owners of the Facilities in a separate transaction involving the Facilities.  Consequently, the proposed procedures advise Potential Bidders of the opportunity to purchase these additional assets.

10.     On September 5, 2014, the Palm Terrace Debtors filed their (i) Emergency Motion for Interim and Final Orders Authorizing the Debtor to Use Cash Collateral and to Provide Adequate Protection to Prepetition Lenders (the "Cash Collateral Motion") and (ii) Motion (I) For Interim and Final Orders Authorizing and Approving (A) Debtor In Possession Financing; (B) Granting Security Interests and Superpriority Claims Pursuant to Sections 364(c) and (d) and 507 of the Bankruptcy Code and Bankruptcy Rule 4001(c); and (D) Modifying the Automatic Stay; and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "DIP Financing Motion").  On October 7, 2014, the Final Cash Collateral Order and the Final DIP Financing Order (the "Financing Orders") were entered by the Court.   The Final Cash Collateral Order granted various relief to the DIP Lender, the prepetition senior secured lenders

#32038543 v4

and prepetition junior secured lenders and the Final DIP Financing Order authorized the Palm

Terrace Debtors to obtain senior, secured, postpetition financing up to an aggregate principal

amount of $3,000,000 (the "DIP Facility") from the DIP Lender.[2]

11.    In addition to the DIP Facility, the other primary creditor constituency in

the Palm Terrace Debtors' cases consists of general unsecured creditors (i.e., trade debt) and

numerous personal injury claims asserting damages arising from the operation of the Palm

Terrace Debtors' facilities.

**B.    The Debtors' Anticipated Sale Process**

12.    The Palm Terrace Debtors intend to sell the Operations pursuant to a

competitive sale process under section 363(b) of the Bankruptcy Code (the "Sale Process"). The

Operations include substantially all of the Palm Terrace Debtors' assets other than cash and

receivables, which include any and all of the Estates' leasehold rights, inventory, contracts,

licenses, agreements, and other assets of any kind, wherever located.

13.    Parties seeking access to the electronic data room established by SLBI to

review due diligence materials will be required to sign a confidentiality agreement (the

"Confidentiality Agreement") in substantially the form attached as Exhibit D hereto, or in such

other form as is acceptable to the Palm Terrace Debtors, in consultation with the Committee.

14.    To date, while the Palm Terrace Debtors' informal marketing of the

Purchased Assets is underway, no party has reached an agreement with the Palm Terrace Debtors

to serve as the stalking horse bidder (the "Stalking Horse Bidder") for the Operations. However,

---

[2] The Committee subsequently filed a motion to reconsider certain aspects of the Financing Orders and, following discussions with the Committee, on January 12, 2015, the Debtors filed a Supplemental Motion for Final Order (A) Reaffirming Final DIP Order; (B) Dismissing Motion for Reconsideration; (C) Authorizing the Use of the DIP Facility Amendments to the DIP Credit Agreement and Execution of Supplemental DIP Agreements; and (D) Granting Additional Security Interests and Superpriority Claims Pursuant to Sections 361(2), 363(e), 364(c) and (d) and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c). That motion is currently scheduled to be heard on January 27, 2015.

#32038543 v4

the Palm Terrace Debtors, in consultation with the Committee, may subsequently identify a Stalking Horse Bidder, and the proposed Bidding Procedures allow for the selection of the Stalking Horse Bidder and provision of a Break-Up Fee.

15.    The electronic data room will include a form of asset purchase agreement (the "Purchase Agreement") prepared by the Palm Terrace Debtors and SLBI, in consultation with the Committee.

16.    In the event that the Palm Terrace Debtors, in consultation with the Committee, selects a Stalking Horse Bidder (if any), it will file with the Court a notice of the selection of the Stalking Horse Bidder (the "Stalking Horse Notice"), and a copy of the Stalking Horse Bidder's Purchase Agreement (the "Stalking Horse Bidder's Purchase Agreement"). The Palm Terrace Debtors will serve the Stalking Horse Notice upon (i) the Office of the United States Trustee; (ii) counsel for the DIP Lender; (iii) counsel for the Committee; (iv) known parties having asserted an Interest in the Purchased Assets; (v) any other parties known by the Debtors to have expressed an interest in a transaction with respect to all or part of the Purchased Assets; and (vi) parties having requested notices pursuant to Bankruptcy Rule 2002. Upon selection of a Stalking Horse Bidder, the Palm Terrace Debtors may, in consultation with the Committee, extend the deadlines for submitting competing bids once or successively but are not obligated to do so. If the Palm Terrace Debtors extend such dates, they shall promptly notify all Potential Bidders of such extension, and file a notice reflecting same with the Court.

17.    The Palm Terrace Debtors have decided to proceed with an auction process for the Operations as outlined herein. The Palm Terrace Debtors are willing to consider a sale of all or part of the Operations to one or more purchasers.

18.    In the Palm Terrace Debtors' business judgment, the best course of action is to seek a sale as expeditiously as possible, due to the limited term of the DIP loan and allowed

time period to use cash collateral, as well as the possibility that the Operations will decrease in value with the passage of time.

