## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 14-50756** |
| **NEW LOUISIANA HOLDINGS, LLC,** | § | **(Chapter 11)** |
| *et al.* | § | |
| | § | **Jointly Administered** |
| **DEBTORS** | § | |

## JOINT PLAN OF LIQUIDATION FOR NEW LOUISIANA HOLDINGS, LLC, ET AL., PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

NELIGAN FOLEY LLP
Patrick J. Neligan, Jr.
James P. Muenker
325 N. St. Paul
Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

PEPPER HAMILTON LLP
Francis J. Lawall
Donald J. Detweiler
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

BAKER DONELSON
Jan Marie Hayden
201 St. Charles Avenue, 36th Floor
New Orleans, LA 70170
Telephone: (504) 566-8645
Facsimile : (504) 585-6945

MCGLINCHEY STAFFORD, PLLC
Rudy J. Cerone
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 596-2786
Facsimile: (504) 910-9362

COUNSEL FOR THE DEBTORS

COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURE CREDITORS

Dated: June 17, 2016

# TABLE OF CONTENTS

**ARTICLE I** DEFINITIONS, CONSTRUCTION, AND INTERPRETATION.......................1

**ARTICLE II** UNCLASSIFIED CLAIMS ...............................................................11

2.01.   Administrative Claims. ........................................................................11
2.02.   Priority Tax Claims...............................................................................13
2.03.   U.S. Trustee Fees. .................................................................................13

**ARTICLE III** CLASSIFICATION OF CLAIMS AND INTERESTS ...................13

3.01.   Introduction...........................................................................................13
3.02.   Claims Against and Interests in the Debtors.........................................14

**ARTICLE IV** IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
CLAIMS AND INTERESTS ...............................................................................14

4.01.   Unimpaired Claims and Interests..........................................................14
4.02.   Impaired Claims and Interests ..............................................................14
4.03.   Controversy Concerning Impairment ...................................................15

**ARTICLE V** TREATMENT OF CLAIMS AND INTERESTS ...........................15

5.01.   Non-Tax Priority Claims – Class 1 .......................................................15
5.02.   Secured Tax Claims – Class 2 ..............................................................15
5.03.   Miscellaneous Secured Claims – Class 3..............................................16
5.04.   General Unsecured Claims – Class 4.....................................................16
5.05.   Personal Injury Claims – Class 5 ..........................................................17
5.06.   Chicago Health Care Leasing Claims – Class 6 ...................................18
5.07.   Encore Lender Claims – Class 7 ...........................................................18
5.08.   Insider Claims – Class 8 .......................................................................19
5.09.   TCR Personal Injury Claims – Class 9 .................................................19
5.10.   Interests in the Debtors – Class 10........................................................19

**ARTICLE VI** MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN ........................................................................................................19

6.01.   The Settlement ......................................................................................19
6.02.   Distributions; Sources of Cash for Plan Distributions..........................19
6.03.   Transfers of Assets to the Claimants Trusts .........................................20
6.04.   The Unsecured Claimants Trust.............................................................21
6.05.   The Tort Claimants Trust.......................................................................25
6.06.   Duties of the Creditors Committee ........................................................29

**ARTICLE VII** TREATMENT OF EXECUTORY CONTRACTS ......................30

7.01.   General Treatment of Executory Contracts:  Rejected .........................30

i

7.02.   Cure Payments and Release of Liability ..................................................30
7.03.   Bar to Rejection Claims ....................................................................30
7.04.   Rejection Claims ..............................................................................31

**ARTICLE VIII CONDITIONS TO CONFIRMATION DATE AND
EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION ...................31**

8.01.   Conditions Precedent to Confirmation Date ....................................31
8.02.   Conditions Precedent to the Effective Date .....................................31
8.03.   Consequences of Non-Occurrence of Effective Date .......................32
8.04.   Approval of Plan Documents ...........................................................32

**ARTICLE IX EFFECT OF PLAN CONFIRMATION AND EFFECTIVE
DATE ...................................................................................................33**

9.01.   Binding Effect .................................................................................33
9.02.   Vesting of Assets ............................................................................33
9.03.   Assertion of Causes of Action, Defenses and Counterclaims ...........33
9.04.   Discharge of Debtors .......................................................................34
9.05.   Exculpation .....................................................................................35
9.06.   Release ............................................................................................35
9.07.   Injunction ........................................................................................36
9.08.   Term of Bankruptcy Injunction or Stays .........................................36
9.09.   Effectuating Documents; Further Transactions; Timing ...................36
9.10.   Post Effective Date Undertakings by HCN .....................................36
9.11.   Post-Effective Date Corporate Existence .........................................37

**ARTICLE X OBJECTIONS TO CLAIMS; DISTRIBUTIONS ...........................38**

10.01.  Objections to Claims and Interests ..................................................38
10.02.  Objection Deadline ..........................................................................38
10.03.  Settlement of Objections to Claims .................................................38
10.04.  No Interest on Claims ......................................................................38
10.05.  Setoffs; No Waiver ..........................................................................38
10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims .................39
10.07.  Distributions Under the Plan ...........................................................40
10.08.  Duty to Disgorge Overpayments .....................................................41
10.09.  Allocation of Plan Distributions Between Principal and Interest .....................42
10.10.  No Recourse ....................................................................................42

**ARTICLE XI ACCEPTANCE OR REJECTION OF THE PLAN .......................42**

11.01.  Impaired Classes Entitled to Vote ...................................................42
11.02.  Acceptance by an Impaired Class .....................................................42
11.03.  Section 1129(b) Cramdown ............................................................43

**ARTICLE XII** RETENTION OF JURISDICTION..................................................................43

12.01. Jurisdiction..................................................................................................43
12.02. Examination of Claims ..............................................................................43
12.03. Determination of Disputes ........................................................................43
12.04. Additional Purposes...................................................................................44
12.05. Failure of the Bankruptcy Court to Exercise Jurisdiction.........................46

**ARTICLE XIII** MISCELLANEOUS PROVISIONS..............................................................46

13.01. General Notices.........................................................................................46
13.02. Plan Supplement .......................................................................................47
13.03. Exemption From Transfer Taxes ...............................................................47
13.04. Asserting and Curing Default Under the Plan ...........................................47
13.05. Revocation or Withdrawal of the Plan ......................................................48
13.06. Modification of the Plan ............................................................................48
13.07. Computation of Time.................................................................................48
13.08. Due Authorization.....................................................................................48
13.09. Implementation .........................................................................................48
13.10. Execution of Documents............................................................................48
13.11. Bankruptcy Restrictions ............................................................................49
13.12. Ratification.................................................................................................49
13.13. Integration Clause......................................................................................49
13.14. Interpretation.............................................................................................49
13.15. Severability of Plan Provisions .................................................................49
13.16. Governing Law ..........................................................................................50

# INTRODUCTION

New Louisiana Holdings, LLC and certain related debtors and debtors in possession in the above-captioned jointly administered cases (collectively, and as defined in Article I below, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Proponents") propose this Joint Plan of Liquidation pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement accompanying this Plan for a discussion of the Debtors' history, business, properties, results of operations, projections for future liquidation, risk factors, a summary and analysis of the Plan, and certain related matters.

The Distributions to be made pursuant to this Plan to holders of Allowed Claims in each of the Classes of Claims against the Debtors identified in Article III of this Plan, are set forth in Article V of this Plan.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning, if any, ascribed to that term in the Bankruptcy Code. If there is an inconsistency between a definition in this Plan and a definition in the Bankruptcy Code, the definition set forth in this Plan shall control. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan, provided, that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement. In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern unless the Plan provides otherwise. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules to the Disclosure Statement are incorporated herein. **The Plan Supplement and all exhibits to the Disclosure Statement have been, or will be, filed electronically with the Bankruptcy Court. Copies of the Plan Supplement and such exhibits may be viewed and/or downloaded from the Bankruptcy Court's PACER website.**

**Further, the Debtors will provide copies of any or all of the Plan Supplement and all exhibits to the Disclosure Statement upon written request submitted to:**

**Neligan Foley LLP**
**Attn: Ruth A. Clark**
**325 N. St. Paul, Suite 3600**
**Dallas, TX 75201**
**rclark@neliganlaw.com**

**1.01.** *"Administrative Claim"* means a Claim against a Debtor for payment or reimbursement of an administrative expense of a kind within the scope of Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2), including, without limitation, (a) actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by any of the Debtors during the Bankruptcy

1

Cases, (b) Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, (c) all Claims arising under Bankruptcy Code section 503(b)(9), (d) all fees and charges assessed against the Estates under the Bankruptcy Code or under section 1930 of chapter 123 of title 28 of the United States Code, and (e) all other claims entitled to administrative priority claim status pursuant to a Final Order.

**1.02.** *"Allowance Date"* means the date on which a Claim becomes an Allowed Claim.

**1.03.** *"Allowed,"* with respect to a Claim, other than an Administrative Claim means such a Claim, or any portion thereof, (a) that has been allowed by a Final Order, (b) that either (y) was listed in the Schedules as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero or (z) is the subject of a timely filed proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment of the Schedules) on or before the Objection Deadline or (ii) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order, (c) that is expressly allowed in a liquidated amount in the Plan, or (d) that is in an amount agreed to by the Debtor and the holder of such Claim; with respect to an Administrative Claim, means an Administrative Claim for which a timely written request for payment has been made in accordance with the Plan (if such written request is required) and as to which (y) no timely objection to its allowance has been filed or (z) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order; and, with respect to an Interest, means any Interest that appears, as of the Petition Date, in the Debtor's books and records except as provided in the Plan or otherwise determined by a Final Order.

**1.04.** *"Asset"* means any property owned by an Estate or a Debtor.

**1.05.** *"Avoidance Action"* means any Cause of Action arising under chapter 5 of the Bankruptcy Code including, but not limited to, Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553, or under any similar applicable law, including, without limitation, fraudulent transfer laws, whether or not any such Cause of Action has been asserted or commenced as of the Effective Date.

**1.06.** *"Ballot"* means the form of ballot approved by the Bankruptcy Court and distributed with the Disclosure Statement and the Plan to holders of impaired Claims entitled to vote to vote on the Plan and to be used to indicate their acceptance or rejection of the Plan.

**1.07.** *"Balloting Agent"* means Ruth A. Clark, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, Texas 75201.

**1.08.** *"Balloting Deadline"* means August 15, 2016 at 5:00 p.m. Central Time, the deadline set by the Bankruptcy Court's order approving the Disclosure Statement for the receipt by the Balloting Agent of Ballots for accepting or rejecting the Plan.

**1.09.** *"Bankruptcy Cases"* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court and captioned *In re New Louisiana Holdings, LLC, et al.*, No. 14-50756.

**1.10.** *"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or

hereafter amended and as applicable to the Bankruptcy Cases.

1.11. **_"Bankruptcy Court"_** means the United States Bankruptcy Court for the Western District of Louisiana, or any other court or adjunct thereof having jurisdiction over the Bankruptcy Cases.

1.12. **_"Bankruptcy Rules"_** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

1.13. **_"Bar Date"_** means any deadline for filing proofs of Claim, including, without limitation, Claims arising before the Petition Date (including 503(b)(9) Claims) and Administrative Claims, as established by an order of the Bankruptcy Court or under the Plan.