### C.     The Bidding Procedures

19.     The Palm Terrace Debtors, with the advice of SLBI and in consultation with the Committee, have devised a competitive bidding process (the "<u>Bidding Process</u>") intended to generate the highest and best value for the Purchased Assets.  The Bidding Procedures include the following provisions:[3]

a.     **Potential Bidders.**  To participate in the Bidding Process, each interested person or entity must (i) deliver to SLBI an executed copy of the Confidentiality Agreement and (ii) be deemed by the Debtors, upon consultation with the Committee, to be reasonably likely to be able to fund and complete the consummation of a proposed transaction on terms no less favorable in the aggregate than the terms contained in the Stalking Horse Bidder's Purchase Agreement (or, in the absence of a Stalking Horse Bidder, in the Purchase Agreement) and within the time frame acceptable to the Debtors, upon consultation with the Committee, if selected as the Successful Bidder (as defined below).  As promptly as reasonably possible, the Debtors will determine and notify the interested person or entity if such person or entity is acceptable and deem such person or entity a "<u>Potential Bidder</u>."

b.     **Initial Due Diligence.**  The Debtors shall, subject to reasonable competitive and other business concerns, afford each Potential Bidder with such access to due diligence materials concerning the Purchased Assets as the Debtors deem appropriate, after consultation with the Committee.  Due diligence access may include access to electronic data rooms, and other matters that a Potential Bidder may reasonably request and as to which the Debtors, in their reasonable business judgment, may agree.

SLBI will also coordinate any due diligence requests of Potential Bidders concerning the Other Assets.  In connection with any such requests, Potential Bidders may be required to execute a confidentiality agreement in form and substance satisfactory to the Landlord.

c.     **Letter of Intent**.  A Potential Bidder that desires to proceed to the second round of diligence must deliver a letter of intent (the "<u>Letter of Intent</u>"), via facsimile, hand delivery or overnight mail, to (i) the Debtors, c/o their counsel, Patrick J.

---

[3] In the event of any inconsistencies between the description of the Bidding Procedures contained in this Motion and the language of the Bidding Procedures themselves, in the form attached as <u>Exhibit B</u> to the Bidding Procedures Order, the language of the Bidding Procedures themselves shall govern.

#32038543 v4

Neligan Jr. & James P. Muenker, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201 (Fax) 214-840-5301, and Trey Blalock, SA-Lakeland, LLC *et al.*, 4 West Red Oak Lane, Suite 201, White Plains, NY 10604 (Fax) 914-701-6760, (ii) Bradley J. Clousing, Senior Living Investment Brokerage, Inc. 490 Pennsylvania Avenue, Glen Ellyn, Illinois 60137, (Fax) 630-597-2504, (iii) counsel for the Committee, Francis J. Lawall, Esquire and Donald Detweiler, Esquire, Pepper Hamilton LLP, 3000 Two Logan Square, Philadelphia, PA, 19103 (Fax) 215-981-4750 and (iv) William H. Patrick, III, Heller, Draper, Patrick, Horn & Dabney, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, LA 70130 (Fax) 504-299-3399 so that the Letter of Intent is actually received by 12:00 p.m. (Noon) (CT) on March 10, 2015 (the "LOI Deadline"). The Debtors, after consultation with the Committee, may extend the LOI Deadline once or successively, but are not obligated to do so. If the LOI Deadline is extended, the Debtors shall promptly notify all Potential Bidders of such extension.

A Letter of Intent must contain the following information:

i. the material terms of the transaction proposed by the Potential Bidder for the purchase of all or some portion of the Purchased Assets, including, without limitation, a description of the assets to be purchased, the purchase price to be paid for such assets, and a summary of any other material terms and conditions to the proposed transaction, and

ii. evidence of the Potential Bidder's ability, as determined in the reasonable business judgment of the Debtors, upon consultation with the Committee, to consummate the proposed transaction.

Upon receipt of the Letter(s) of Intent, the Debtors, in consultation with the Committee, shall (i) review each Letter of Intent on the basis of financial and contractual terms and the factors relevant to the Sale Process, and (ii) identify those Potential Bidders evidencing a competitive bid and the ability to consummate the proposed transaction (a "Qualifying Letter of Intent"). The Debtors, upon consultation with the Committee, may provide Potential Bidders that submit a Letter of Intent that is not a Qualifying Letter of Intent an opportunity to revise the Letter of Intent so as to be a Qualifying Letter of Intent, but are not obligated to do so.

d. **Supplemental Due Diligence.** The Debtors shall, subject to reasonable competitive and other business concerns, afford each Potential Bidder submitting a Qualifying Letter of Intent (prior to the date of the Auction) with the opportunity to conduct on-site inspections and such other matters that such Potential Bidder may reasonably request and as to which the Debtors, in their reasonable business judgment, may agree.

e. **Qualified Bids.** Following the supplemental due diligence period, Potential Bidders may submit bids for the Purchased Assets. A proposal ("Bid") received from a Potential Bidder is a "Qualified Bid" if it:

#32038543 v4

i.      is received by the Bid Deadline (as defined below);

ii.     provides for the purchase of all or some portion of the Purchased Assets by the Potential Bidder on an "as is, where is" basis;

iii.    includes a copy of a definitive purchase agreement in form and substance substantially similar to the Purchase Agreement (or, if there is a Stalking Horse Bidder's Purchase Agreement, on terms no less favorable in the aggregate than the terms contained in the Stalking Horse Bidder's Purchase Agreement), signed by an authorized representative of such Potential Bidder, in addition to a marked copy of such agreement to reflect the Potential Bidder's modifications to the Purchase Agreement or the Stalking Horse Bidder's Purchase Agreement, as the case may be;

iv.     is not subject to any due diligence or financing contingency, or board or other approval (excluding any necessary regulatory approval that would follow the execution of definitive documentation for such a transaction);

v.      is accompanied by a cash deposit of not less than 5% of the proposed purchase price (the "Required Deposit");

vi.     includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability, as determined in the reasonable business judgment of the Debtors, upon consultation with the Committee, to consummate the transaction;

vii.    includes a designation of contracts and/or leases to be assumed and assigned to the Potential Bidder and evidence of the Potential Bidder's ability to perform future obligations under such agreements;

viii.   is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Debtors; and

ix.     is irrevocable until at least the following date: (a) with respect to a Qualified Bid that is not selected as the Successful Bid, three days (3) days after the date of the Auction Notice (as defined below), or (b) with respect to a Qualified Bid that is selected as the Successful Bid and approved by the Court, the closing date of the transaction with the Successful Bidder (as defined below).

A Potential Bidder that makes a Qualified Bid is a "Qualified Bidder." The Debtors, in their reasonable business judgment and, after consultation with the Committee, shall determine whether the Bid of a Potential Bidder meets the foregoing requirements to become a Qualified Bid.

As part its Bid, a Potential Bidder may also include a proposal for the purchase of all or some portion of the Other Assets by the Potential Bidder from the Landlord. For the avoidance of doubt, however, there is <u>no</u> requirement that a Potential Bidder submit a proposal for the purchase of all or some portion of the Other Assets in order to submit a Qualified Bid or become a Qualified Bidder.

f.     **Bid Deadline.**  A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via hand delivery or overnight mail, to (i) the Debtors, c/o their counsel, Patrick J. Neligan Jr. & James P. Muenker, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201 (Fax) 214-840-5301, and Trey Blalock, SA-Lakeland, LLC *et al.*, 4 West Red Oak Lane, Suite 201, White Plains, NY 10604 (Fax) 914-701-6760, (ii) Bradley J. Clousing, Senior Living Investment Brokerage, Inc. 490 Pennsylvania Avenue, Glen Ellyn, Illinois 60137 (Fax) 630-597-2504, (iii) counsel for the Committee, Francis J. Lawall, Esquire and Donald Detweiler, Esquire, Pepper Hamilton LLP, 3000 Two Logan Square, Philadelphia, PA, 19103 (Fax) 215-981-4750 and (iv) William H. Patrick, III, Heller, Draper, Patrick, Horn & Dabney, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, LA 70130 (Fax) 504-299-3399 so that the Bid is actually received by 12:00 p.m. (Noon) (CT) on March 25, 2015 (the "<u>Bid Deadline</u>").  The Debtors, after consultation with the Committee, may extend the Bid Deadline once or successively, but are not obligated to do so.  If the Bid Deadline is extended, the Debtors shall promptly notify all Potential Bidders of such extension.

g.     **No Qualified Bids.**  If no Qualified Bids are received, the Debtors shall report the same to the Court and declare the Auction a "failed auction."

h.     **Only One Qualified Bid.**  In the event that there is no Stalking Horse Bidder and only one Qualified Bid is received, the Auction will not be held and the Debtors instead may seek approval of such Qualified Bid and the associated Purchase Agreement at the Sale Hearing.  However, in the event that only one Qualified Bid is received, the Debtors may determine in their reasonable business judgment, after consultation with the Committee, that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."

i.     **Auction Procedure.**  If at least one Qualified Bid other than the Stalking Horse Bidder's Qualified Bid is received, the Debtors shall conduct the Auction on March 31, 2015, at the offices of Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201 at 10:00 a.m. (CT), or such later time or other place as the Debtors shall notify all Qualified Bidders.  Only Qualified Bidders shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction.  The Debtors shall not consider a particular Bid unless the bidding party has submitted a Qualified Bid and attends the Auction and the Qualified Bidder's representative at the Auction has authority to bind the Qualified Bidder.

Prior to the start of the Auction, the Debtors, in consultation with the Committee, shall evaluate all Qualified Bids, as well as the Stalking Horse Bidder's Purchase

Agreement (if any), and shall determine which Qualified Bid constitutes the best offer for the Purchased Assets (the "Starting Auction Bid"). The Debtors shall announce the Starting Auction Bid at the start of the Auction.

The Debtors, in consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent Qualified Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code or any order of the Court, and (ii) disclosed to each Qualified Bidder at the Auction.

j.   **Minimum Overbids.** The minimum initial overbid and any subsequent overbids must be in increments of at least $50,000 in cash consideration (which amount the Debtors, in their reasonable business judgment, after consultation with the Committee, may modify at the Auction) until the Debtors declare a Successful Bidder. Any overbid made in response to the bid of the Stalking Horse Bidder must exceed the Stalking Horse Bidder's Bid not only by the above figure of $50,000, but also by the amount of any applicable Break-Up Fee.

k.   **Successful Bidder.** At the conclusion of the Auction, the Debtors, in consultation with the Committee, shall (i) review the Stalking Horse Bidder's Purchase Agreement or any Qualified Bid of the Stalking Horse Bidder, if any, and shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale Process, including those factors affecting the speed and certainty of consummation of the Qualified Bid and (ii) identify the best bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder"). In determining the Successful Bidder, the Debtors and Committee shall consider the Break-Up Fee (if applicable).