1.14. **_"Business Day"_** means any day other than a Saturday, a Sunday, a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.15. **_"Cash"_** means legal tender of the United States of America and equivalents thereof.

1.16. **_"Causes of Action"_** means any and all actions, causes of action (including, without limitation, causes of action under sections 510, 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code), suits, accounts, controversies, obligations, judgments, damages, demands, debts, rights, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims (as defined in section 101(5) of the Bankruptcy Code), whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or tort, arising in law, equity or otherwise, that a Debtor and/or an Estate may hold against any Person, or which could be asserted by a Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as a debtor in possession (under Bankruptcy Code sections 1107(a) and 1108) or by any representative of a Debtor or an Estate.

1.17. **_"Chicago Health Care Leasing Claims"_** means any and all Claims, including Administrative Claims, held by Chicago Health Care Leasing, LLC.

1.18. **_"Claim"_** shall have the meaning provided in Bankruptcy Code section 101(5), including, without limitation, any Claim arising after the Petition Date.

1.19. **_"Claimants Trusts"_** means, collectively, the Tort Claimants Trust and the Unsecured Claimants Trust.

1.20. **_"Claimants Trust Agreements"_** means, collectively, the Tort Claimants Trust Agreement and the Unsecured Claimants Trust Agreement.

3

**1.21.** *"Class"* means each category of Claims or Interests established under Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.22.** *"Collateral"* means any property or interest in property of an Estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.23.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

**1.24.** *"Confirmation Hearing"* means the hearing to be held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.25.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**1.26.** *"Creditor"* means any Person that is the holder of a Claim against a Debtor.

**1.27.** *"Creditors' Committee"* means the committee of unsecured creditors appointed in the Bankruptcy Cases by the United States Trustee pursuant to Bankruptcy Code section 1102(a)(1) , as the same may be constituted from time to time.

**1.28.** *"CRP"* means the Personal Injury Claims Resolution Procedures, which shall be Exhibit A to the Tort Claimants Trust Agreement.

**1.29.** *"Cure Amount"* means any amount required to be paid as a condition for the assumption of an Executory Contract under Bankruptcy Code section 365(b).

**1.30.** *"Cypress Debtors"* means, individually or collectively, as the context may require: (a) CHG Legacy Group, LLC; (b) Cypress Administrative Services, LLC; (c) Cypress Health Care Management, LLC; and (d) Cypress Health Care Holdings, LLC.

**1.31.** *"Debtor(s)"* means, collectively, the Georgia Debtors, the NLH Debtors, the Palm Garden Debtors, the Palm Terrace Debtors, the Encore Debtors and the Cypress Debtors.

**1.32.** *"Disallowed"* when used with respect to a Claim or Interest, shall mean a Claim or Interest, or a portion thereof, that (a) has been disallowed by a Final Order or any provision of the Plan, (b) is listed in the Schedules in an amount of zero or as contingent, unliquidated or disputed and as to which no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, unless an Allowed amount of such Claim has been agreed to by the Debtor and the holder thereof, or (c) is not listed in the Schedules and as to which (i) no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, or (ii) no request for the allowance of an Administrative Claim (including a Fee Claim) has been filed by the deadline in

4

Section 2.01 of the Plan or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law.

**1.33.** *"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as approved by the Bankruptcy Court and distributed contemporaneously with this Plan in accordance with Bankruptcy Code section 1125 and Bankruptcy Rule 3017, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.34.** *"Disputed"* means, with respect to a Claim (including any Administrative Claim) or Interest, a Claim or Interest, or any portion thereof, (a) that is neither Allowed pursuant to the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, (b) that is listed in the Schedules as disputed, contingent, or unliquidated and which has not been resolved by written agreement of the parties or a Final Order; (c) for which a proof of Claim or Interest has been timely filed or deemed timely filed with the Bankruptcy Court and as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, or which is otherwise Disputed by a Debtor, the Creditors' Committee, or the Unsecured Claimants Trust in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order. Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim or Interest shall be considered Disputed to the extent that (i) the amount of the Claim or Interest specified in a proof of Claim or Interest exceeds the amount listed in the Schedules and/or (ii) the Claim or Interest is classified differently in the proof of Claim or Interest than in the Schedules. To the extent an objection to the allowance of only a portion of a Claim or Interest has been timely filed, such Claim or Interest shall be a Disputed Claim only to the extent of the portion subject to objection.

**1.35.** *"Disputed Amount"* means (a) if a liquidated amount is set forth in a proof of Claim or Interest relating to a Disputed Claim or Interest, (i) the liquidated amount set forth in the proof of Claim or Interest relating to the Disputed Claim or Interest, (ii) an amount agreed to by the Debtor, the Creditors' Committee or Unsecured Claimants Trust and the holder of such Disputed Claim or Interest, or (iii) if a request for estimation is filed by any party, the amount at which such Claim or Interest is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the proof of Claim or Interest relating to a Disputed Claim or Interest, (i) an amount agreed to by the Debtor, the Creditors' Committee or Unsecured Claimants Trust and the holder of such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim or Interest; or (c) zero, if the Claim or Interest was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated and no proof of Claim or Interest was filed, or deemed to have been filed, by the Bar Date and the Claim or Interest has not been resolved by written agreement of the Debtor, the Creditors' Committee or the Unsecured Claimants Trust and the holder of such Claim or Interest or an order of the Bankruptcy Court.

**1.36.** *"Distribution"* means the property to be distributed under the Plan to the holders of Allowed Claims.

**1.37.** *"Distribution Date"* means any date upon which a Distribution is made in accordance with the Plan to holders of Allowed Claims entitled to receive Distributions under the Plan.

**1.38.** *"Effective Date"* means the first Business Day after the Confirmation Date on which (a) no stay or motion for a stay of the Confirmation Order is in effect or pending and (b) all conditions to the Effective Date set forth in Section 8.02 of the Plan have been met or waived. The Debtors will file and serve notice of the Effective Date within five (5) Business Days after its occurrence.

**1.39.** *"Encore Debtors"* means, individually or collectively, as the context may require: (a) SA-ENC Blu Fountain, LLC; (b) SA-ENC Fort Myers, LLC; (c) SA-ENC Glennon Place ALF, LLC; (d) SA-ENC Glennon Place, LLC; (e) SA-ENC Operator Holdings, LLC; (f) SA-ENC Park Haven, LLC; (f) SA-ENC PH Holdings, LLC; (g) SA-ENC Sunrise GP, LLC; (h) SA-ENC Tonganoxie, LLC; and (i) SA-ENC VIP Manor, LLC.

**1.40.** *"Encore Lender"* means Encore Nursing Center Partners Limited Partnership-85.

**1.41.** *"Encore Lender Claims"* means any Claim or remedy asserted against a Debtor by Encore Lender.

**1.42.** *"Encore Settlement Agreement"* means that certain Compromise, Settlement and Release Agreement, dated as of October 13, 2015, by and among SA-ENC Master Tenant, LLC, Encore Cypress LLC, Encore Sunrise LP, Encore Nursing Center Partners Limited Partnership-85, Highland Park CDO I, Ltd., and the Encore Debtors.

**1.43.** *"Entity"* shall have the meaning provided in Bankruptcy Code section 101(15).

**1.44.** *"Estate"* means the estate of a Debtor created under Bankruptcy Code section 541.

**1.45.** *"Estimation Order"* means an order or orders of the Bankruptcy Court estimating for voting, confirmation and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim. The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.46.** *"Executory Contract"* means any prepetition executory contract or unexpired lease within the meaning of Bankruptcy Code section 365 between a Debtor and any other Person(s).

**1.47.** *"Face Amount"* means (a) when used in reference to a Disputed Claim, the Disputed Amount of such Claim, and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

**1.48.** *"Fee Application"* means an application for the allowance and/or payment of a Fee Claim.

**1.49.** *"Fee Claim"* means a Claim against a Debtor by a Professional or any other party pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 or otherwise for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.50.** *"Final Decree"* means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022, which shall, *inter alia*, close the Bankruptcy Cases.

**1.51.** *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order or judgment.

**1.52.** *"General Unsecured Claim"* means any Claim, other than an Administrative Claim, a Secured Claim, a Priority Tax Claim, a Non-Tax Priority Claim, a Personal Injury Claim, an Encore Lender Claim, an Insider Claim, or a Chicago Health Care Leasing Claim, that is neither secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court. For the avoidance of doubt, a General Unsecured Claim includes any Claim arising from the rejection or an executory contract or unexpired lease under Bankruptcy Code section 365 and any Personal Injury Claim or other Claim based on or arising from a prepetition Final Order or a legally enforceable settlement agreement or arbitration ruling.

**1.53.** *"Georgia Debtors"* means, individually or collectively, as the context requires: (a) SA-GA Operator Holdings LLC; (b) CHC-Carrollton Nursing & Rehab Ctr, LLC; (c) CHC-Cedar Valley Nursing & Rehab Ctr, LLC; (d) CHC-Chestnut Ridge Nursing & Rehab Ctr, LLC; (e) CHC-Haralson Nursing & Rehab Ctr, LLC; (f) CHC-Hart Care Center, LLC; (g) CHC-Pine Knoll Nursing & Rehab Ctr, LLC; (h) CHC-Roswell Nursing & Rehab Ctr, LLC; (i) CHC-Social Circle Nursing & Rehab Ctr, LLC; (j) CHC-University Nursing & Rehab Ctr, LLC; and (k) CHC-Woodstock Nursing & Rehab Ctr, LLC.

**1.54.** *"HCN"* means Health Care Navigator, LLC.

**1.55.** *"Initial Distribution Date"* means the first Distribution Date following the Effective Date, which date shall be no later than thirty (30) days after the Effective Date.

**1.56.** *"Insider"* has the meaning provided in Bankruptcy Code section 101(31).

**1.57.** *"Insider Claim"* means any Claim (including an Administrative Claim) or remedy asserted against a Debtor by any Insider of a Debtor.

**1.58.** *"Interest"* means the legal, equitable, contractual, and/or other rights of any Person with respect to any capital stock or other ownership interest in a Debtor, whether or not

transferable, and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in a Debtor.

**1.59.** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

**1.60.** *"Miscellaneous Secured Claim"* means a Secured Claim other than a Secured Tax Claim.

**1.61.** *"NLH Debtors"* means, individually or collectively, as the context requires: (a) New Louisiana Holdings, LLC; (b) Acadian 4005 Tenant, LLC; (c) Atrium 6555 Tenant, LLC; (d) Citiscape 5010 Tenant, LLC; (e) Fountain View 215 Tenant, LLC; (f) Jackson Manor 1691 Tenant, LLC; (g) Lakewood Quarters Assisted 8585 Tenant, LLC; (h) Lakewood Quarters Rehab 8225 Tenant, LLC; (i) Panola 501 Partners, LP; (j) Retirement Center 14686 Tenant, LLC; (k) St. Charles 1539 Tenant, LLC; (l) Sherwood 2828 Tenant, LLC; and (m) Woodland Village 5301 Tenant, LLC.

**1.62.** *"Non-Tax Priority Claim"* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment under Bankruptcy Code section 507(a).

**1.63.** *"Objection Deadline"* means the last day for filing objections to Claims (other than Administrative Claims or Fee Claims) or Interests, which day shall be the later of (a) 120 days after the Effective Date, (b) 120 days after the filing date of any proof of Claim or Interest that is timely filed after the Confirmation Date, or (c) such other day as the Bankruptcy Court may order. The filing of a motion to extend the Objection Deadline shall automatically extend the Objection Deadline until an order ruling on such motion becomes a Final Order. If such motion to extend the Objection Deadline is denied, the Objection Deadline shall be the later of the current Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's order denying such motion becomes a Final Order.