If at least one Qualified Bid in addition to the Successful Bid, then, at the Sale Hearing, the Debtors will seek approval of the Successful Bid, and, at the Debtors' election, upon consultation with the Committee, may also seek approval of the next best Qualified Bid (the "Alternate Bid" and, the bidder making such Alternate Bid, the "Alternate Bidder"). The Debtors' presentation to the Court of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Debtors' acceptance of either of such Qualified Bids until such Qualified Bids are approved by the Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then, at the Debtors' election, upon consultation with the Committee, the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effect the Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court.

On the second business day following the selection of the Successful Bidder, the Debtors will file with the Court a notice of the selection of the Successful Bidder and the Alternate Bidder (the "Auction Notice"), copies of the Successful Bidder's Purchase Agreement and the Alternate Bidder's Purchase Agreement,

and affidavits of the Debtors and the Successful Bidder in support of the sale of the Purchased Assets to the Successful Bidder. The Debtors will serve the Auction Notice upon (i) the Office of the United States Trustee; (ii) counsel for the DIP Lender; (iii) counsel for the Committee; (iv) the United States Trustee; (v) known parties having asserted an Interest in the Purchased Assets; and (vi) parties having requested notices pursuant to Bankruptcy Rule 2002.

l. **Return of Deposits.** All Required Deposits, but excluding the Required Deposit of the Successful Bidder, shall be returned to Qualified Bidders within five (5) business days after the date of the Auction.

20. Based on the foregoing and upon approval of the Bidding Procedures, the following timeline would be established:

(i) Issuance of Notice of Auction and Sale Hearing - within three (3) business days following entry Bidding Procedures Order

(ii) Issuance of Cure Notice – no less than 30 days prior to the Sale Hearing

(iii) Deadline to Submit Letters of Intent – on or about March 10, 2015

(iv) Deadline to Submit Qualified Bids – on or about March 25, 2015 at 12:00 p.m. (CT)

(vi) Auction – March 31, 2015 at 10:00 a.m. (CT)

(vii) Sale and Cure Objections Deadline – March 31, 2015 at 5:00 p.m. (CT)

(vii) Proposed Sale Hearing – on or about April 7, 2015

**D. The Notice Procedures**

21. The Palm Terrace Debtors propose the following Notice Procedures in connection with the Auction and Sale:

a. **Notice.** The Debtors will give notice (the "Notice of Auction and Sale Hearing") within three (3) business days after the entry of the Bidding Procedures Order of the Bidding Procedures, the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline for the Sale Hearing by sending a notice, substantially in the form attached hereto as Exhibit E, to (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the Internal Revenue Service, (v) all applicable federal, state, and local taxing authorities having jurisdiction over the Purchased Assets; (vi) the Counterparties; (vii) the United States Department of Justice; (vii) known parties having asserted an

Interest in the Purchased Assets; (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (ix) any other parties known by the Debtors to have expressed an interest in a transaction with respect to all or part of the Purchased Assets (collectively, the "Notice Parties").

b. **Objections.** The Notice of Auction and Sale Hearing will specify that objections to the relief requested by this Motion, including objections relating to the assumption or assignment of any unexpired lease or executory contract, shall be set forth in writing and specify with particularity the grounds for such objections or other statements of position, and shall be filed and served on or before the date that is seven (7) days prior to the Sale Hearing (the "Objection Deadline"), on: (i) the Debtors, c/o their counsel, Patrick J. Neligan Jr. & James P. Muenker, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201 (Fax) 214-840-5301, and Trey Blalock, SA-Lakeland, LLC *et al*., 4 West Red Oak Lane, Suite 201, White Plains, NY 10604 (Fax) 914-701-6760, (ii) Bradley J. Clousing, Senior Living Investment Brokerage, Inc. 490 Pennsylvania Avenue, Glen Ellyn, Illinois 60137 (Fax) 630-597-2504, (iii) counsel for the Committee, Francis J. Lawall, Esquire and Donald Detweiler, Esquire, Pepper Hamilton LLP, 3000 Two Logan Square, Philadelphia, PA, 19103 (Fax) 215-981-4750 and (iv) William H. Patrick, III, Heller, Draper, Patrick, Horn & Dabney, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, LA 70130 (Fax) 504-299-3399 (collectively, the "Objection Service Parties"). The Debtors request that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred from asserting such objections with respect to the consummation and closing of the Sale, including, without limitation, any objections relating to the proposed assumption and assignment of any agreement. The Notice of Auction and Sale Hearing will further state that any objections filed and served in accordance with the foregoing procedure will be heard by the Court at the Sale Hearing.

E. **Assumption and Assignment of Executory Contracts and/or Unexpired Leases**

22.     In conjunction with the Sale, the Palm Terrace Debtors will seek to

assume and assign to the Successful Bidder certain agreements identified in the Successful Bid.

23.     At least thirty (30) days before the Sale Hearing, the Palm Terrace Debtors

shall file and serve upon counterparties to the Palm Terrace Debtors' executory contracts and

unexpired leases (the "Counterparties") a notice substantially in the form attached hereto as

Exhibit F (the "Cure Notice"), informing Counterparties that the Palm Terrace Debtors'

executory contracts and unexpired leases may be assumed and assigned, and setting forth what

the Palm Terrace Debtors' records show to be the applicable cure amounts, if any (the "Cure Amounts").

24.     All objections to the relief sought at the Sale Hearing, including objections to the Cure Amounts and objections to the proposed assumption and assignment of the agreements identified in any bid, must: (i) be in writing; (ii) state with specificity the nature of such objection (with appropriate documentation in support thereof); (iii) comply with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Louisiana; and (iv) be filed with this Court and served upon (so as to be received by) the Objection Service Parties on or before the Objection Deadline.