**1.64.** *"Ordinary Course of Business"* shall have the meaning provided under Bankruptcy Code section 363 and judicial interpretations thereof.

**1.65.** *"Palm Garden Debtors*" means, individually or collectively, as the context may require: (a) SA-PG Operator Holdings LLC; (b) SA-PG Clearwater LLC; (c) SA-PG Gainesville LLC; (d) SA-PG Jacksonville LLC; (e) SA-PG Largo LLC; (f) SA-PG North Miami LLC: (g) SA-PG Ocala LLC; (h) SA-PG Orlando LLC; (i) SA-PG Pinellas LLC; (j) SA-PG Port St. Lucie LLC; (k) SA-PG Sun City Center LLC; (l) SA-PG Tampa LLC; (m) SA-PG Vero Beach LLC; (n) SA-PG West Palm Beach LLC; and (o) SA-PG Winterhaven LLC.

**1.66.** *"Palm Terrace Debtors"* means, individually or collectively, as the context may require:  (a) SA-St. Petersburg, LLC; (b) SA-Clewiston, LLC; (c) SA-Lakeland, LLC; (d) CHC-CLP Operator Holding, LLC; and (e) CHC-SPC Operator, Inc.

**1.67.** *"Patient's Compensation Fund"* means the Patient's Compensation Fund established by the Louisiana Medical Malpractice Act (La. Rev. Stat. Ann. § 40:1299.44 (West 1992 & Supp. 1997)).

**1.68.** *"Person"* means any Entity, natural person, corporation, limited partnership, general partnership, joint venture, trust, land trust, business trust, unincorporated organization, or other organization (irrespective of whether it is a legal entity), and any "governmental unit" as that term is defined in Bankruptcy Code section 101(27).

**1.69.** *"Personal Injury Claim"* means any Claim, demand, suit, cause of action, proceeding or any other right or asserted right to payment heretofore, now or hereafter asserted against a Debtor based upon or in any manner arising from or related to the Debtor's ownership, operation or management of any skilled nursing facility, including, without limitation, those for (i) death or personal injuries, including emotional distress, (ii) damages, including punitive damages, (iii) attorney's fees and other expenses, fees or costs, (iv) any possible economic loss or loss of consortium, and (v) for any equitable remedy, but excluding Claims that are the subject of any prepetition final judgment or prepetition legally enforceable settlement agreements, which Claims shall be treated as General Unsecured Claims for all purposes under the Plan, and excluding Claims that are TCR Personal Injury Claims.

**1.70.** *"Petition Date"* means the date on which each Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code, commencing such Debtor's Bankruptcy Case.

**1.71.** *"Plan"* means this Joint Plan of Liquidation and all exhibits or agreements annexed to such plan, referenced in such plan, or included in the Plan Supplement, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.72.** *"Plan Proponents"* shall mean the Debtors and the Creditors Committee.

**1.73.** *"Plan Supplement"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Debtors and Creditors' Committee no later than ten (10) Business Days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtors and Creditors' Committee.

**1.74.** *"Priority Tax Claim"* means any Claim of a governmental unit (as defined in Bankruptcy Code section 101(27)) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.75.** *"Professional"* means (a) any Person employed in the Bankruptcy Cases pursuant to Bankruptcy Code sections 327, 328 or 1103 or otherwise and (b) any Person seeking compensation or reimbursement of costs and expenses in connection with the Bankruptcy Cases pursuant to Bankruptcy Code section 503(b)(4) or 1129(a)(4).

**1.76.** *"Pro Rata"* means, at any time, the proportion that the Allowed amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in that Class as of the date of the relevant determination, unless the Plan provides otherwise.

9

**1.77.** *"Rejection Bar Date"* means the deadline by which any Person must file a Rejection Claim, which deadline shall be the later of (a) thirty (30) days after service of a notice of the Effective Date, or (b) such other date prescribed by the Bankruptcy Court.

**1.78.** *"Rejection Claim"* means a Claim by a party to an Executory Contract that has not been assumed by a relevant Debtor pursuant to the Plan or a prior Final Order entered in the Bankruptcy Cases for damages arising from the rejection by the Debtor of such Executory Contract under Bankruptcy Code section 365.

**1.79.** *"Release Payment"* means Cash in the amount of $2.5 million which shall be paid by or on behalf of the Released Parties to the Claimants Trusts on the Effective Date, pursuant to Section 6.02 of the Plan.

**1.80.** *"Released Parties"* means all Persons listed on <u>Exhibit __</u> attached to the Disclosure Statement.

**1.81.** *"Schedule of Assumed Contracts"* means the schedule that identifies Executory Contracts, if any, to be assumed under Bankruptcy Code sections 365 and 1123(b)(2) under the Plan and proposed Cure Amounts related thereto. The Schedule of Assumed Contracts shall be included in the Plan Supplement.

**1.82.** *"Schedules"* means the schedules of assets and liabilities filed in the Bankruptcy Cases, as modified, amended or supplemented from time to time.

**1.83.** *"Secured Claim"* means a Claim secured by a Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, on or against property in which the Estate has an interest, or a Claim that is subject to setoff under Bankruptcy Code section 553, but only to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553, or in either case as agreed upon in writing by the Debtor and the holder of such Claim. Secured Claims shall include Claims secured by Liens junior in priority to other Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim holder's interest in the Estate's interest in such property after giving effect to all Liens that are senior in priority. The amount of any Claim that exceeds the value of the holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

**1.84.** *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

**1.85.** *"TCR"* means Tort Claims Resolution, LLC.

**1.86.**  *"TCR Personal Injury Claims"* means any and all Claims against the Debtors, the proceeds of which have been assigned to TCR as of the Effective Date of the Plan, including, without limitation, those proofs of claim identified on a schedule to be included in the Plan Supplement.

**1.87.**  *"Tort Claimants Trust"* means that certain trust established pursuant to Section [6.05] of the Plan and the Tort Claimants Trust Agreement.

**1.88.**  *"Tort Claimants Trust Agreement"* means that certain trust agreement to be entered into pursuant to the Plan, under which the Tort Claimants Trust will be established.  A copy of the Tort Claimants Trust Agreement shall be included in the Plan Supplement.

**1.89.**  *"Tort Claimants Trustee"* means the individual initially selected by the Debtors and approved by the Bankruptcy Court to act as trustee of the Tort Claimants Trust pursuant to the terms of the Tort Claimants Trust Agreement to administer the Tort Claimants Trust, and any successors thereto.

**1.90.**  *"Trust Assets"* means all assets or property of a Claimants Trust, including without limitation, all property transferred to such Claimants Trust at any time and all other property incidental thereto that may be acquired by such Claimants Trust from time to time under the Plan, the relevant Claimants Trust Agreement or otherwise.

**1.91.**  *"Unclaimed Property"* means any Distribution under the Plan that, for a period of 90 days after the applicable Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with the relevant Debtor), is either (a) attributable to the holder of an Allowed Claim that has failed to prepare, execute and return an Internal Revenue Service Form W-9, (b) returned as undeliverable, or (c) otherwise unclaimed.

**1.92.**  *"Unsecured Claimants Trust"* means that certain trust established pursuant to Section [6.04] of the Plan and the Unsecured Claimants Trust Agreement.

**1.93.**  *"Unsecured Claimants Trust Agreement"* means that certain trust agreement to be entered into pursuant to the Plan, under which the Unsecured Claimants Trust will be established. A copy of the Unsecured Claimants Trust Agreement shall be included in the Plan Supplement.

**1.94.**  *"Unsecured Claimants Trustee"* means the individual initially selected by the Creditors Committee and approved by the Bankruptcy Court to act as trustee of the Unsecured Claimants Trust pursuant to the terms of the Unsecured Claimants Trust Agreement to administer the Unsecured Claimants Trust, and any successors thereto.

## ARTICLE II
## UNCLASSIFIED CLAIMS

**2.01.  Administrative Claims.**

**Time for Filing Administrative Claims.**  Except to the extent an earlier bar date applies by order of the Bankruptcy Court, the holder of any Administrative Claim that is incurred,

accrued or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date. Such request must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtors within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

**Time for Filing Fee Claims.** Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within thirty (30) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. An objection to a Fee Application must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person whose Fee Application is the subject of the objection no later than fourteen (14) days before the hearing on such Fee Application. No hearing may be held on less than twenty-eight (28) days' notice.

**Allowance of Administrative Claims.** An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order after notice and an opportunity for hearing.

**Payment of Allowed Administrative Claims.** Except to the extent that a holder of an Allowed Administrative Claim has been paid before the Effective Date, or agrees to a different treatment, each holder of an Allowed Administrative Claim (other than Allowed Administrative Claims for goods sold or services rendered in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive, after the application of any retainer or deposit held by such holder, Cash in an amount equal to such Allowed Claim within ten (10) Business Days after the later of (i) the Effective Date or (ii) the Allowance Date with respect to such Allowed Claim.

**Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities for goods sold or services rendered in the Ordinary Course of Business of the Debtors after the Petition Date and during the Bankruptcy Cases (other than Claims of governmental units, including, *inter alia*. those for taxes or Claims and/or penalties related to such taxes; Administrative Claims arising under Bankruptcy Code section 503(b)(9); or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course

12

of Business of the Debtors will be paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the holder of such Administrative Claim. The Debtors, Creditors' Committee and the Unsecured Claimants' Trust reserve the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 2.02. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, in the discretion of the Debtor, the Creditors' Committee and the Unsecured Claimants' Trust, (a) Cash in an amount equal to such Allowed Claim within ten (10) Business Days after the later of (1) the Effective Date or (2) the Allowance Date with respect to such Allowed Claim; or (b) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code), in equal annual installments with the first payment to be due within ten (10) Business Days after the later of (1) the Effective Date or (2) the Allowance Date with respect to such Allowed Claim and subsequent payments to be due on each anniversary of the Effective Date; provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due. Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the holder thereof shall not assess or attempt to collect such penalty from the Debtors, the Claimants Trusts or any of their Assets, (b) the Debtors or the Unsecured Claimants Trust shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty, and (c) nothing contained herein shall relieve any owner of a Debtor from any liability for taxes arising from a Debtor's status as a pass-through entity for income tax purposes.

### 2.03. U.S. Trustee Fees.

The Clamants Trusts shall timely pay, in equal portions, to the United States Trustee all quarterly fees incurred by the Debtors pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Cases are closed or dismissed. The Claimants Trusts shall jointly serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date that the Bankruptcy Cases remain open.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.01. Introduction.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

13

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with Bankruptcy Code section 1122(a).  A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class.  If a Claim or Interest is acquired or transferred, the Claim or Interest shall be placed in the Class in which it would have been placed if it were owned by the original holder of such Claim or Interest.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**3.02.    Claims Against and Interests in the Debtors.**

Class 1:  Non-Tax Priority Claims

Class 2:  Secured Tax Claims

Class 3:  Miscellaneous Secured Claims

Class 4:  General Unsecured Claims

Class 5:  Personal Injury Claims

Class 6:  Chicago Health Care Leasing Claims Against the NLH Debtors

Class 7:  Encore Lender Claims

Class 8:  Insider Claims

Class 9:  TCR Personal Injury Claims

Class 10:  Interests

**ARTICLE IV**
**IDENTIFICATION OF UNIMPAIRED AND**
**IMPAIRED CLAIMS AND INTERESTS**

**4.01.    Unimpaired Claims and Interests**

Claims against the Debtors in Classes 1, 2, 3 and 7 are not impaired under the Plan, and the holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.    Impaired Claims and Interests**

Claims against the Debtors in Classes 4, 5, 6, 8 and 9  are impaired under the Plan, and the holders of Claims in those Classes are entitled to vote to accept or reject the Plan.  Interests in

the Debtors in Class 10 are impaired and deemed to have rejected the Plan and, therefore, are not entitled to vote on the Plan under Bankruptcy Code section 1126(g).