25.     A party failing to file and serve a timely objection, on or before the Objection Deadline, to the Cure Amounts and/or the Palm Terrace Debtors' assumption and assignment of any executory contract or unexpired lease shall be forever barred from objecting to the Cure Amounts and/or assumption and assignment, and will be deemed to consent to the Cure Amounts and/or assumption and assignment.  In the event that timely objection to the Cure Amounts and/or assumption and assignment of any executory contract or unexpired lease is filed, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court.

**RELIEF REQUESTED**

26.     The Palm Terrace Debtors seek expedited entry of the Bidding Procedures Order: (a) approving the Bidding Procedures, (b) approving a Break-Up Fee consistent with the terms of this Motion, (c) scheduling the Auction and Sale Hearing, (d) approving the Notice Procedures, and (e) granting certain related relief.

27.     In addition, at the conclusion of the Sale Hearing, the Palm Terrace Debtors will seek entry of the Sale Order: (i) authorizing the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the assumption and assignment of any designated executory contract(s) and/or unexpired lease(s), and (iii) granting certain related relief.

## BASIS FOR REQUESTED RELIEF

**A.     The Bidding Procedures Should Be Approved.**

28.     The Bidding Procedures are designed to generate the highest and best bid for the Estates' assets by facilitating a competitive Bidding Process in which all Potential Bidders are encouraged to participate and submit competing Qualified Bids.

29.     The Bidding Procedures provide Potential Bidders with more than the twenty-one (21) days' notice of the Sale Hearing required by Bankruptcy Rule 2002, and provide Potential Bidders with sufficient opportunity to acquire the information necessary for submission of a timely and informed Qualified Bid.

30.     The Palm Terrace Debtors operate in a very specialized and sophisticated industry.  The Palm Terrace Debtors, through the experience of their management and aided by the expertise of SLBI, are familiar with many of the parties who may have a realistic interest in bidding for the Purchased Assets.  Thus, the Palm Terrace Debtors believe that the approximately six (6) month period between the Petition Date and the Bid Deadline is a sufficient period of time in which to generate for the benefit of the Estates the highest and best offer for the Purchased Assets.

**B.     The Break-Up Fee Should Be Approved.**

31.     Although the Palm Terrace Debtors do not presently have a Stalking Horse Bidder, the Palm Terrace Debtors believe, based on consultation with SLBI, that having the ability to offer a reasonable break-up fee not in excess of 2.5% of the bid in question (the

#32038543 v4

"Break-Up Fee") to a Stalking Horse Bidder prior to the Auction may assist them in generating the highest and best offer for the benefit of the Estates. The Palm Terrace Debtors may elect not to grant any Break-Up Fee, but seek the authority to grant a Break-Up Fee in the Palm Terrace Debtors' discretion. The Palm Terrace Debtors are requesting this authority at this time to avoid the potential uncertainty, cost and delay of negotiation break-up fee protections with a potential Stalking Horse Bidder and then having to schedule another noticed hearing.

32. "A break-up fee is a fee paid by a seller to a prospective purchaser in the event that a contemplated transaction is not consummated." *In re ASARCO, L.L.C.*, 650 F.3d 593, 602 n. 9 (5th Cir. 2011) (internal quotations omitted). Break-up fees "provide an incentive for an initial bidder to serve as a so-called stalking horse, whose initial research, due diligence, and subsequent bid may encourage later bidders." *Id.* "The break-up fee compensates the stalking horse for the risk it shoulders in being the first bidder." *Id.*

33. Courts have recognized that a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999). Furthermore, if the availability of break-up fees and expense reimbursement were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. Id.; see also ASARCO, 650 F.3d at 602 (approving expense reimbursement for prospective bidders prior to the incurrence of due diligence costs)

#32038543 v4

34.     In this case, the Break-Up Fee would allow the Palm Terrace Debtors to have the discretion to grant such protections, if necessary, to incentivize a potential Stalking Horse Bidder without incurring the additional cost and delay of having to prosecute an additional motion.

35.     The Palm Terrace should be permitted, in the exercise of their business judgment and in consultation with the Committee, to offer a Break-Up Fee of not more than 2.5% of a Stalking Horse Bidder's proposed bid in order to preserve the value of the Estates, promote more competitive bidding, and maximize the value of the Purchased Assets. Accordingly, the Palm Terrace Debtors request that the Court authorize the Palm Terrace Debtors to provide, in their discretion and in consultation with the Committee, the Break-Up Fee to a Stalking Horse Bidder.

**C.     The Assumption and Assignment of the Executory Contracts and/or Unexpired Leases Should Be Approved.**

36.     Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The standard governing bankruptcy court approval of a debtor-in-possession's decision to assume or reject an executory contract or unexpired lease is the "business judgment" test. See, e.g., Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985); Sharon Steel Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Stable Mews Assoc. Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). The test is not an onerous one, and if the debtor's request is not manifestly unreasonable or made in bad faith, the Court should normally grant approval "[a]s long as [the proposed action] appears to enhance [the] debtor's estate." Richmond Leasing, 762 F.2d at 1309. If assumption of a contract appears to enhance a debtor's estate, court approval of a debtor's decision to assume the contract should be withheld

-17-

only if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code.  Id.  The Court should defer to the debtors' business judgment absent "a finding of bad faith or gross abuse of [the debtors'] 'business discretion.'"  In re Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985) (citation omitted).  Any more exacting scrutiny would hinder the administration of the estate and increase costs.  See Richmond Leasing, 762 F.2d at 1311.