**4.03. Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or Interest or any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

<u>**ARTICLE V**</u>
**TREATMENT OF CLAIMS AND INTERESTS**

**5.01. Non-Tax Priority Claims – Class 1**

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each holder of an Allowed Non-Tax Priority Claim shall receive, (y) Cash in an amount equal to such Allowed Claim, including such interest as may be required by applicable law, or (z) such other, less favorable treatment to which such holder and the Debtor or Unsecured Claimants' Trust agree in writing. To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 4 General Unsecured Claim.

**5.02. Secured Tax Claims – Class 2**

With respect to any Allowed Secured Tax Claim for tax years prior to 2014, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Secured Tax Claim, each holder of an Allowed Secured Tax Claim shall receive (x) Cash equal to the Allowed amount of such Allowed Claim (with any interest to which the holder of such Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code), (y) the Collateral securing such Allowed Claim, or (z) such other, less favorable treatment as may be agreed upon in writing by such holder and the Debtor and the Unsecured Claimants Trust.

The holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2014 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Each holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor or the Unsecured Claimants Trust, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the holder of such Allowed Claim (i) has been paid Cash equal to the value of its Allowed Claim and/or (ii) has received a return of the Collateral securing its Allowed Claim, or (iii) has been afforded such other treatment as to which such holder and the Debtor and Unsecured Claimants' Trust have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable. To the extent that a Secured Tax Claim exceeds the value of the interest of

15

the Estate in the property that secured such Claim, such Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3). On the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### 5.03.   Miscellaneous Secured Claims – Class 3

**Subclasses.**  Class 3 shall contain a separate subclass for each Miscellaneous Secured Claim in such Class.  Each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

**Allowance.**  The Allowed amount of each Miscellaneous Secured Claim shall be agreed to by the Debtor and the Unsecured Claimants' Trust and the holder thereof, or determined by the Bankruptcy Court.

**Treatment and Collateral.**  On or as soon as practicable after the later of (i) the Initial Distribution Date or (ii) the Allowance Date, each holder of an Allowed Miscellaneous Secured Claim shall receive from the Unsecured Claimants' Trust, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, (x) Cash equal to the value of its Allowed Miscellaneous Secured Claim, (y) the Collateral securing the Allowed Miscellaneous Secured Claim, or (z) such other, less favorable treatment as to which such holder and the Debtor and Unsecured Claimants' Trust agree in writing.

Each holder of an Allowed Miscellaneous Secured Claim shall retain its Lien in the Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor or the Unsecured Claimants Trust free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (i) the holder of such Allowed Miscellaneous Secured Claim has received (A) Cash equal to the value of its Allowed Miscellaneous Secured Claim, (B) a return of the Collateral securing its Allowed Miscellaneous Secured Claim, or (C) such other treatment as to which such holder and the Debtor and the Unsecured Claimants' Trust shall have agreed upon in writing, or (ii) such purported Lien has been determined by a Final Order to be invalid or avoidable.

If any Allowed Miscellaneous Secured Claim exceeds the value of the Collateral securing such Claim, then pursuant to Bankruptcy Code section 506(a), any such excess amount shall be deemed to be and shall be treated as a Class 4 General Unsecured Claim.

### 5.04.   General Unsecured Claims – Class 4

**Allowance.**  The Allowed amount of each General Unsecured Claim shall be agreed to by the Debtor or the Unsecured Claimants Trust and the holder thereof, or determined by the Bankruptcy Court, and shall include interest that matured as of the Petition Date at the rate, if any, specified in an enforceable agreement between the Debtor and the holder of such Claim or such lesser amount as may be agreed by the Debtor or the Unsecured Claimants Trust and the holder of such Claim.

**Treatment.** Provided that all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Allowed Claims in Classes 1 through 3 have been paid, reserved for or otherwise satisfied in full as provided in the Plan, each holder of an Allowed General Unsecured Claim in Class 4 shall receive from the Unsecured Claimants Trust a Pro Rata share of the Distributions available for holders of Allowed General Unsecured Claims against the Debtors. The Debtors have been substantively consolidated. As a result, Distributions to such holders from the Unsecured Claimants Trust shall be made on a Pro Rata basis as if the Debtors were a single entity.

The Unsecured Claimants Trust may make multiple Distributions to holders of Allowed General Unsecured Claims. On the Initial Distribution Date, the Unsecured Claimants Trust shall make a Distribution to holders of Allowed General Unsecured Claims whose Claims were Allowed as of the Effective Date. The Unsecured Claimants Trustee shall determine, in his or her sole discretion, the amount and timing of all subsequent Distributions to holders of Allowed General Unsecured Claims.

### 5.05.  Personal Injury Claims – Class 5

**Allowance.** As set forth more fully in the CRP (the provisions of which shall control in the event of a conflict with the Plan), each holder of a Personal Injury Claim may establish the Allowed amount, if any, of such Claim by electing to either (1) settle on an Allowed amount (the "Stipulated Claim Amount") based on various settlement criteria set forth in the CRP, as agreed to by the holder and the Tort Claimants Trustee or as determined by the Bankruptcy Court (the "Settlement Option"), or (2) participate in alternate dispute resolution ("ADR") procedures set forth in the CRP or, if ADR is unsuccessful, litigate the validity and amount of the Personal Injury Claim (the "ADR/Litigation Option").

Notwithstanding the foregoing, to the extent a holder of a Personal Injury Claim has agreed in writing to settle such Personal Injury Claim consistent with the settlement criteria set forth in the CRP, then from and after the Effective Date, such settlement shall be binding on the holder of the Personal Injury Claim and the Tort Claimants Trustee without further action of the parties or order of the Bankruptcy Court. On the Effective Date, the Tort Claimants Trustee shall pay each such holder of a Personal Injury Claim, the agreed amount set forth within the applicable settlement agreement.

With respect to all other Personal Injury Claims, within fourteen (14) days after the Effective Date, the Tort Claimants Trustee shall send each holder of a Personal Injury Claim an election form that contains, among other things, the Tort Claimants Trustee's proposed Stipulated Claim Amount of the claim under the Settlement Option. Each holder shall have thirty (30) days after service of the election form to return the election form to the Tort Claimants Trustee with the holder's election of the Settlement Option or the ADR/Litigation Option. Each holder who elects the Settlement Option must also indicate on the election form whether the holder accepts the Tort Claimants Trustee's proposed Stipulated Claim Amount, in which event the Stipulated Claim Amount will be the Allowed amount of such holder's Personal Injury Claim. If the holder elects the Settlement Option but rejects the Tort Claimants Trustee's proposed Stipulated Claim Amount, the holder must state an alternative proposed Stipulated Claim Amount. If the Tort Claimants Trustee and the holder disagree on the applicable

settlement criteria and Stipulated Claim Amount, the Bankruptcy Court shall, upon motion by the claimant, issue an Order determining the Stipulated Claim Amount for such holder's Personal Injury Claim based upon the applicable settlement criteria. Such Order shall be final and non-appealable. Any holder of a Personal Injury Claim who fails to timely return the election form shall be deemed to have accepted the Tort Claimants Trustee's proposed Stipulated Claim Amount. Each holder of a Personal Injury Claim who elects ADR/Litigation Option shall be required to participate in non-binding mediation and, at the holder's option, in binding arbitration to establish the Allowed amount of his or her Personal Injury Claim. If mediation and, if applicable, arbitration are unsuccessful, the holder may pursue litigation of his or her Personal Injury Claim according to the terms provided in the CRP.

**Treatment**.

As set forth more fully in the CRP (the provisions of which shall control in the event of a conflict with the Plan), each holder of an Allowed Personal Injury Claim shall receive from the Tort Claimant Trust either (i) for those holders whose Personal Injury Claims are Allowed under the Settlement Option, a Cash payment from the Tort Claimants Trust equal to the Allowed amount of such holder's Allowed Personal Injury Claim, payable within forty-five days after the Allowance Date for such Claim, or (ii) for those holders whose Personal Injury Claims are Allowed under the Litigation Option, a Cash payment from the Tort Claimants Trust equal to a Pro Rata share of the Trust Assets available for such holders, payable at such time as when all Personal Injury Claims have been fully liquidated.

Distributions from the Tort Claimants Trust to holders of Allowed Personal Injury Claims against the NLH Debtors shall be limited by any statutory cap on the NLH Debtors' liability, but shall be cumulative of, and without prejudice to, each such holder's rights to seek additional compensation on account of his or her Personal Injury Claim from the Patient's Compensation Fund.

### 5.06. Chicago Health Care Leasing Claims – Class 6

All Chicago Health Care Leasing Claims shall be subordinated to all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1-5. If and only if all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1-5 have been paid in full in the amount Allowed under the provisions of this Plan, the holder of the Chicago Health Care Leasing Claims shall receive a Distribution from the Unsecured Claimants' Trust in an amount equal to the lesser of the Allowed amount of such Claims and the remaining Trust Assets of the Unsecured Claimants Trust.

### 5.07. Encore Lender Claims – Class 7

**Treatment.** On the Effective Date, the Holders of the Encore Lender Claims shall retain their rights under the Encore Settlement Agreement but, in accordance therewith, shall not receive or retain any property or any interest in property from the Debtors on account of such Encore Lender Claims.

18

### 5.08.    Insider Claims – Class 8

**Disallowance; No Distribution.**  On the Effective Date, in partial consideration for the releases provided to the Released Parties in Section 9.06 of the Plan, all Insider Claims shall be cancelled, discharged and eliminated in full, and the holders of such Insider Claims shall not receive or retain any property or any interest in property on account of such Insider Claims.

### 5.09.    TCR Personal Injury Claims – Class 9

On the Effective Date, in partial consideration for the releases provided to the Released Parties in Section 9.06 of the Plan, all TCR Personal Injury Claims shall be cancelled, discharged and eliminated in full, and the holders of such TCR Personal Injury Claims shall not receive or retain any property or any interest in property on account of such TCR Personal Injury Claims.

### 5.10.    Interests in the Debtors – Class 10

**No Distribution.**  Each holder of a Class 10 Interest will continue to hold such Interest from and after the Effective Date, but will not receive any Distribution or exercise any voting or other governing authority on account of such Interest.

## ARTICLE VI
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.    The Settlement

Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, distribution, resolution of Insider Claims, TCR Personal Injury Claims and other benefits provided under the Plan, including, without limitation, the Release Payment, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all controversies relating to:  (i) any Claims and Causes of Action against the Released Parties; (ii) the Insider Claims; (iii) the TCR Personal Injury Claims; and (iv) the Chicago Health Care Leasing Claim (the "Settlement").  The Settlement shall be binding upon Persons receiving Distributions under the Plan and on each of the Debtors, the Debtors' Estates, the Committee, the Claimants Trusts and any other party treated under the Plan.