37.    In order to assign an executory contract, a debtor-in-possession must first assume it.  In order to assume a contract, a debtor-in-possession must "cure, or provide adequate assurance that [he] will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default.  11 U.S.C. § 365(b)(1).  Here, the Palm Terrace Debtors propose to circulate the Cure Notice to the Counterparties at least thirty (30) days prior to the Sale Hearing, which will provide Counterparties with sufficient opportunity to assess the Palm Terrace Debtors' proposed Cure Amounts and assert any objections.

38.    Once an executory contract is assumed, the debtor-in-possession may then seek to assign the contract.  Pursuant to section 365(f) of the Bankruptcy Code, a debtor-in-possession may assign an assumed contract only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive and pay rent).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and wherewithal to manage the type of

-18-

enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

39.     In response to any objection to the Successful Bidder's ability to perform under any executory contract and/or unexpired lease, in addition to the affidavits to be filed by the Palm Terrace Debtors and the Successful Bidder, the Palm Terrace Debtors will present facts at the Sale Hearing demonstrating the financial wherewithal of the Successful Bidder, and its willingness and ability to perform under the executory contract(s) or unexpired lease(s) in question. The Sale Hearing, therefore, will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of any Successful Bidder to pprovide adequate assurance of future performance.

**D.      The Sale Should Be Approved Pursuant to 11 U.S.C. § 363(b) and (d).**

40.     Section 363(b)(l) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In order to justify a sale under Section 363(b), a debtor-in-possession must articulate a "business justification for using, selling, or leasing the property outside of the ordinary course of business." In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R. 251, 254 (N.D. Tex. 2005); see also In re Martin. 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). Great judicial deference is given to the debtor-in-possession's exercise of business judgment. GBL Holding, 331 B.R. at 254. "As long as the sale appears to enhance a debtor's estate, court approval of a [debtor-in-possession's] decision to sell should only be withheld if the [debtor-in-possession's] judgment is clearly erroneous, too speculative, or

-19-

contrary to the provisions of the Bankruptcy Code." *Id.* (quoting <u>Richmond Leasing Co. v. Capital Bank, N.A.</u>, 762 F.2d 1303, 1309 (5th Cir. 1985)) (internal quotations omitted). Once the debtor-in-possession articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" <u>In re S.N.A. Nut Co.</u>, 186 B.R. 98, 102 (Bankr. N.D. 111. 1995); <u>In re Integrated Res. Inc.</u> 147 B.R. 650, 656 (S.D.N.Y. 1992); <u>In re Johns-Manville Corp.</u>, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a debtor's management decisions").

41.    The Palm Terrace Debtors have a sound business justification for selling the Purchased Assets at this time and in the proposed manner. The fairness and reasonableness of the consideration to be paid for the Purchased Assets, as may be declared at the Sale Hearing, will be conclusively demonstrated by exposure to the marketplace. The Palm Terrace Debtors have proposed a fair and open Sale Process for attracting the highest and best value for the Purchased Assets.

42.    Due to the specialized nature of the Palm Terrace Debtors' business, and the limited authority of the Palm Terrace Debtors to use cash collateral, the Palm Terrace Debtors may not be able to continue operations for a significant period of time. In addition, preservation of the Estates' assets, for a lengthy period of time would require the Palm Terrace Debtors to incur substantial administrative expenses for the Estates. Consequently, the prudent course for the Palm Terrace Debtors is to proceed with a formal sale process as expeditiously as possible. Particularly in light of these circumstances, the Palm Terrace Debtors' proposed sale process demonstrates sound business judgment, and represents the best path to providing maximum value for the Estates and their creditors.

43.     Moreover, the Sale of the Purchased Assets will be subjected to a competitive Bidding Process, enhancing the Palm Terrace Debtors' ability to receive the highest and best offer for the Purchased Assets.  Consequently, the fairness and reasonableness of the consideration to be received by the Palm Terrace Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether the Palm Terrace Debtors are receiving a fair and reasonable price for the Purchased Assets.

44.     In addition, the Palm Terrace Debtor's service of the Notice of Auction and Sale Hearing, the Stalking Horse Notice (if any), and the Auction Notice is reasonably calculated to provide timely and adequate notice to the Estates' major creditor constituencies, those parties most interested in this case, those parties potentially interested in bidding on the Purchased Assets, and others whose interests are potentially affected by the proposed Sale.

45.     Accordingly, consummating the Sale expeditiously and in the manner proposed by the Palm Terrace Debtors is in the best interest of the Estates.

**E.     The Sale Should be Made Free and Clear of Interests Pursuant to 11 U.S.C. § 363(f).**

46.     Section 363(f) of the Bankruptcy Code permits a debtor-in-possession to sell assets free and clear of all Interests (with any such Interests attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

47.     Under section 363(f), a debtor-in-possession may sell all or any part of the debtor's property fee and clear of any and all liens, claims, or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the

#32038543 v4

subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

48.     As section 363(f) is written in the disjunctive, a debtor-in-possession need only meet one of the five conditions of section 363(f).  The Palm Terrace Debtors will be able to demonstrate at the Sale Hearing that one or more of these conditions will be satisfied with respect to each party holding a lien on or security interest in any of the Purchased Assets.  At a minimum, the Palm Terrace Debtors expect that the second and fifth of these requirements will be satisfied.