### 6.02.    Distributions; Sources of Cash for Plan Distributions

The Unsecured Claimants' Trust shall make all Distributions required under (and subject to the provisions of) the Plan to be made by the Debtors to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1-4 and, if applicable, Allowed Claims in Class 6.  The Tort Claimants Trust will make all Distributions required under (and subject to the provisions of) the Plan to holders of Allowed Personal Injury Claims in Class 5.  The sources of Cash necessary for the Claimants Trusts to pay Allowed Claims under the Plan will be:  (a) all Cash of the Debtors on hand as of the Effective Date; (b) the Release Payment in the amount of $2.5 million to be provided by or on behalf of the Released Parties; and (c) any Cash generated or received by the Unsecured Claimants Trusts on or after the Effective Date from any other source, including, without limitation, the liquidation of all non-Cash Assets and

accounts receivable of the Debtors and any recoveries from the prosecution of all Causes of Action.

**6.03.    Transfers of Assets to the Claimants Trusts**

(a)    The Release Payment

On the Effective Date, the Released Parties shall pay, or cause to be paid, the sum of $1.45 million from the Release Payment in Cash to the Unsecured Claimants' Trust. The balance of the Release Payment will be paid to the Tort Claimants' Trust.

(b)    Debtors' Cash and Accounts Receivable

On the Effective Date, the Debtors shall pay all cash on hand to the Unsecured Claimants Trust. In addition, from and after the Effective Date, HCN, in consultation with the Unsecured Claimants Trust, shall administer the liquidation of the Debtors' accounts receivable pursuant to a Transition Services Agreement among HCN and the Unsecured Claimants Trust. The Transition Services Agreement shall be included in the Plan Supplement. On ten days' notice, the Unsecured Claimants Trust may direct that all remaining accounts receivable be transferred to the Unsecured Claimants Trust, which shall thereafter be responsible for collecting any remaining amounts due. HCN shall, as received, transfer all proceeds from the liquidation of the accounts receivable of the Debtors to the Unsecured Claimants Trust.

(c)    Causes of Action

On the Effective Date, all of the Debtors' Causes of Action (other than Causes of Action against the Released Parties which are being released under Section 9.06 of the Plan) shall be transferred to and vest in the Unsecured Claimants Trust. To the extent any Cause of Action is not transferable by a Debtor to the Unsecured Claimants Trust under applicable law, such Debtor shall retain such Cause of Action and the Unsecured Claimants Trustee shall be entitled to prosecute such Cause of Action in the name of such Debtor for the benefit of the Unsecured Claimants Trust.

The Unsecured Claimants Trust shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to it under the Plan. All expenses of prosecuting and administering the Causes of Action shall be allocated to and paid by the Unsecured Claimants Trust. The net Cash proceeds from the prosecution of the Causes of Action shall be paid to the Unsecured Claimants Trust.

(d)    Remaining Assets

Any remaining assets of the Debtors, in addition to those specifically identified herein, shall, at the direction of the Unsecured Claimants' Trust be transferred to such trust for liquidation for the benefit of Class 4 unsecured claims.

20

### 6.04. The Unsecured Claimants Trust

**Establishment of the Unsecured Claimants Trust.** On the Effective Date, the Unsecured Claimants Trust shall be established and shall become effective, and the Unsecured Claimants Trust Trustee shall execute the Unsecured Claimants Trust Agreement, and all other necessary steps shall be taken to establish the Unsecured Claimants Trust. In the event of any conflict between the terms of this Section 6.04 and the terms of the Unsecured Claimants Trust Agreement, the terms of the Unsecured Claimants Trust Agreement shall govern. The Unsecured Claimants Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Unsecured Claimants Trust as a liquidating trust for United States federal income tax purposes.

**Purpose of the Unsecured Claimants Trust.** The Unsecured Claimants Trust shall be established for the sole purpose of liquidating and distributing its Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the value of the Trust Assets of the Unsecured Claimants Trust and consistent with the purpose of the Unsecured Claimants Trust. The Unsecured Claimants Trust shall not be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code.

**Transfer and Vesting of Assets.** All property paid, delivered and/or transferred to the Unsecured Claimants Trust at any time, including all property transferred to the Unsecured Claimants Trust pursuant to Section 6.02 of the Plan, shall vest in the Unsecured Claimants Trust and constitute Trust Assets, free and clear of all Claims, Liens, interests and encumbrances, and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Unsecured Claimants Trust in accordance with the terms of the Plan and the Unsecured Claimants Trust Agreement.

**Distributions and Operating Expenses.** The Unsecured Claimants Trustee shall distribute the Trust Assets, net of payment or reserves for fees, costs and expenses of the Unsecured Claimants Trust, to the holders of Allowed General Unsecured Claims in accordance with the Plan and the Unsecured Claimants Trust Agreement. Except as otherwise provided in the Plan or the Unsecured Claimants Trust Agreement, the timing and amount of all Distributions payable by the Unsecured Claimants Trust shall be within the sole discretion of the Unsecured Claimants Trustee. The Unsecured Claimants Trustee may reserve and use Cash from the Trust Assets, in such amounts as the Unsecured Claimants Trustee shall deem reasonable in his sole discretion, for the payment of expenses of the Unsecured Claimants Trust and the Unsecured Claimants Trustee, including without limitation, professional fees and expenses, costs of Distributions, and the prosecution and resolution of Causes of Action and objections to Claims.

**Unsecured Claimants Trustee; Term.** The Unsecured Claimants Trustee shall be a Person selected by the Creditors Committee and approved by the Bankruptcy Court in the Confirmation Order. The appointment of the Unsecured Claimants Trustee shall be effective as of the Effective Date. Any successor Unsecured Claimants Trustee shall be appointed as set

forth in the Unsecured Claimants Trust Agreement. Unless the Unsecured Claimants Trustee resigns or dies earlier, the Unsecured Claimants Trustee's term shall expire upon termination of the Unsecured Claimants Trust pursuant to the Plan and/or the Unsecured Claimants Trust Agreement.

**Rights, Powers and Duties of Unsecured Claimants Trustee.** The Unsecured Claimants Trustee shall have the rights, powers and duties set forth in the Plan and the Unsecured Claimants Trust Agreement. The Unsecured Claimants Trustee will be a representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute all Causes of Action and object to and/or defend against any Disputed Claims in the name of the Unsecured Claimants Trust or as necessary in the name of any Debtor(s). The Unsecured Claimants Trustee shall be governed by the terms of the Unsecured Claimants Trust Agreement and the Plan. The Unsecured Claimants Trustee shall administer the Unsecured Claimants Trust and the Trust Assets and make Distributions in accordance with the Plan and the Unsecured Claimants Trust Agreement. The Unsecured Claimants Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including without limitation the following:

(1) hold the Trust Assets for the benefit of holders of Allowed General Unsecured Claims that are entitled to Distributions therefrom under the Plan and the Unsecured Claimants Trust Agreement and to otherwise make distributions as provided for under the Plan;

(2) administer, sell, liquidate, convert to Cash and distribute all Trust Assets as specified in the Plan and the Unsecured Claimants Trust Agreement;

(3) object to Claims, and manage, control, prosecute and/or settle on behalf of the Unsecured Claimants Trust, objections to Claims on account of which the Unsecured Claimants Trustee will be responsible (if Allowed) for making Distributions under the Plan;

(4) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Unsecured Claimants Trust;

(5) pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Trust Assets or any part thereof or to preserve the Unsecured Claimants Trust;

(6) open, maintain, and administer bank accounts as necessary to discharge the duties of the Unsecured Claimants Trustee under the Plan and the Unsecured Claimants Trust Agreement;

(7) sue and be sued and represent the Debtors, the Estates and the Unsecured Claimants Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to all Causes of Action, all Disputed Claims, and any other matters concerning the Plan or the Unsecured Claimants Trust; and

(8) exercise such other powers as may be vested in the Unsecured Claimants Trust or the Unsecured Claimants Trustee pursuant to the Plan, the Unsecured Claimants Trust

22

Agreement, or any Final Order of the Bankruptcy Court and do all other acts that may be necessary or appropriate for the final distribution of the Trust Assets.

**Retention of Professionals.** The Unsecured Claimants Trustee may retain and compensate attorneys and other professionals to assist in its duties as the Unsecured Claimants Trustee on such terms as he or she deems appropriate without Bankruptcy Court approval. The Unsecured Claimants Trustee shall be entitled to rely reasonably upon the advice of retained professionals and shall not be liable for any action taken in reliance on such advice. The reasonable and necessary fees and expenses of all such professionals and clerical assistants shall be charged as expenses of the Unsecured Claimants Trust and shall be paid upon approval of the Unsecured Claimants Trustee.

**Costs, Fees and Expenses of the Claimants Trust.** Compensation and expenses of the Unsecured Claimants Trustee and the costs and expenses of the Unsecured Claimants Trust, including the fees and expenses of its retained professionals, shall be paid out of the Trust Assets, which payments shall not require approval or an order of the Bankruptcy Court. Fees and expenses incurred in connection with the prosecution, defense and/or settlement of any Disputed Claims shall be considered costs and expenses of the Unsecured Claimants Trust. If a dispute arises regarding the fees or expenses of the Unsecured Claimants Trustee or the Unsecured Claimants Trustee's professionals, the undisputed portion of such fees and expenses may be paid pending the resolution of the disputed portion of such fees and expenses without approval or an order of the Bankruptcy Court. The Unsecured Claimants Trustee may deduct and/or reserve for all fees expenses reasonably incurred by the Unsecured Claimants Trustee or its professionals in administering, preserving, or maintaining the Trust Assets from such assets or the proceeds of such assets before making any Distribution to holders of Allowed General Unsecured Claims.

**Indemnification and Limitation of Liability.** The Unsecured Claimants Trustee shall not be liable for actions taken or omitted in his capacity as the Unsecured Claimants Trustee, except those acts arising out of his own fraud, intentional misconduct, or gross negligence. The Unsecured Claimants Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Unsecured Claimants Trustee, except for any actions or inactions involving his own fraud, intentional misconduct, or gross negligence. Any indemnification claim of the Unsecured Claimants Trustee shall be satisfied from the Trust Assets. The Unsecured Claimants Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

**Distributable Cash; Investment.** The Unsecured Claimants Trustee shall collect all funds constituting property of the Claimants Trust and, pending distribution, shall deposit such funds with a federally insured financial institution with a minimum of $200 million in capital and that provides banking services. The Unsecured Claimants Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Unsecured Claimants Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code, provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

**Reporting Duties.** Within 120 days after the end of each calendar quarter following the Effective Date and concurrently with the filing of a motion to close the Bankruptcy Cases pursuant to Bankruptcy Code section 350, the Unsecured Claimants Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Unsecured Claimants Trust at the end of such quarter or upon termination, (ii) any changes in such assets or liabilities that have not been previously reported, and (iii) any material action taken by the Unsecured Claimants Trustee in the performance of his duties under the Unsecured Claimants Trust and under the Plan that has not been previously reported.

**Standing.** The Unsecured Claimants Trustee shall have the right to appear in the Bankruptcy Court or any other court of competent jurisdiction and be heard on any matter relating to the interpretation or implementation of the Plan or the Unsecured Claimants Trust Agreement or any of the assets which are to be transferred to it under the Plan.