**F.     The Successful Bidder Should Receive the Protections of 11 U.S.C. § 363(m).**

49.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993);  In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985);  In re Congoleum Corp., No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

50.     In response to any objection, in addition to the affidavits filed by the Palm Terrace Debtors and the Successful Bidder, the Debtors will present facts at the Sale Hearing demonstrating that any Successful Bidder for the Purchased Assets has negotiated at arm's length, and that all parties were represented by their own counsel.

51.     Accordingly, the Sale Order includes a provision that the Successful Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Palm Terrace Debtors believe that providing any Successful Bidder with such protection will ensure that the Estates will receive the maximum possible price for the Purchased Assets.

### G. Relief from Bankruptcy Rule 6004(h) is Warranted.

52.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Palm Terrace Debtors request that the Court waive this 14-day stay, and that the Sale Order be effective immediately.

53.     The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the 14-day stay, the leading bankruptcy treatise suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY 16th Ed. Rev., ¶ 6004.11 at 6004-20 (2014). The treatise further suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

54.     As described above, time is of the essence. The Palm Terrace Debtors may not have sufficient access to funds to secure and maintain the Purchased Assets significantly beyond the contemplated time frame for this Sale Process. Accordingly, the Palm Terrace Debtors need to move as expeditiously as possible in order to prevent deterioration in the value of the Estates' assets. Consequently, a waiver of the Bankruptcy Rule 6004(h) stay is in the Estates' best interest.

### NOTICE

Notice of this Motion is being given to the parties on the attached service list. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

-23-

WHEREFORE, the Palm Terrace Debtors respectfully request that the Court enter the Bidding Procedures Order substantially in the form attached hereto as Exhibit A: (i) approving the Bidding Procedures, (ii) scheduling the Auction and Sale Hearing, (iii) approving the Notice Procedures, (iv) approving the Break-Up Fee, and (v) granting related relief; and after a Sale Hearing, enter the Sale Order substantially in the form attached hereto as Exhibit C: (i) approving the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the assumption and assignment of any designated agreements, and (iii) granting certain related relief and such other relief as the Court may deem appropriate.

Dated: January 23, 2015

_/s/ Patrick J. Neligan, Jr._
Patrick J. Neligan, Jr.
Texas Bar No. 14866000
pneligan@neliganlaw.com
James P. Muenker
Texas Bar No. 24002659
jmuenker@neliganlaw.com

**NELIGAN FOLEY LLP**
325 N. St. Paul
Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

_/s/ Jan M. Hayden_
Jan M. Hayden (#06672)
jhayden@bakerdonelson.com
Erin E. Pelleteri (#30666)
epelleteri@bakerdonelson.com

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**COUNSEL FOR THE DEBTORS**

-24-

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2015, a true and correct copy of the foregoing was served on each of the parties on the attached Service List by U.S. First Class Mail, postage prepaid.

_/s/ Patrick J. Neligan, Jr._
Patrick J. Neligan, Jr.

#32038543 v4
81522v.3

**MASTER SERVICE LIST**
*New Louisiana Holdings, LLC, et al.*

**Debtor**

New Louisiana Holdings, LLC
Attn:  Raymond P. Mulry
4 West Red Oak Lane, Suite 201
White Plains, NY  10604

**Debtor's Counsel**

Neligan Foley LLP
Attn: Patrick J. Neligan, Jr.
325 N. St. Paul, Suite 3600
Dallas, TX  75201

Baker Donelson Bearman Caldwell &
Berkowitz, PC
Attn:  Jan M. Hayden
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170

**U.S. Trustee**

Office of the United States Trustee
300 Fannin Street, Suite 3196
Shreveport, LA  71101

**30 Largest Creditors on Consolidated Basis (Excluding Insiders)**

Agency for Health Care Administration
P.O. box 13749
Tallahassee, FL  32317-3749

Airgas USA, LLC
P.O. Box 532609
Atlanta, GA  30353-2609

American Pharmaceutical Services
P.O. Box 102082
Atlanta, GA  30368-2082

American Health Associates, Inc.
15712 SW 41st Street, Suite 16
Davie, FL  33331

Bay Pharmacy
Omnicare Billing
P.O. Box 715268
Columbus, OH  43271-5268

Belfor USA Group Inc.
185 Oakland Avenue, Suite 300
Birmingham, MI  48009-3433

Bayfront Medical Center, Inc.
701 6th Street South
St. Petersburg, FL  33701

Chicago Health Care Leasing LLC
455 N. Cityfront Plaza, Suite 15
Chicago, IL  60611

Compos Medical Pharmacy
660 Distributors Row, Suite A &B
Jefferson, LA  70123

CHC Labs Inc.
P.O. Box 277522
Atlanta, GA  30384-7522

Department of Health and Hospitals
P.O. Box 3767
Baton Rouge, LA  70821-3767

Direct Supply, Inc.
6767 N. Industrial Road
Milwaukee, WI 53223

80306v.2

Direct Supply Healthcare Equipment
P.O. Box 88201
Milwaukee, WI 53288-0201

Georgia Department of Community Health
2 Peachtree Street, NW
Atlanta, GA 30303

Health Services Group, Inc.
3220 Tillman Drive, Suite 300
Bensalem, PA 19020

Joerns Healthcare, Inc.
P.O. Box 933733
Atlanta, GA 31193

Karl Koch
Koch Law Firm
637 St. Ferdinand Street
Baton Rouge, LA 70802

Mobilex USA/Symphony Inc.
930 Ridgebrook Road, 3rd Floor
Sparks Glencoe, MD 21152