**Tax Treatment of the Unsecured Claimants Trust.** The Unsecured Claimants Trust is to be established for the benefit of holders of Allowed General Unsecured Claims in Class 4 and is intended to qualify as a grantor trust for federal income tax purposes. All items of income, deduction, credit or loss of the Unsecured Claimants Trust shall be allocated for federal, state and local income tax purposes among the holders of Allowed General Unsecured Claims in Class 4.

**Dissolution.** The Unsecured Claimants Trustee and the Unsecured Claimants Trust shall be discharged and dissolved, respectively, at such time as (i) all of the Trust Assets have been distributed pursuant to the Plan and the Unsecured Claimants Trust Agreement, (ii) the Unsecured Claimants Trustee determines, in his sole discretion, that the administration of the Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, and (iii) all Distributions required to be made by the Unsecured Claimants Trustee under the Plan and the Unsecured Claimants Trust Agreement have been made, but in no event shall the Unsecured Claimants Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period before the fifth anniversary (or at least six (6) months prior to the end of an extension period), determines that an extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Trust Assets. If at any time the Unsecured Claimants Trustee determines, in reliance upon such professionals as he may retain, that the expense of administering the Unsecured Claimants Trust so as to make a final Distribution to its beneficiaries is likely to exceed the value of the remaining Trust Assets, the Unsecured Claimants Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Unsecured Claimants Trust, (ii) donate any balance to a charitable organization described in 28 U.S.C. § 501(c)(3) and exempt from United States federal income tax under 28 U.S.C. § 501(a) that is unrelated to the Debtors, the Unsecured Claimants Trust, the Unsecured Claimants Trustee and any of their insiders, and (iii) dissolve the Unsecured Claimants Trust.

### 6.05.  The Tort Claimants Trust

**Establishment of the Tort Claimants Trust.**  On the Effective Date, provided that there remains at least one unsettled Class 5 Claim , the Tort Claimants Trust shall be established and shall become effective, and the Tort Claimants Trustee shall execute the Tort Claimants Trust Agreement, and all other necessary steps shall be taken to establish the Tort Claimants Trust.  In the event of any conflict between the terms of this Section 6.05 and the terms of the Tort Claimants Trust Agreement, the terms of the Tort Claimants Trust Agreement shall govern. The Tort Claimants Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Tort Claimants Trust as a liquidating trust for United States federal income tax purposes.

**Purpose of the Tort Claimants Trust.** The Tort Claimants Trust shall be established for the sole purpose of liquidating and distributing its Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the value of the Trust Assets and consistent with the purpose of the Tort Claimants Trust.  The Tort Claimants Trust shall not be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code.  The Tort Claimants Trust shall administer, process, settle, resolve and liquidate all Personal Injury Claims; and shall use the Trust Assets and the proceeds and income therefrom to pay all Personal Injury Claims that become Allowed and qualify for payment only in accordance with the terms of the Tort Claimants Trust Agreement, the CRP, the Plan and the Confirmation Order.  The Tort Claimants Trustee will administer, process, settle, resolve, liquidate, litigate, and/or pay, as applicable, all Personal Injury Claims in such a way that the holders of Allowed Personal Injury Claims are treated equitably and in a substantially similar manner, subject to the terms of the Tort Claimants Trust Agreement, the CRP, the Plan and the Confirmation Order.

**The Tort Claimants Trust Agreement and the CRP; Amendment and Modification.** From and after the Effective Date, the Tort Claimants Trust shall implement the Tort Claimants Trust Agreement and the CRP in accordance with their terms.  The CRP shall provide mechanisms such as, without limitation, Pro Rata and/or percentage Distributions of the Trust Assets to the holders of Allowed Personal Injury Claims, net of payment or reserves for fees, costs and expenses of the Tort Claimants Trust; periodic estimates by the Tort Claimants Trustee and his professionals of the numbers and values of Personal Injury Claims and the costs of liquidating such Claims under the terms of the CRP; and/or other comparable mechanisms that provide reasonable assurance that the Tort Claimants Trust will be in a financial position to pay similar Allowed Personal Injury Claims in substantially the same manner.

The Tort Claimants Trustee shall have the power to amend, supplement or modify the Tort Claimants Trust Agreement and the CRP, provided, however, that to the extent any amendment, supplement or modification would constitute a material modification that would affect the substantive rights of holders of  Personal Injury Claims, such holders shall be provided ten (10) days' notice of such amendment, supplement or modification and an opportunity to contest it before the Bankruptcy Court.  If any holder contests a proposed amendment,

supplement or modification within the notice period, such amendment, supplement or modification shall not become effective until the Bankruptcy Court has authorized, or each objecting party has consented to, amendment, supplement or modification.

**Transfer and Vesting of Assets; Defenses.** All property paid, delivered and/or transferred to the Tort Claimants Trust pursuant to Section 6.02 of the Plan, shall vest in the Tort Claimants Trust and constitute Trust Assets, free and clear of all Claims, Liens, interests and encumbrances, and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Tort Claimants Trust in accordance with the terms of the Plan and the Tort Claimants Trust Agreement. The Tort Claimants Trust shall have all objections, defenses, cross-claims, offsets and recoupments that the Debtors have or would have had under applicable law with respect to the Personal Injury Claims.

**Tort Claimants Trust Distributions and Operating Expenses.** The Tort Claimants Trustee shall distribute the Trust Assets, net of payment or reserves for fees, costs and expenses of the Tort Claimants Trust, to the holders of Allowed Personal Injury Claims in accordance with the Plan, the Claimants Trust Agreement and the CRP. Except as otherwise provided in the Plan, the Claimants Trust Agreement or the CRP, the timing and amount of all Distributions payable by the Tort Claimants Trust shall be within the sole discretion of the Tort Claimants Trustee. The Tort Claimants Trustee may reserve and use Cash from the Trust Assets, in such amounts as the Tort Claimants Trustee shall deem reasonable in his sole discretion, for the payment of expenses of the Tort Claimants Trust and the Tort Claimants Trustee, including without limitation, professional fees and expenses, costs of Distributions, and the prosecution and resolution of objections to Disputed Personal Injury Claims.

**Tort Claimants Trustee; Term.** The Tort Claimants Trustee shall be a Person selected by the Debtors and approved by the Bankruptcy Court in the Confirmation Order. [The initial Tort Claimants Trustee shall be _____.] The appointment of the Tort Claimants Trustee shall be effective as of the Effective Date. Any successor Tort Claimants Trustee shall be appointed as set forth in the Tort Claimants Trust Agreement. Unless the Tort Claimants Trustee resigns or dies earlier, the Tort Claimants Trustee's term shall expire upon termination of the Tort Claimants Trust pursuant to the Plan and/or the Tort Claimants Trust Agreement.

**Rights, Powers and Duties of Tort Claimants Trustee.** The Tort Claimants Trustee shall have the rights, powers and duties set forth in the Plan, the Tort Claimants Trust Agreement and the CRP. The Tort Claimants Trustee will be a representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute all Causes of Action and object to and/or defend against any Disputed Personal Injury Claims in the name of the Tort Claimants Trust or as necessary in the name of any Debtor(s). The Tort Claimants Trustee shall be governed by the terms of the Tort Claimants Trust Agreement, the CRP and the Plan. The Tort Claimants Trustee shall administer the Tort Claimants Trust and the Trust Assets and make Distributions in accordance with the Tort Claimants Trust Agreement, the CRP and the Plan. The Tort Claimants Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including without limitation the following:

(1)     hold the Trust Assets for the benefit of holders of Allowed Personal Injury Claims that are entitled to Distributions therefrom under the Plan, the Tort Claimants Trust Agreement and the CRP;

(2)     administer and distribute all Trust Assets as specified in the Tort Claimants Trust Agreement, the CRP and the Plan;

(3)     object to Claims, and manage, control, prosecute and/or settle on behalf of the Tort Claimants Trust, objections to Claims on account of which the Tort Claimants Trustee will be responsible (if Allowed) for making Distributions under the Plan;

(4)     conserve the Trust Assets to maximize and ensure equitable Distributions to holders of Allowed Personal Injury Claims, including, without limitation, by withdrawing the Tort Claimants Trust from any litigation of Personal Injury Claims whose holders elect the Litigation Option and fail to resolve their Personal Injury Claims through the ADR Procedures if, in the sole judgment and discretion of the Tort Claimants Trustee, the costs of further litigation of such Claims would unduly diminish the Trust Assets ultimately available to all holders of Allowed Personal Injury Claims;

(5)     execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Tort Claimants Trust;

(6)     pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Trust Assets or any part thereof or to preserve the Tort Claimants Trust;

(7)     open, maintain, and administer bank accounts as necessary to discharge the duties of the Tort Claimants Trustee under the Plan and the Tort Claimants Trust Agreement;

(8)     sue and be sued and represent the Debtors, the Estates and the Tort Claimants Trust before the Bankruptcy Court, other courts of competent jurisdiction and any arbitrator(s) with respect to all Disputed Claims, and any other matters concerning the Plan or the Tort Claimants Trust; and

(9)     exercise such other powers as may be vested in the Tort Claimants Trust or the Tort Claimants Trustee pursuant to the Plan, the Tort Claimants Trust Agreement, the CRP or any Final Order of the Bankruptcy Court and do all other acts that may be necessary or appropriate for the final distribution of the Trust Assets.

**Retention of Professionals.** The Tort Claimants Trustee may retain and compensate attorneys and other professionals to assist in his duties as Tort Claimants Trustee on such terms as he deems appropriate without Bankruptcy Court approval.  The Tort Claimants Trustee shall be entitled to rely reasonably upon the advice of retained professionals and shall not be liable for any action taken in reliance on such advice. The reasonable and necessary fees and expenses of all such professionals and clerical assistants shall be charged as expenses of the Tort Claimants Trust and shall be paid upon approval of the Tort Claimants Trustee.

27

**Costs, Fees and Expenses of the Tort Claimants Trust.**  Compensation of the Tort Claimants Trustee and the costs and expenses of the Tort Claimants Trust, including the fees and expenses of the Tort Claimants Trustee and its retained professionals, shall be paid out of the Trust Assets, which payments shall not require approval or an order of the Bankruptcy Court. Fees and expenses incurred in connection with the prosecution, defense and/or settlement of any Disputed Personal Injury shall be considered costs and expenses of the Tort Claimants Trust.  If a dispute arises regarding the fees or expenses of the Tort Claimants Trustee or the Tort Claimants Trustee's professionals, the undisputed portion of such fees and expenses may be paid pending the resolution of the disputed portion of such fees and expenses without approval or an order of the Bankruptcy Court. The Tort Claimants Trustee may deduct and/or reserve for all fees expenses reasonably incurred by the Tort Claimants Trustee or the Tort Claimants Trustee's professionals in administering, preserving, or maintaining the Trust Assets from such assets or the proceeds of such assets before making any Distribution to holders of Allowed Personal Injury Claims.