Liberty Ambulance Service Inc.
1626 Atlantic University Cir.
Jacksonville, FL 32207

Maintenance Warehouse
P.O. Box 509058
San Diego, CA 92150-9058

Medline Industries
P.O. Box 382075
Pittsburgh, PA 15251-8075

Medical Imaging, Inc.
5000 North West 27th Ct., Suite B
Gainesville, FL 32606

Omnicare Pharmacy
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

Phelps Dunbar LLP
P.O. Box 974798
Dallas, TX 75397-4798

Palm Garden Health Care Inc.
2033 Main Street, Suite 300
Sarasota, FL 34237

Respiratory Health Services, LLC
P.O. Box 7247-6524
Philadelphia, PA 19170-6524

RK Collaborative
720 Garden Plz
Orlando, FL 32803

Recovercare LLC
Key Bank – LB #713222
895 Central Avenue, Suite 600
Cincinnati, OH 45202

U.S. Food Service
3682 Collection Center Drive
Chicago, IL 60693-0036

Vista Clinical Diagnostics, Inc.
4290 South Hwy.27, Suite 201
Clemont, FL 34711

**Creditors' Committee**

Healthcare Services Group, Inc.
Attn: Patrick Orr
3220 Tillman Drive, Suite 300
Bensalem, PA 19020

Medline Industries, Inc.
Attn: Shane Reed
1 Medline Place
Mundelein, IL 60060

Omnicare, Inc.
Attn: Joann Billman
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

80306v.2

**Counsel For Creditors' Committee**

Pepper Hamilton LLP
Attn:  Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streetsw
Philadelphia, PA  19103-2799

McGlinchey Stafford, PLLC
Attn:  Heather LaSalle Alexis
601 Poydras Street, 12th Floor
New Orleans, LA  70130

**Parties Requesting Notice**

Robert M. Hirsh
Jordana L. Renert
Arent Fox LLP
1675 Broadway
New York, NY  10019

Paul N. Debaillon
Debaillon & Miley
201A Travis Street
P.O. Box 51387
Lafayette, LA 70505

Robert Lapowsky
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA  19103

Joseph Corrigan
Iron Mountain Information
Management LLC
One Federal Street
Boston, MA  02110

Indian River County Tax Authority
Attn:  Bankruptcy Department
P.O. Box 1509
Vero Beach, FL  32961-1509

Noel Steffes Melancon
William E. Steffes
Steffes, Vingiello & McKenize, LLC
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA  70817

Mildred Tagmeyer
c/o Eugene R. Preaus
Fowler Rodriguez
400 Poydras Street, 30th Floor
New Orleans, LA  70130

Darryl J. Foster
Leland G. Horton
Bradley Murchison Kelly & Shea LLC
1100 Poydras Street, Suite 2700
New Orleans, LA  70163

William H. Patrick III
Tristan Manthey
Cherie D. Nobles
Heller Draper Patrick Horn & Dabney LLC
650 Poydras Street, Suite 2500
New Orleans, LA  70130

Joseph P. Hebert
Liskow & Lewis
822 Harding Street
Lafayette, LA  70503

Robert W. Jones
Brent R. McIlwain
Holland & Knight LLP
200 Crescent Court, Suite 1600
Dallas, TX  75201

H. Kent Aguillard
P.O. Box 391
Eunice, LA  70535

80306v.2

Baton Rouge Total Care Center
c/o William A. Ball, President
P.O. Box 82279
Baton Rouge, LA 70884-2279

Master Tenant, LLC
4 South Broadway, Suite 614
White Plains, NY 10601

Kirk A. Patrick, III
James C. Donohue
Donohue Patrick & Scott, P.L.L.C.
450 Laurel Street, Suite 1600
Baton Rouge, LA 70801

Karin H. Berg
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661

John J. Lamoureux
Carlton Fields Jorden Burt, P.A.
4221 West Boy Scout Blvd., 10th Floor
Tampa, FL 33607-5736

Lourdes A. Naranjo
Agency for Health Care Administration
Office of the General Counsel
8333 N.W. 53rd Street, Suite 300
Miami, FL 33166

Michael A. Crawford
Taylor Porter Brooks & Phillips LLP
P.O. Box 2471
Baton Rouge, LA 70821-2471

Regency 14333 LLC
c/o Westside Houses, Inc.
1411 Broadway
New York, NY 10018

Michael T. Perry
Attorney at Law
5635-S Government Street
Baton Rouge, LA 70806-6035

John Vanker O'Grady, Kathleen Clark Knight
And Joanna M. Greber
Wilkes & McHugh
One North Dale Mabry Hwy, Ste 800
Tampa, FL 33609

David F. Waguespack
Stephen P. Scullin
1100 Poydras Street, Suite 3100
New Orleans, LA 70163

Ross Cicardo
Cicardo Law Office, LLC
2110 West Pinhook Road
P.O. Box 80917
Lafayette, LA 70598

Lourdes A. Naranjo
Florida Agency for Health
Care Administration
Office of the General Counsel
8333 N.W. 53rd Street, Suite 300
Miami, FL 33166

Phillip T. DeBaillon
DeBaillon Law Firm, LLC
P.O. Box 51387
Lafayette, LA 70505