**Indemnification and Limitation of Liability.**  The Tort Claimants Trustee shall not be liable for actions taken or omitted in his capacity as the Tort Claimants Trustee, except those acts arising out of his own fraud, intentional misconduct, or gross negligence. The Tort Claimants Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Tort Claimants Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence. Any indemnification claim of the Tort Claimants Trustee shall be satisfied from the Trust Assets.  The Tort Claimants Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

**Distributable Cash; Investment.**  The Tort Claimants Trustee shall collect all funds constituting property of the Tort Claimants Trust and, pending distribution, shall deposit such funds with a federally insured financial institution with a minimum of $200 million in capital and that provides banking services. The Tort Claimants Trustee will deposit funds so that they are adequately insured.  Notwithstanding the foregoing, the Tort Claimants Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code, provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

**Reporting Duties.** Within 120 days after the end of each calendar quarter following the Effective Date and concurrently with the filing of a motion to close the Bankruptcy Cases pursuant to Bankruptcy Code section 350, the Tort Claimants Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Tort Claimants Trust at the end of such quarter or upon termination, (ii) any changes in the assets or liabilities of the Tort Claimants Trust that have not been previously reported, and (iii) any material action taken by the Tort Claimants Trustee in the performance of his duties under the Tort Claimants Trust and under the Plan that has not been previously reported.

**Standing.**  The Tort Claimants Trustee shall have the right to appear in the Bankruptcy Court or any other court of competent jurisdiction or arbitration tribunal and be heard on any

matter relating to the interpretation or implementation of the Plan, the Tort Claimants Trust Agreement or the CRP.

**Tax Treatment of the Tort Claimants Trust.** The Tort Claimants Trust is to be established for the benefit of holders of Allowed Personal Injury Claims in Class 5 and is intended to qualify as a grantor trust for federal income tax purposes. All items of income, deduction, credit or loss of the Tort Claimants Trust shall be allocated for federal, state and local income tax purposes among the holders of Allowed Personal Injury Claims in Class 5.

**Dissolution.** The Tort Claimants Trustee and the Tort Claimants Trust shall be discharged and dissolved, respectively, at such time as (i) all of the Trust Assets have been distributed pursuant to the Tort Claimants Trust Agreement, the CRP and the Plan, (ii) the Tort Claimants Trustee determines, in his sole discretion, that the administration of the Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, and (iii) all Distributions required to be made by the Tort Claimants Trustee under the Tort Claimants Trust Agreement, the CRP and the Plan have been made, but in no event shall the Tort Claimants Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period before the fifth anniversary (or at least six (6) months prior to the end of an extension period), determines that an extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Trust Assets. If at any time the Tort Claimants Trustee determines, in reliance upon such professionals as the Tort Claimants Trustee may retain, that the expense of administering the Tort Claimants Trust so as to make a final Distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Tort Claimants Trust, the Tort Claimants Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Tort Claimants Trust, (ii) remit any balance to the Unsecured Claimants Trust, and (iii) dissolve the Tort Claimants Trust.

### 6.06. Duties of the Creditors Committee

The duties of the Creditors Committee and its Professionals will terminate on the later of: (a) the Effective Date; and (b) the resolution of any Fee Applications filed or objected to by the Creditors Committee or its Professionals. Upon the termination of the duties of the Creditors Committee and its Professionals, the Creditors Committee will be dissolved and its members will be deemed released by the Debtors from (y) all their duties, responsibilities and obligations in connection with the Bankruptcy Cases, and (z) all claims and Causes of Action relating to or arising directly or indirectly from services performed. Upon the dissolution of the Creditors Committee, no notice to the Creditors Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

# ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS

### 7.01. General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which any Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts, if any, identified in the Schedule of Assumed Contracts that will be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

### 7.02. Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Amounts that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order (which may be the Confirmation Order) shall be paid by the Claimants Trust within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Amounts that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Amount, the cure of any other defaults, the promptness of the Cure Amount payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 5 General Unsecured Claim that relates to or arises out of such assumed Executory Contract. Notwithstanding the foregoing, the Debtor or the Claimants Trust may, in its sole discretion, file a motion to reject any Executory Contract as to which a Cure Claim is established by an order of the Bankruptcy Court, and any such motion shall be filed no later than five (5) Business Days after the order of the Bankruptcy Court allowing such Cure Claim becomes a Final Order.

### 7.03. Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 or 7.02 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Claimants Trust or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtors and the Claimants Trust

on or before the Rejection Bar Date. Any holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, the Estates, the Claimants Trust or any of their Assets. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04.  Rejection Claims

Any Rejection Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

### 8.01.  Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Proponents of each of the following conditions:

The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Proponents, approving the Disclosure Statement;

The proposed Confirmation Order shall be in form and substance acceptable to the Proponents; and

All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Proponents.

### 8.02.  Conditions Precedent to the Effective Date

The occurrence of the Effective Date of the Plan is subject to the occurrence or waiver by the Proponents of each of the following conditions precedent:

The Confirmation Order shall have become a Final Order in form and substance acceptable to the Proponents;

All documents constituting the Plan Supplement shall be in form and substance acceptable to the Proponents and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein;

The Claimants Trusts shall have been established in conformity with the Claimants Trust Agreements and applicable law; and

All Assets required to be transferred to the Claimants Trusts in accordance with the Plan shall have been so transferred, and all filings, deliveries, and actions to be taken in conjunction with such transfers pursuant to the Plan shall have been made and taken, all in a manner acceptable to the Proponents.

The Proponents, jointly and not severally, may waive any of the foregoing conditions to the Effective Date, in whole or in part, in writing signed by all of the Proponents, without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect, if the Proponents so elect in writing. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Proponents so elect in writing. In the event of any such appeal, the Proponents or any other party in interest may seek the dismissal of such appeal on any grounds. The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time. The Proponents will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

### 8.03. Consequences of Non-Occurrence of Effective Date

If the Effective Date does not timely occur, the Proponents reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtors may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

### 8.04. Approval of Plan Documents

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Supplement and all transactions contemplated hereunder. Entry of the Confirmation Order shall constitute approval of the Plan Supplement and such transactions. On the Effective Date, the Reorganized Debtors and the Claimants Trusts shall be authorized to enter into, file, execute and/or deliver each of the Plan Supplement documents and any other agreement or instrument issued in connection with any Plan Supplement without the necessity of any further corporate, board, shareholder, creditor or beneficiary action.

32

# ARTICLE IX
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 9.01.  Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Claimants Trustee, all former, present and future holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Cases.  Confirmation of the Plan binds each holder of a Claim or an Interest to the terms and conditions of the Plan, whether or not such holder has accepted the Plan.

### 9.02.  Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, all property and Assets of the Debtors shall vest in the Claimants Trust in accordance with the terms of the Plan, free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests.  To the extent any unrecorded Liens against or ownership interests in any such Assets exist or are asserted by third parties, such Liens and interests shall be voided and transferred to the Claimants Trust as of the Effective Date.  Commencing on the Effective Date, the Claimants Trust may deal with the Assets and the Trust Assets and conduct its business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtors by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Cases, other than any restrictions contained in the Plan, the Trust Agreement, the Confirmation Order, and related documents.

### 9.03.  Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, without further action by any party, all Causes of Action (other than Causes of Action against the Released Parties which are being released under Section 9.06 of the Plan), and all defenses, counterclaims, setoffs and rights related thereto or related to any Disputed Claim, shall be and shall be deemed to be transferred to the Unsecured Claimants Trust.  From and after the Effective Date, and subject to the terms of the Unsecured Claimants Trust Agreement, the Unsecured Claimants Trust shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to it under the Plan. To the extent any Cause of Action, or any defense, counterclaim, setoff or right related thereto or related to any Disputed Claim, is not transferable by a Debtor to the Unsecured Claimants Trust under applicable law, the relevant Debtor shall retain such Cause of Action, defense, counterclaim, setoff or right, and the Unsecured Claimants Trust shall be entitled to prosecute such Cause of Action, defense, counterclaim, setoff or right in the name of the relevant Debtor.  Each Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against such Debtor or property of its Estate for the benefit of the Unsecured Claimants Trust.  No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of a Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

33

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors or the Unsecured Claimants Trust may have or which the Unsecured Claimants Trust may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against a Debtor, the Claimants Trust, or their officers, directors, members or representatives, and (ii) the turnover of any property of the Debtors' Estates.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or any other legal or equitable defense which the Debtors had immediately before the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Unsecured Claimants Trust shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately before the Petition Date fully as if the Bankruptcy Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date by the Unsecured Claimants Trust to the same extent as if the Bankruptcy Cases had not been commenced.

### 9.04. Discharge of Debtors

Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Debtors of any nature whatsoever, whether known or unknown, or against the Assets of the Debtors that arose before the Effective Date. Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against and Interests in the Debtors and their Assets, arising at any time before the Effective Date, regardless of whether a proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the holder of the Claim or Interest votes to accept the Plan or is entitled to receive a Distribution under the Plan. Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any holder of a discharged Claim or Interest will be precluded from asserting against the Debtors, the Claimants Trust, or any Assets of the Debtors or the Claimants Trust any other or further Claim or Interest based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as provided in the Plan or the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtors to the extent allowed under Bankruptcy Code section 1141, and the Debtors and the Claimants Trust will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

### 9.05. Exculpation

*The Debtors and their respective present or former principals, agents, members, officers, directors, and employees; the Debtors' Professionals; the members of the Creditors Committee (solely in their capacity as such and not in their individual capacity); the Creditors Committee's Professionals; and any of such parties' representatives, successors, and assigns shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any holder of a Claim or Interest or any other Person for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Estates, the administration of the Bankruptcy Cases, the operation of the Debtors' business during the Bankruptcy Cases, the formulation, negotiation, preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be distributed under the Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction. The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.*

### 9.06. Release

*In consideration of the Release Payment and the other consideration provided under the Plan, as of the Effective Date, each of the Debtors (including in their individual capacities and as debtors in possession) and their Estates will and will be deemed to have forever released, waived and discharged each of the Released Parties from any and all Causes of Action, Claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, whether for tort, contract, or any other theory of liability or recovery (including, without limitation, alter ego, piercing the corporate veil. breach of fiduciary duty, or conspiracy), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date in any way relating to the Debtors, the ownership, management and operations of the Debtors, the Bankruptcy Cases, or the Plan, or negotiations regarding or concerning the Plan, and the Released Parties shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and in law, equity, or otherwise, to the Debtors or their Estates (or, derivatively of the Debtors, to any holder of a Claim or Interest or any other Person) for any of the foregoing Causes of Action or Claims.*

*Each Person to which this Section applies shall be deemed to have granted the releases set forth in this Section notwithstanding that it may hereafter discover facts in addition to, or different from, those that it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Persons expressly waive any and all rights that they may have at common law or under any statute or*

35

*other applicable law that would limit the effect of such releases to those claims or causes of action actually known or suspected to exist as of the Effective Date.*

### 9.07. Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date, all holders of Claims against and Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, the Claimants Trusts and/or any of the Released Parties or any of their property on account of any such Claim or Interest: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to a Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order. If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 9.08. Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Section 9.07 of the Plan shall be effective.

### 9.09. Effectuating Documents; Further Transactions; Timing

The Debtors and the Claimants Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

### 9.10. Post Effective Date Undertakings by HCN

Following the Effective Date, HCN shall be responsible for the following on behalf of the Debtors pursuant to the terms and conditions of the Transition Services Agreement:

i.      payroll tax return preparation and filing as well as responding to insurance and/or workers compensation issues;

ii.     income tax return preparation and filing;

iii.     cost reports preparation and filing;

iv.     administration of medical insurance and claims;

v.     closure of the Debtors' bank accounts;

vi.     closure and transfer of the Debtors' 401k or any other employee benefit accounts;

vii.     state dissolution of Debtor legal entities and satisfaction of any state reporting requirements;

viii.     patient file maintenance;

ix.     provide access to the Debtors' books, records and computer files as reasonably necessary to administer the Claimants Trusts; and

x.     provide factual and documentary support as is reasonably necessary for the Claimants Trust to prosecute any litigation, Causes of Action, Claims or objections to Claims.

### 9.11.   Post-Effective Date Corporate Existence

To the extent it has not previously occurred, each Reorganized Debtor is authorized and empowered to merge into or with each other Reorganized Debtor and the officers or managers thereof and any successor thereto (including without limitation any other designated officer or trustee or representative of each such Reorganized Debtor) is authorized and empowered to effect each such merger and to take and cause to be taken such actions in order to carry out such mergers, in each case, on such terms and conditions it may deem necessary or desirable. The officers or managers of such Reorganized Debtors (including without limitation any other designated officer or trustee or representative of each such Reorganized Debtor) are authorized and empowered to effect the dissolution of any remaining Reorganized Debtors as soon as practicable after the Effective Date. The foregoing actions are pursuant to the applicable laws of the states in which the Debtors and the Reorganized Debtors are organized, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtors or Reorganized Debtors.

## ARTICLE X
## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

### 10.01.  Objections to Claims and Interests

After the Effective Date, any party in interest, including the Debtors and the Claimants Trusts, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  The Debtors (or their designees, successors and assigns) and the Claimants Trusts are not obligated to object to any Claim, but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect.  Nothing in this Section is intended to limit the right of any party to object to Claims.

### 10.02.  Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline.  An objection to a Claim will be deemed properly served on the holder thereof if service is effected by any of the following methods:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the holder in the Bankruptcy Cases; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the holder of such Claim at the address set forth in the Schedules.

### 10.03.  Settlement of Objections to Claims

From and after the Effective Date, the Debtors, the Unsecured Claimants Trustee and the Tort Claimants Trustee, as applicable, are authorized to approve compromises of all Claims or Disputed Claims, pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court.

### 10.04.  No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.05.  Setoffs; No Waiver

The Debtors, HCN and the Claimants Trusts may but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made pursuant to the Plan

38

in respect of such Claim, any Cause of Action or any Claim of any nature whatsoever that the Debtors and the Claimants Trusts may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtors and the Claimants Trusts shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Claimants Trusts of any such claims or Causes of Action that any of them may have against such holder or any affiliate of such holder.

### 10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

**No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, the Claimants Trusts shall make Distributions only to holders of Allowed Claims or their designees as provided herein.  No holder of a Disputed Claim will receive any Distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim.  To the extent a Claim is not a Disputed Claim but is held by a holder that is or may be liable to a Debtor on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter.

In determining the amount of a Pro Rata Distribution due to the holders of Allowed Claims, the Claimants Trusts may, in their discretion, make the Pro Rata calculation as if all Disputed Claims were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof.  The Claimants Trusts, in their discretion, may withhold Distributions otherwise due hereunder to the holder of a Disputed Claim, or to its designee as provided herein, until the Objection Deadline, to enable the Claimants Trusts or any other party in interest to file a timely objection thereto.

**Claim Estimation.**  The Debtors or the Claimants Trusts may request that the Bankruptcy Court enter an Estimation Order with respect to any Claim, pursuant to Bankruptcy Code section 502(c), for purposes of determining the Allowed amount of such Claim, regardless of whether any Person has previously objected to such  Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will determine (i) whether any Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.  If the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

**Distribution Reserve Accounts.**      On or after the Effective Date, the Claimants Trusts, in their sole discretion, may create one or more separate Distribution Reserve Accounts from the

Cash to be distributed to or for the benefit of the holders of Disputed Claims pending the allowance thereof. Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims and Priority Tax Claims. The portion of assets in a Distribution Reserve Account allocable to, or retained on account of, a Disputed Claim shall be equal to the lesser of (i) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (ii) the amount of such Claim as asserted by the holder; or (iii) an amount to be agreed upon between HCN or the Claimants Trustee, as applicable, and the holder of such Claim. A holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order. As stated above, nothing in the Plan will be deemed to entitle the holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

**Distributions After Allowance of Disputed Claim.** Distributions to each holder of a Disputed Claim or to its designee, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such holders of Claims in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after the Disputed Claim becomes an Allowed Claim, HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, shall distribute to the holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such holder had its Claim been an Allowed Claim on the date that Distributions were previously made to holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all Disputed Claims have been resolved by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

**Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

### 10.07. Distributions Under the Plan

**Means of Cash Payment.** Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, in such currency and by such means as are necessary or customary in a particular jurisdiction.

**Delivery of Distributions.** All Distributions to any holder of an Allowed Claim (or to its designee as provided herein) shall be made at the address of each such holder as set forth on the proof of Claim filed by such holder or its designee (or at the last address of such a holder or its designee known to HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as

applicable, if no proof of Claim is filed or if HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, has been notified in writing of a change of address). If any holder's Distribution is returned as undeliverable, no further Distributions to such party (or its designee) shall be made unless and until HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, is notified in writing of such party's then current address, at which time all missed Distributions shall be made to such holder (or its designee) without interest. Any holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, for Distribution to other holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred. HCN, the Unsecured Claimants Trustee and/or the Tort Claimants Trustee may employ or contract with other Persons to assist in or make the Distributions required under the Plan. **The Debtors, HCN and the Claimants Trusts and their agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.**

**Fractional Dollars; De Minimis Distributions.** Notwithstanding any other provision of the Plan, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, shall retain any such payment and shall deposit same into a pool for redistribution to other holders of Allowed Claims in the same Class.

**Unclaimed Property.** Any Distributions that become Unclaimed Property shall be retained by HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, free and clear of any claims or restrictions thereon, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred. HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, shall distribute Unclaimed Property to other holders of Claims pursuant to the terms of the Plan, the Unsecured Claimants Trust Agreement, the Tort Claimants Trust Agreement and the CRP, as applicable.

**10.08. Duty to Disgorge Overpayments**

To the extent the holder of any Allowed Claim receives more than what such holder is permitted to receive under the Plan, such holder shall immediately return such excess payment(s) to HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, failing which, HCN, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, may sue such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

### 10.09.  Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### 10.10.  No Recourse

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Claimants Trust, the Tort Claimants Trustee or Unsecured Claimants Trustee, the Debtors, the Reorganized Debtors, the Creditors' Committee or any of their respective professionals, consultants, officers, directors, employees or their successors or assigns, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability of claimants (if any) to seek disgorgement to remedy any unequal distribution from parties other than those released under this section.  THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### ARTICLE XI
### ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A holder of a Claim as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  A Class of Interests that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by the holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03. Section 1129(b) Cramdown

If any impaired Class of Claims or Interests fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Proponents will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b). The Proponents assert that the Plan provides for fair and equitable treatment of all Classes of Claims and Interests. The Proponents reserve the right to amend the Plan as may be necessary to obtain confirmation of the Plan under Bankruptcy Code section 1129(b).

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01. Jurisdiction

Until the Bankruptcy Cases are closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtors and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction. Nothing contained in the Plan will prevent the Debtors or the Claimants Trusts from taking any action necessary to enforce any Cause of Action that may exist on behalf of the Debtors or the Claimants Trusts that may not have been enforced or prosecuted by the Debtors.

### 12.02. Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims. The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the right of the Debtor or the Claimants Trust to object to, or to re-examine, the Claim in whole or in part.

### 12.03. Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Assets and the Trust Assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 12.04.  Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Cases and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)  hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)  hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)  hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Cases or the Plan;

(d)  enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Cases;

(e)  hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)  hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)  construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)  adjudicate matters arising in the Bankruptcy Cases, including matters relating to the formulation and consummation of the Plan;

(i)  enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtors and the Claimants Trust to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)        hear and determine all questions and disputes regarding title to or recovery of the Assets and property of the Debtors, and the Trust Assets and property of the Claimants Trusts;

(k)        hear and determine any objection to any Claim (including, without limitation, any Personal Injury Claim or Administrative Claim) or any Interest, including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(l)        allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including, without limitation, any Personal Injury Claim and any Administrative Claim) or any Interest and to re-examine Claims or Interests that have been allowed for purposes of voting;

(m)        enter a Final Decree closing any or all of the Bankruptcy Cases;

(n)        correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(o)        enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(p)        hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Claimants Trust shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court unless otherwise specified in the Plan;

(q)        hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(r)        hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(s)        hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Amounts;

(t)        hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)        hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)     hear and determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Cases, including the matters set forth in Article XII of this Plan, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## <u>ARTICLE XIII</u>
## MISCELLANEOUS PROVISIONS

### 13.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, or first class mail, and (c) deemed to have been given or made when actually delivered or received:

**-to the Debtors:**

_____

**–with a copy to counsel for the Debtors:**

Patrick J. Neligan, Jr.
James P. Muenker
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX  75201

**-to the Committee:**

_____

**–with a copy to counsel for the Committee:**

PEPPER HAMILTON LLP
Francis J. Lawall
Donald J. Detweiler
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

**-to the Unsecured Claimants Trust:**

46

_____

**-to the Tort Claimants Trust:**


_____


### 13.02.  Plan Supplement

No later than ten (10) Business Days before the Confirmation Hearing, or no later than any other deadline specified in the Plan with respect to a specific agreement or document, the Debtors shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Debtors will serve copies of the Plan Supplement on the Office of the United States Trustee and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors' counsel.  The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 13.03.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.04.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if a Debtor, the Unsecured Claimants Trustee or the Tort Claimants Trustee defaults under the provisions of the Plan, any Creditor or party in interest desiring to assert a default will provide the relevant Debtor, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, and its counsel with written notice of the alleged default.  The Debtor, the Unsecured Claimants Trustee or the Tort Claimants Trustee, as applicable, will have thirty (30) days from receipt of written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the relevant Debtor, the Unsecured Claimants Trustee or the Tort Claimants Trustee and its counsel, a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

### 13.05. Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtors revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors or any other Person.

### 13.06. Modification of the Plan

The Proponents reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Proponents shall have complied with Bankruptcy Code section 1125. The Proponents further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Proponents shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 13.07. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.08. Due Authorization

Each and every holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.09. Implementation

The Debtors and the Claimants Trusts may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.10. Execution of Documents

Upon application by the Debtors, the Unsecured Claimants Trust or the Tort Claimants Trust, the Bankruptcy Court may issue an order directing any necessary party to execute or

deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.11. Bankruptcy Restrictions

From and after the Effective Date, the Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtors or the Claimants Trusts shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.12. Ratification

The Confirmation Order will ratify all transactions effected by the Debtors during the pendency of the Bankruptcy Cases.

### 13.13. Integration Clause

This Plan is a complete and integrated statement of the binding agreement among the Debtors, the holders of Claims and Interests, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.14. Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation. Nothing herein shall be deemed as a judicial admission by the Debtors. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.15. Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtors or the Claimants Trusts, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtors or the Claimants Trusts consent. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.16.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), (a) the laws of the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan unless otherwise specified therein, and (b) the laws of the state of incorporation, formation, or organization of a Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereto.

**DEBTOR[S]**

By:  _/s/ Raymond Mulry_____
      Raymond Mulry
      Its Authorized Representative

84384v.5