## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NEW LOUISIANA HOLDINGS, LLC,** | § | **Case No. 14-50756** |
| *et al.* | § | **(Chapter 11)** |
| | § | |
| **DEBTORS** | § | **Jointly Administered** |

### AMENDED SUPPLEMENT TO FIRST AMENDED JOINT PLAN OF LIQUIDATION FOR NEW LOUISIANA HOLDINGS, LLC, *ET AL.*, PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS MODIFIED

The Plan Proponents[1] of the First Amended Joint Plan of Liquidation for New Louisiana Holdings, LLC, *et al.*, Proposed by the Debtors and the Official Committee of Unsecured Creditors (as modified, the "Plan," dkt. no. 1288) submit this amended supplement to the Plan (the "Amended Plan Supplement"). The Amended Plan Supplement consists of the following items:

1.      The Unsecured Claimants Trust Agreement, and all schedules and exhibits thereto (*see* Plan, §§ 1.93 and 6.04), attached hereto as **Exhibit A**.

2.      The Tort Claimants Trust Agreement, and all schedules and exhibits thereto (see Plan, §§ 1.88 and 6.05), attached hereto as **Exhibit B**.

3.      Schedule of Assumed Contracts (*see* Plan, §§ 1.81 and 7.01), attached hereto as **Exhibit C**.

4.      Scheduled of Released Parties (*see* Plan, § 1.80), attached hereto as **Exhibit D**.

5.      Transition Services Agreement (see Plan, § 6.03(b)), attached hereto as **Exhibit E**.

6.      Schedule of TCR Personal Injury Claims, attached hereto as **Exhibit F**.

---

[1] Capitalized terms used but not defined herein shall have the meanings specified in the Plan.

Each document in the Amended Plan Supplement remains subject to: (1) material revision, modification, alteration, or amendment by the Plan Proponents; and (2) approval of each of the Plan Proponents in accordance with Sections 1.73 and 8.02 of the Plan. The documents in the Amended Plan Supplement are part of the Plan and are integral to implementation of the Plan, and if the Plan is confirmed, such documents shall be approved in the order confirming the Plan.

The Amended Plan Supplement may be viewed for a fee on the Court's website at http://www.lawb.uscourts.gov. To access documents on the Court's website, you will need a PACER password and login, which can be obtained at https://www.pacer.gov. Copies of the Amended Plan Supplement are also available upon request in writing submitted by email to: rclark@neliganlaw.com.

Dated: August 26, 2016

Respectfully submitted,

_/s/ Patrick J. Neligan, Jr._
NELIGAN FOLEY LLP
Patrick J. Neligan, Jr.
James P. Muenker
325 N. St. Paul
Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

BAKER DONELSON
Jan M. Hayden
201 St. Charles Avenue, 36th Floor
New Orleans, LA 70170
Telephone: (504) 566-8645
Facsimile : (504) 585-6945

**COUNSEL FOR THE DEBTORS**

_/s/ Francis J. Lawall_
PEPPER HAMILTON LLP
Francis J. Lawall
Donald J. Detweiler
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

MCGLINCHEY STAFFORD, PLLC
Rudy J. Cerone
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 596-2786
Facsimile: (504) 910-9362

**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

## Exhibit A

**Unsecured Claimants Trust Agreement**

Attached

**UNSECURED CLAIMANTS TRUST AGREEMENT**

**for**

**NEW LOUISIANA HOLDINGS, LLC,** *et al.*

**August __, 2016**

# TABLE OF CONTENTS

Page

ARTICLE 1     ESTABLISHMENT OF THE UNSECURED CLAIMANTS TRUST ........... 2

    1.1.    Establishment of Unsecured Claimants Trust and Appointment of Original Trustee .................................................................................................................. 2

    1.2.    Transfer of Assets and Rights to the Unsecured Claimants Trustee ..................... 2

    1.3.    Retained Assets ................................................................................................... 3

    1.4.    Title to Unsecured Claimants Trust Assets .......................................................... 4

    1.5.    Nature and Purpose of the Unsecured Claimants Trust ....................................... 4

    1.6.    Incorporation of Plan .......................................................................................... 5

    1.7.    Appointment as Representative ........................................................................... 5

ARTICLE 2     UNSECURED CLAIMANTS TRUST INTERESTS ........................................ 5

    2.1.    Allocation of Unsecured Claimants Trust Interests ............................................. 5

    2.2.    Interests Beneficial Only ..................................................................................... 6

    2.3.    Conflicting Claims .............................................................................................. 6

    2.4.    Evidence of Beneficial Interests ......................................................................... 6

    2.5.    Securities Law Registration ................................................................................ 7

    2.6.    Absolute Ownership ............................................................................................ 7

    2.7.    Limited Liabilities ............................................................................................... 7

ARTICLE 3     THE UNSECURED CLAIMANTS TRUSTEE AND OVERSITE COMMITTEE ..................................................................................................... 7

    3.1.    Unsecured Claimants Trust Proceeds ................................................................. 7

    3.2.    Payment of Unsecured Claimants Trust Expenses .............................................. 8

    3.3.    Distribution Reserve Accounts ........................................................................... 8

    3.4.    Tenure, Removal, and Replacement of the Unsecured Claimants Trustee........... 8

    3.5.    Acceptance of Appointment by Successor Unsecured Claimants Trustee ........... 9

    3.6.    Role of the Unsecured Claimants Trustee ......................................................... 10

    3.7.    Authority of Unsecured Claimants Trustee ....................................................... 10

    3.8.    Limitation of Unsecured Claimants Trustee's Authority .................................... 13

    3.9.    Setoffs and Recoupment ................................................................................... 13

    3.10.   Books and Records ........................................................................................... 13

    3.11.   Inquiries into Trustee's Authority ...................................................................... 14

    3.12.   Compliance with Laws ..................................................................................... 14

    3.13.   Compensation of the Unsecured Claimants Trustee .......................................... 14

3.14. Reliance by Unsecured Claimants Trustee ........................................................... 15

3.15. Investment and Safekeeping of Unsecured Claimants Trust Assets.................... 15

3.16. Standard of Care; Exculpation ........................................................................... 15

3.17. Insurance and Bonding ...................................................................................... 16

3.18. Oversight Committee........................................................................................16

ARTICLE 4     TAX MATTERS...................................................................................... 16

4.1. Tax Treatment .................................................................................................... 16

4.2. Tax Reporting ..................................................................................................... 16

4.3. Tax Withholdings................................................................................................ 17

4.4. Expedited Determination of Taxes ..................................................................... 17

ARTICLE 5     DISTRIBUTIONS ................................................................................... 17

5.1. Distributions; Priorities; Withholding ................................................................ 17

5.2. Manner and Delivery of Payment or Distribution .............................................. 18

ARTICLE 6     INDEMNIFICATION............................................................................... 18

6.1. Indemnification of Unsecured Claimants Trustee and Oversight
Committee............................................................................................................ 18

ARTICLE 7     NET UNSECURED CLAIMANTS TRUST RECOVERY ......................... 19

7.1. No Effect on Mutuality ....................................................................................... 19

ARTICLE 8     REPORTS TO UNSECURED CLAIMANTS TRUST
BENEFICIARIES ................................................................................. 19

8.1. Reports ................................................................................................................ 19

ARTICLE 9     TERM; TERMINATION OF THE UNSECURED CLAIMANTS
TRUST ................................................................................................. 20

9.1. Term; Termination of the Unsecured Claimants Trust ....................................... 20

9.2. Continuance of Trust for Winding Up ................................................................ 20

ARTICLE 10    AMENDMENT AND WAIVER ............................................................... 21

10.1. Amendment and Waiver ..................................................................................... 21

ARTICLE 11    MISCELLANEOUS PROVISIONS......................................................... 22

11.1. Intention of Parties to Establish the Unsecured Claimants Trust ....................... 22

11.2. Laws as to Construction...................................................................................... 22

11.3. Jurisdiction.......................................................................................................... 22

11.4. Severability ......................................................................................................... 23

A/74572242.10

# TABLE OF CONTENTS
(continued)

Page

11.5. Notices .................................................................................................................. 23

11.6. Fiscal Year .......................................................................................................... 24

11.7. Headings .............................................................................................................. 24

11.8. Counterparts ....................................................................................................... 24

11.9. Confidentiality .................................................................................................... 24

11.10. Entire Agreement .............................................................................................. 25

Schedule A   --   List of Certain Assets to be Transferred to the Unsecured Claimants Trust
Schedule B   --   List of Retained Assets
Schedule C   --   Compensation Terms of Original Trustee

iii

A/74572242.10

# UNSECURED CLAIMANTS TRUST AGREEMENT

This Unsecured Claimants Trust Agreement (the "Unsecured Claimants Trust Agreement"), dated as of August __, 2016, by and among **NEW LOUISIANA HOLDINGS, LLC** and its affiliated entities (collectively, the "Debtors"), and Brian Ryniker, as Trustee (the "Original Trustee" or "Trustee").

## RECITALS:

A.      The Debtors are the debtors in jointly administered Chapter 11 proceedings pending in the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court") under case number 14-50756 (the "Case"). This Trust Agreement is being executed pursuant to the First Amended Joint Plan of Liquidation (including without limitation any supplement to such First Amended Joint Plan of Liquidation and the exhibits and schedules thereto, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "Plan") of the Debtors in such Case in order to establish a Unsecured Claimants Trust (the "Unsecured Claimants Trust") for substantially all of the assets of the Debtors. Capitalized terms used in this Unsecured Claimants Trust Agreement and not otherwise defined herein shall have the meanings given to such terms in the Plan.

B.      The Disclosure Statement was approved by the Bankruptcy Court by order dated July 25, 2016.

C.      On or about August __, 2016, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan.

D.      The Unsecured Claimants Trust is created pursuant to, and to effectuate certain provisions of, the Plan, and pursuant to the Plan, the Unsecured Claimants Trust will hold the Unsecured Claimants Trust Assets (as defined below) (on behalf of those Persons entitled to receive distributions from the Unsecured Claimants Trust (the "Unsecured Claimants Trust Beneficiaries" or "Beneficiaries")) pursuant to the terms of the Plan and this Unsecured Claimants Trust Agreement. The interests of the Beneficiaries in the Unsecured Claimants Trust are sometimes referred to herein as their "Unsecured Claimants Trust Interests".

F.      The Unsecured Claimants Trust is organized for the primary purpose of liquidating and distributing Unsecured Claimants Trust Assets, for the benefit of the Unsecured Claimants Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Unsecured Claimants Trust.

H.      The Unsecured Claimants Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

I.      The Unsecured Claimants Trust is not intended to be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Unsecured Claimants Trustee agree as follows:

## ARTICLE 1
## ESTABLISHMENT OF THE UNSECURED CLAIMANTS TRUST

1.1.    Establishment of Unsecured Claimants Trust and Appointment of Original Trustee.

(a)    Pursuant to the Plan, the Debtors hereby establish a trust that shall be known as the "Unsecured Claimants Trust" on behalf of the Unsecured Claimants Trust Beneficiaries.

(b)    The Original Trustee is hereby appointed as trustee of the Unsecured Claimants Trust effective as of the effective date of the Plan (the "Effective Date") and the Original Trustee agrees to accept and hold the Unsecured Claimants Trust Assets in trust for the Unsecured Claimants Trust Beneficiaries subject to the terms of the Plan, the Confirmation Order and this Unsecured Claimants Trust Agreement.  The Original Trustee shall be deemed appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  The Original Trustee and each successor trustee serving from time to time hereunder (collectively, the "Unsecured Claimants Trustee") shall have all the rights, powers and duties set forth herein.

1.2.    Transfer of Assets and Rights to the Unsecured Claimants Trustee.

(a)    As of the Effective Date, (i) each of the Debtors, as authorized by the Plan, hereby transfer, assign, and deliver to the Unsecured Claimants Trust, without recourse, all of their respective rights, title, and interests in and to all of the assets that were to be conveyed to the Unsecured Claimants Trust pursuant to Section 6.03 of the Plan, free and clear of any and all Liens, Claims, encumbrances or interests of any kind in such property of any other Person (including all Liens, Claims, encumbrances or interests of the Debtors' creditors that were eliminated under the Plan) including without limitation, all of the assets listed on Schedule A hereto (collectively with all assets hereafter acquired or received by the Unsecured Claimants Trust from the Debtors or by way of dividend, interest, distribution, collection, enforcement or otherwise, the "Unsecured Claimants Trust Assets"), which shall vest in the Unsecured Claimants Trustee, in trust, and, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Unsecured Claimants Trust Beneficiaries; provided, however, that the Retained Assets (as defined in Section 1.3 hereof) listed on Schedule B hereto shall not, as of the Effective Date, be transferred, assigned, or delivered to the Unsecured Claimants Trust.  As used in this Unsecured Claimants Trust Agreement, "Person" means any individual, corporation, trust, partnership, limited liability company, association, government organization, or other entity.

(b)    Subject to continuing obligations in respect of Administrative Claims, Priority Tax Claims, U.S. Trustee Fees, Non-Tax Priority Claims, Secured Tax Claims, Miscellaneous Secured Claims and General Unsecured Claims, the transfer to the Unsecured Claimants Trust of the Unsecured Claimants Trust Assets shall be for the sole benefit of the Unsecured Claimants Trust Beneficiaries in full satisfaction of their Claims against the Debtors,

pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and the Confirmation Order, such transfer shall be free and clear of any and all liens, claims and encumbrances and interests (legal beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code section 1141(c).

(c)     On or as promptly as practicable after the Effective Date, the Debtors shall (i) deliver or cause to be delivered to the Unsecured Claimants Trustee (or to the Custodian, as determined by the Unsecured Claimants Trustee) any and all documents in connection with the Unsecured Claimants Trust Assets (including those maintained in electronic format and original documents) whether held by the Debtors, their respective employees, agents, advisors, attorneys, accountants, or any other professionals and (ii) provide reasonable access to such employees of the Debtors, or their agents, advisors, attorneys, accountants or any other professionals hired by the Debtors with knowledge of matters relevant to the Unsecured Claimants Trust Assets subject to the terms and conditions of the Services Agreement between Health Care Navigator LLC and the Trustee dated as of September ___, 2016 (the "Services Agreement"). Upon the reasonable request of the Unsecured Claimants Trustee, to the extent permitted by law, the Debtors shall provide the Unsecured Claimants Trustee with information and documents relating to any Unsecured Claimants Trust Assets within the possession or control of the Debtors or any of their respective employees, agents, advisors, attorneys, accountants or any other professionals.

(d)     At any time and from time to time on and after the Effective Date, the Debtors agree (i) at the reasonable request of the Unsecured Claimants Trustee to execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed); (ii) to take, or cause to be taken, all such further actions as the Unsecured Claimants Trustee may reasonably request in order to evidence or effectuate the transfer of the Unsecured Claimants Trust Assets and the Privileges to the Unsecured Claimants Trustee and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan; and (iii) to cooperate with the Unsecured Claimants Trustee in the liquidation of the Unsecured Claimants Trust Assets.

1.3.    Retained Assets

Notwithstanding anything herein to the contrary, as necessary and in the best interest of the Unsecured Claimants Trust Beneficiaries, the Unsecured Claimants Trustee may cause the Debtors not to transfer certain Assets to the Unsecured Claimants Trust (the "Retained Assets"). Any proceeds arising from the liquidation of any Retained Assets shall be promptly turned over to the Unsecured Claimants Trust.

1.4.    Title to Unsecured Claimants Trust Assets.

The transfer of the Unsecured Claimants Trust Assets to the Unsecured Claimants Trustee shall be made for the ratable benefit of the Unsecured Claimants Trust Beneficiaries to the extent such Unsecured Claimants Trust Beneficiaries are entitled to Distributions from the Unsecured Claimants Trust and in the order of priorities under the Plan. In this regard, the Unsecured Claimants Trust Assets will be treated as transferred, for tax purposes, in the manner set forth pursuant to Section 4.1 below. Upon the transfer of the Unsecured Claimants Trust

Assets, the Unsecured Claimants Trustee shall succeed to all of each of the Debtors' right, title and interest in and to the Unsecured Claimants Trust Assets and the Debtors will have no further interest in or with respect to the Unsecured Claimants Trust Assets or the Unsecured Claimants Trust.

      1.5.    <u>Nature and Purpose of the Unsecured Claimants Trust</u>.

      (a)    <u>Purpose</u>. The Unsecured Claimants Trust is organized and established as a trust pursuant to which the Unsecured Claimants Trustee, subject to the terms and conditions contained herein and in the Plan, is to (i) hold the Unsecured Claimants Trust Assets and dispose of the same in accordance with this Unsecured Claimants Trust Agreement and the Plan in accordance with Treasury Regulation Section 301.7701-4(d); and (ii) oversee and direct the expeditious but orderly liquidation of the Unsecured Claimants Trust Assets. Accordingly, the primary purpose of the Unsecured Claimants Trust is to liquidate the Unsecured Claimants Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Unsecured Claimants Trust Assets, and consistent with, the liquidating purpose of the Unsecured Claimants Trust.

      (b)    <u>Actions of the Unsecured Claimants Trustee</u>. The Unsecured Claimants Trustee, in the exercise of the Unsecured Claimants Trustee's reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to cash the Unsecured Claimants Trust Assets, make timely distributions as provided for in this Unsecured Claimants Trust Agreement, subject to the terms and conditions of the Plan, and not unduly prolong the duration of the Unsecured Claimants Trust. The liquidation of the Unsecured Claimants Trust Assets may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, the sale or other disposition of Unsecured Claimants Trust Assets, or otherwise. The Unsecured Claimants Trustee, except as set forth in Section 3.8 hereof and the Plan, shall have the absolute right to pursue, sell, settle and compromise or not pursue any and all Unsecured Claimants Trust Assets as it determines is in the best interests of the Unsecured Claimants Trust Beneficiaries, and consistent with the purposes of the Unsecured Claimants Trust, and the Unsecured Claimants Trustee shall have no liability for the outcome of any such decision except for any damages that are finally judicially determined to have resulted substantially from the gross negligence or willful misconduct of the Unsecured Claimants Trustee.

      (c)    <u>Relationship</u>. This Unsecured Claimants Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Unsecured Claimants Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Unsecured Claimants Trustee or the Unsecured Claimants Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Unsecured Claimants Trust Beneficiaries to the Unsecured Claimants Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Unsecured Claimants Trust Agreement, the Plan and applicable law.

- 4 -

1.6.  <u>Incorporation of Plan.</u>

The Plan and the Confirmation Order are each hereby incorporated into this Unsecured Claimants Trust Agreement and made a part hereof by this reference; <u>provided, however,</u> to the extent that there is conflict between the provisions of this Unsecured Claimants Trust Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Unsecured Claimants Trust Agreement.

1.7.  <u>Appointment as Representative.</u>

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Plan appointed the Unsecured Claimants Trustee as the duly appointed representative of each of the Estates, and, as such, the Unsecured Claimants Trustee succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution of the Unsecured Claimants Trust Assets for the benefit of the Unsecured Claimants Trust Beneficiaries (in the order and priority provided for herein). To the extent that any Unsecured Claimants Trust Assets cannot be transferred to the Unsecured Claimants Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Unsecured Claimants Trust Assets shall be treated as Retained Assets, and the Unsecured Claimants Trustee shall be deemed to have been designated as a representative of the applicable Debtor to enforce and pursue any Retained Assets on behalf of the Unsecured Claimants Trust. Notwithstanding the foregoing, all net proceeds of the Retained Assets shall be transferred to the Unsecured Claimants Trust consistent with the provisions of the Plan and this Unsecured Claimants Trust Agreement. The Unsecured Claimants Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Retained Assets.

## ARTICLE 2
## UNSECURED CLAIMANTS TRUST INTERESTS

2.1.  <u>Allocation of Unsecured Claimants Trust Interests.</u>

Allocation and distribution of the interests of the Beneficiaries in the Unsecured Claimants Trust ("<u>Unsecured Claimants Trust Interests</u>") shall be accomplished as set forth in the Plan and Article 5 hereof.

2.2.  <u>Interests Beneficial Only.</u>

The ownership of a Unsecured Claimants Trust Interest shall not entitle any Unsecured Claimants Trust Beneficiary to any title in or to the Unsecured Claimants Trust Assets as such (which title shall be vested in the Unsecured Claimants Trustee) or to any right to call for a partition or division of the Unsecured Claimants Trust Assets or to require an accounting, and shall entitle holders of Unsecured Claimants Trust Interests to receive distributions from the Unsecured Claimants Trust only at the times, if any, and from the sources, set forth in Article 5 hereof. No Unsecured Claimants Trust Beneficiary shall be considered a creditor of the Unsecured Claimants Trust as the result of its Beneficial Interests.

2.3. <u>Conflicting Claims</u>.

If any conflicting claims or demands are made or asserted with respect to a Beneficial Interest, the Unsecured Claimants Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Unsecured Claimants Trustee may elect to make no payment or distribution with respect to the Beneficial Interest subject to the claims or demands involved, or any part thereof, and the Unsecured Claimants Trustee shall refer such conflicting claims or demands to the Bankruptcy Court and, if the Bankruptcy Court refuses to hear such matters, to the United States District Court for the Western District of Louisiana, Lafayette Division. In so doing, the Unsecured Claimants Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands. The Unsecured Claimants Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (ii) all differences have been resolved by a written agreement among all of such parties and the Unsecured Claimants Trustee, which agreement shall include a complete release of the Unsecured Claimants Trust and the Unsecured Claimants Trustee (the occurrence of either (i) or (ii) being referred to as a "Dispute Resolution" in this Section 2.3). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Unsecured Claimants Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Unsecured Claimants Trust to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Unsecured Claimants Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

2.4. <u>Evidence of Beneficial Interests</u>.

The Unsecured Claimants Trust Interests shall be represented by book entries on the books and records of the Unsecured Claimants Trust. The Unsecured Claimants Trustee shall cause to be kept a registry of such Unsecured Claimants Trust Interests and the Unsecured Claimants Trust Beneficiaries of the Unsecured Claimants Trust (the "<u>Trust Register</u>") which shall be maintained pursuant to such reasonable regulations as the Unsecured Claimants Trustee may prescribe.

2.5. <u>Securities Law Registration</u>.

To the extent the Unsecured Claimants Trust Interests are deemed to be "securities", the issuance of Unsecured Claimants Trust Interests to Unsecured Claimants Trust Beneficiaries on or about the Effective Date under the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities. If the Unsecured Claimants Trustee determines, with the advice of counsel, that the Unsecured Claimants Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Unsecured Claimants Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "<u>SEC</u>"). Notwithstanding

the foregoing procedure, nothing herein shall be deemed to preclude the Unsecured Claimants Trustee from amending this Unsecured Claimants Trust Agreement to make such changes as are deemed necessary or appropriate by the Unsecured Claimants Trustee to ensure that the Unsecured Claimants Trust is not subject to registration or reporting requirements of the Exchange Act or the Investment Company Act.

2.6.    Absolute Owners.

The Unsecured Claimants Trustee may deem and treat the Unsecured Claimants Trust Beneficiary of record in the Trust Register as the absolute owner of any such Unsecured Claimants Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and the Unsecured Claimants Trustee shall not be charged with having received notice of any claim or demand to such Unsecured Claimants Trust Interests or the interest therein of any other Person.

2.7.    Limited Liability.

No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Unsecured Claimants Trust Beneficiary, shall give rise to any liability of such Unsecured Claimants Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, by creditors or employees of any Debtor, or by any other Person. Unsecured Claimants Trust Beneficiaries are deemed to receive Distributions from the Unsecured Claimants Trust Assets in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims, as applicable, without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

### ARTICLE 3
### THE UNSECURED CLAIMANTS TRUSTEE

3.1.    Unsecured Claimants Trust Proceeds.

The Unsecured Claimants Trustee shall collect all income earned with respect to the Unsecured Claimants Trust Assets. All income and other assets hereafter received or acquired by the Unsecured Claimants Trust, by way of dividend, interest, distribution, collection, sale or other disposition of assets, enforcement or otherwise (collectively, the "Unsecured Claimants Trust Proceeds"), shall be added to the Unsecured Claimants Trust Assets and held as a part thereof by the Unsecured Claimants Trustee.

3.2.    Payment of Unsecured Claimants Trust Expenses.

(a)    The Unsecured Claimants Trustee shall expend the Unsecured Claimants Trust Assets (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the Unsecured Claimants Trust Assets during liquidation; (ii) to pay reasonable administrative costs (including, but not limited to, attorneys' fees and expenses and the fees and expenses of any other professionals retained by the Unsecured Claimants Trustee, and the other costs and expenses of the Unsecured Claimants Trustee), any taxes imposed on the Unsecured Claimants Trust or fees and expenses in connection with, arising out of or related to the Unsecured Claimants Trust

Assets; and (iii) to satisfy other liabilities incurred or assumed by the Unsecured Claimants Trust (or to which the Unsecured Claimants Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order or this Unsecured Claimants Trust Agreement.

(b)     Notwithstanding any other provision of this Unsecured Claimants Trust Agreement to the contrary, the Unsecured Claimants Trust shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Unsecured Claimants Trust unless it shall have sufficient funds in the Unsecured Claimants Trust for that purpose, and the Unsecured Claimants Trustee will not be subject to any liability of any kind due to the Unsecured Claimants Trustee's inability to carry out the Unsecured Claimants Trustee's duties hereunder as a result of not having access to sufficient funds in its reasonable business judgment to carry out the Unsecured Claimants Trustee's duties hereunder.

3.3.    <u>Distribution Reserve Accounts</u>.

The Trustee is authorized to establish such Distribution Reserve Accounts as are necessary and in accordance with Section 10.06 of the Plan in order to hold Assets for distribution to Claims that become Allowed after the Effective Date.

3.4.    <u>Tenure, Removal, and Replacement of the Unsecured Claimants Trustee</u>.

(a)     Each Unsecured Claimants Trustee will serve until its resignation and the appointment of a successor pursuant to subsection (b) below or its removal pursuant to subsection (c) below.

(b)     The Unsecured Claimants Trustee may resign by giving not less than ninety (90) days' prior written notice to the Bankruptcy Court, unless there is not sufficient funds for the Unsecured Claimants Trustee in its reasonable business judgment to carry out the Unsecured Claimants Trustee's duties hereunder in which case the Unsecured Claimants Trustee may resign immediately upon written notice to the Bankruptcy Court. Such resignation will become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment. If a successor trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Unsecured Claimants Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

(c)     The Unsecured Claimants Trustee may be removed by the Bankruptcy Court upon the finding by the Bankruptcy Court of Cause. As used herein, "Cause" means (a) commission of any act of fraud or dishonesty in connection with the providing of services as Unsecured Claimants Trustee hereunder; (b) commission of willful misconduct that is materially injurious to the Unsecured Claimants Trust; (c) criminal felony indictment of the Unsecured Claimants Trustee relating to the providing of services hereunder; (d) death or incapacity of the Original Trustee; or (e) continued willful failure to materially perform the duties of the Unsecured Claimants Trustee as set forth herein which failure is not cured within thirty (30) days of notice.

- 8 -

(d)     In the event of a vacancy in the position of the Unsecured Claimants Trustee (whether by removal or resignation), the vacancy will be filled by the appointment of a successor trustee by the Oversight Committee.  If a successor trustee is appointed, and such appointment is accepted by the successor trustee, the successor trustee shall file notice of such appointment and acceptance with the Bankruptcy Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor Unsecured Claimants Trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.  If no successor trustee is timely appointed by the Oversight Committee, a successor representative may be appointed by order of the Bankruptcy Court after an opportunity for a hearing.  Immediately upon the appointment of any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Unsecured Claimants Trustee hereunder will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Unsecured Claimants Trustee.

(e)     Upon the appointment of a successor trustee, the predecessor Unsecured Claimants Trustee shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Unsecured Claimants Trustee, all the estates, properties, rights, powers and trusts of such predecessor Unsecured Claimants Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Unsecured Claimants Trust, the Unsecured Claimants Trust Assets, or the Unsecured Claimants Trust Interests then in its possession and held hereunder.

3.5.     Acceptance of Appointment by Successor Unsecured Claimants Trustee.

Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Unsecured Claimants Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Unsecured Claimants Trust hereunder with like effect as if originally named herein.

3.6.     Role of the Unsecured Claimants Trustee.

In furtherance of and consistent with the purpose of the Unsecured Claimants Trust and the Plan, the Unsecured Claimants Trustee shall, among other things, have the following rights, powers and duties (a) to hold, manage, convert to Cash, and distribute the Unsecured Claimants Trust Assets, including prosecuting and resolving the Claims belonging to the Unsecured Claimants Trust, (b) hold the Unsecured Claimants Trust Assets for the benefit of the Unsecured Claimants Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date, (c) in the Unsecured Claimants Trustee's reasonable business judgment, investigate, prosecute, settle and/or abandon rights, Causes of Action or litigation of the Unsecured Claimants Trust, (d) monitor and enforce the implementation of the Plan, (e) file all tax and regulatory forms, returns, reports and other documents required with respect to the Unsecured Claimants Trust, (f) in the Unsecured Claimants Trustee's reasonable business judgment object to Claims, and manage, control,

prosecute and/or settle on behalf of the Unsecured Claimants Trust, objections to Claims on account of which the Unsecured Claimants Trustee will be responsible (if Allowed) for making distributions under the Plan, (g) to hold, manage, and distribute Cash or non-Cash Unsecured Claimants Trust Assets obtained through the exercise of its power and authority, and (h) take all necessary action and file all appropriate motions to obtain an order closing the Chapter 11 Cases.

Subject to Section 3.8 below, the Unsecured Claimants Trustee shall be responsible for all decisions and duties with respect to the Unsecured Claimants Trust, the Unsecured Claimants Trust Assets and the Retained Assets. The Unsecured Claimants Trustee shall not be required to take any action that, in the judgment of the Unsecured Claimants Trustee, is not permitted by, or is in conflict with, the terms of the Plan or this Unsecured Claimants Trust Agreement or that may subject Unsecured Claimants Trustee to liability or expense. In all circumstances, the Unsecured Claimants Trustee shall have the authority to act in its sole discretion based upon its reasonable business judgment.

3.7.  Authority of Unsecured Claimants Trustee.

Subject to any limitations contained herein or in the Plan and the Confirmation Order, the Unsecured Claimants Trustee shall have the following powers and authorities:

(a)  hold legal title to any and all rights of the holders of the Unsecured Claimants Trust Interests in or arising from the Unsecured Claimants Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Unsecured Claimants Trust and the right to vote any claim or interest relating to a Unsecured Claimants Trust Asset in any receivership or insolvency proceeding, including a case under the Bankruptcy Code and receive any distribution therein;

(b)  perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

(c)  protect and enforce the rights to the Unsecured Claimants Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)  liquidate the Unsecured Claimants Trust Assets and the Retained Assets;

(e)  retain and approve compensation arrangements of such counsel and other professionals, including, without limitation, any professionals previously retained by the Debtors or the Committee, as the Unsecured Claimants Trustee shall select to assist the Unsecured Claimants Trustee in its duties, on such terms as the Unsecured Claimants Trustee deems reasonable and appropriate, without Bankruptcy Court approval; subject to the foregoing, the Unsecured Claimants Trustee may commit the Unsecured Claimants Trust to and shall pay such counsel and other professionals reasonable compensation for services rendered and reasonable and documented out-of pocket expenses incurred;

- 10 -

(f)     retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Unsecured Claimants Trust as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Unsecured Claimants Trustee's discretion and to prepare and file any tax returns, informational returns, or periodic or current reports as required by applicable securities laws, for the Unsecured Claimants Trust as may be required; subject to the foregoing, the Unsecured Claimants Trustee may commit the Unsecured Claimants Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(g)     retain and approve compensation arrangements of such other third parties as the Unsecured Claimants Trustee may deem to be necessary or advisable to assist the Unsecured Claimants Trustee in carrying out its powers and duties under this Unsecured Claimants Trust Agreement; subject to the foregoing, the Unsecured Claimants Trustee may commit the Unsecured Claimants Trust to and shall pay all such persons or entities reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, as well as commit the Unsecured Claimants Trust to indemnify any such parties in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the gross negligence, willful misconduct, or knowing violation of law by such party).

(h)     compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all causes of action in favor of or against the Unsecured Claimants Trust;

(i)     avoid and recover transfers of any or all of the Debtor's property as provided for in the Plan, as may be permitted by the Bankruptcy Code or applicable state law;

(j)     coordinate with the Debtors, until the dissolution thereof, to execute offsets, assert counterclaims against holders of claims, establish reserves for disputed claims, and make determinations as to pro rata calculations, as provided for in the Plan;

(k)     invest any moneys held as part of the Unsecured Claimants Trust in accordance with the terms of Section 3.17 hereof, limited, however, to such investments that are consistent with the Unsecured Claimants Trust's status as a Unsecured Claimants Trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc 94-45, 1994-2 C.B. 684;

(l)     request any appropriate tax determination with respect to the Unsecured Claimants Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(m)     subject to applicable securities laws, if any, establish and maintain a website for the purpose of providing notice of Unsecured Claimants Trust activities in lieu of sending written notice to holders of Unsecured Claimants Trust Interests, subject to providing notice of such website to such holders;

- 11 -

(n)     seek the examination of any entity, subject to the provisions of Bankruptcy Rule 2004 or any other applicable law or rule or the terms and conditions of other agreements entered into prior to the Effective Date;

(o)     seek approval, as and when determined by the Unsecured Claimants Trustee to be necessary, appropriate, or required, of the Bankruptcy Court for any decision of, or action(s) taken or to be taken by, the Unsecured Claimants Trustee pursuant to the terms of this Unsecured Claimants Trust Agreement or the Plan subject to a "best interest of the Unsecured Claimants Trust Beneficiaries" standard, as guided by the terms and purpose of the Unsecured Claimants Trust and in accordance with the terms of the Plan;

(p)     comply with any duly issued and served subpoena upon the Unsecured Claimants Trust or the Unsecured Claimants Trustee;

(q)     take or refrain from taking any and all other actions that the Unsecured Claimants Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Unsecured Claimants Trust Assets or to carry out the purposes hereof; and

(r)     enter into all documents and agreements deemed by the Unsecured Claimants Trustee to be necessary or appropriate, and take all action deemed by the Unsecured Claimants Trustee to be necessary or appropriate, in order to carry out the terms and purposes of this Unsecured Claimants Trust Agreement.

Notwithstanding any provision to the contrary, in all circumstances, the Unsecured Claimants Trustee shall act in furtherance of the purpose of the Unsecured Claimants Trust. The Unsecured Claimants Trustee shall not take any action inconsistent with the purpose of the Unsecured Claimants Trust, or take any action that would cause the Unsecured Claimants Trust to fail to qualify as a "Unsecured Claimants Trust" for tax purposes.

3.8.    Limitation of Unsecured Claimants Trustee's Authority.

(a)     Notwithstanding anything herein to the contrary, the Unsecured Claimants Trustee shall not (i) be authorized to engage in any trade or business; (ii) take such actions inconsistent with the orderly liquidation of the Unsecured Claimants Trust Assets as are required or contemplated by applicable law, the Plan, the Confirmation Order and this Unsecured Claimants Trust Agreement; (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Unsecured Claimants Trust as a Unsecured Claimants Trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684; or (iv) be authorized to compromise any claim or cause of action, or dispose of any asset of the Unsecured Claimants Trust, if the original face amount or value of which was in excess of $100,000, without approval of the Oversight Committee.

(b)     The Unsecured Claimants Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest was (i) included in the Unsecured Claimants Trust Assets transferred to the Unsecured Claimants Trustee by one of the Debtors (or was obtained by the Unsecured Claimants

Trustee as a dividend or other distribution in respect of such Unsecured Claimants Trust Assets), or (ii) obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Unsecured Claimants Trust Assets.

3.9.   Setoffs and Recoupment.

The Unsecured Claimants Trustee may, but shall not be required to, setoff against or recoup from any Claim and from any payments to be made pursuant to the Plan in respect of such Claim or any distributions from the Unsecured Claimants Trust any claims of any nature whatsoever that the Unsecured Claimants Trustee may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Unsecured Claimants Trustee of any such claim they may have against such claimant.

3.10.   Books and Records.

(a)   Pursuant to the Plan, upon the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall transfer and assign to the Unsecured Claimants Trust full title to, and the Unsecured Claimants Trust shall be authorized to take possession of, all of the books and records of the Debtors.   The Unsecured Claimants Trustee shall have the responsibility of storing and maintaining books and records transferred thereby until one year after the date that each of the Unsecured Claimants Trust Assets are liquidated or, if applicable, abandoned (or as otherwise ordered by the Bankruptcy Court), after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Unsecured Claimants Trustee to facilitate the delivery and storage of their books and records in accordance herewith.   The Debtors shall be entitled to reasonable access to any books and records transferred to the Unsecured Claimants Trust for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters.   For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

(b)   The Unsecured Claimants Trustee shall maintain books and records relating to the Unsecured Claimants Trust Assets and income of the Unsecured Claimants Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Unsecured Claimants Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Any ledger setting forth the Unsecured Claimants Trust Assets shall measure value for purposes of distribution and compensation hereunder as of the date such assets are converted into cash. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Unsecured Claimants Trust. Nothing in this Unsecured Claimants Trust Agreement requires the Unsecured Claimants Trustee to file any accounting or seek approval of any court with respect to the

administration of the Unsecured Claimants Trust, or as a condition for managing any payment or distribution out of the Unsecured Claimants Trust Assets.

(c)     The Unsecured Claimants Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Unsecured Claimants Trustee, to inspect and, at the sole expense of such Unsecured Claimants Trust Beneficiary seeking the same, make copies of the books and records relating to the Unsecured Claimants Trust on any business day and as often as may be reasonably be desired, in each case for a purpose reasonably related to such Unsecured Claimants Trust Beneficiary's interest in the Unsecured Claimants Trust.

3.11.   Inquiries into Trustee's Authority.

Except as otherwise set forth in the Unsecured Claimants Trust or in the Plan, no Person dealing with the Unsecured Claimants Trust shall be obligated to inquire into the authority of the Unsecured Claimants Trustee in connection with the protection, conservation or disposition of the Unsecured Claimants Trust Assets.

3.12.   Compliance with Laws.

Any and all distributions of the Unsecured Claimants Trust Assets shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

3.13.   Compensation of the Unsecured Claimants Trustee.

(a)     The Original Trustee shall be compensated for its services, and reimbursed for its expenses, in accordance with Schedule C attached hereto, as a cost of administering the Unsecured Claimants Trust. In the event a successor trustee is appointed, such successor shall be compensated for its services, and reimbursed for its expenses, as a cost of administering the Unsecured Claimants Trust, in accordance with and pursuant to the terms of, a separate agreement on the same or substantially similar terms as those set forth on Schedule C attached hereto.

(b)     In the event that the Unsecured Claimants Trustee's appointment terminates at any time for any reason, the Unsecured Claimants Trustee shall be entitled to payment of any earned but unpaid portion of compensation and any unreimbursed business expenses incurred prior to such termination.

3.14.   Reliance by Unsecured Claimants Trustee.

Except as otherwise provided herein:

(a)     the Unsecured Claimants Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Unsecured Claimants Trustee to be genuine and to have been signed or presented by the proper party or parties; and

- 14 -

(b) Persons dealing with the Unsecured Claimants Trustee shall look only to the Unsecured Claimants Trust Assets to satisfy any liability incurred by the Unsecured Claimants Trustee to such Person in carrying out the terms of this Unsecured Claimants Trust Agreement, and the Unsecured Claimants Trustee shall not have any personal obligation to satisfy any such liability.

3.15. Investment and Safekeeping of Unsecured Claimants Trust Assets.

The Unsecured Claimants Trustee shall invest all assets transferred to the Unsecured Claimants Trustee and all Unsecured Claimants Trust Proceeds, including all income earned by the Unsecured Claimants Trust (pending distributions in accordance with the provisions of the Plan) only in cash, cash equivalents, U.S. Treasury securities, money market investments, and similar investments; provided, however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a Unsecured Claimants Trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the United States Internal Revenue Service (the "IRS") , whether set forth in IRS rulings, other IRS pronouncements or otherwise; and (b) the Unsecured Claimants Trustee may retain any Unsecured Claimants Trust Assets, including any Unsecured Claimants Trust Proceeds, received by the Unsecured Claimants Trust that are not cash only for so long as may be required for the prompt and orderly liquidation of such assets in cash or as otherwise required to further the purpose of the Unsecured Claimants Trust.

3.16. Standard of Care; Exculpation.

Neither the Unsecured Claimants Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Unsecured Claimants Trustee in good faith, other than acts or omissions which are finally judicially determined to have resulted substantially from the Unsecured Claimants Trustee's own gross negligence or willful misconduct. The Unsecured Claimants Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, agents and Oversight Committee, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Unsecured Claimants Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Unsecured Claimants Trustee, unless such determination is finally judicially determined to have been based substantially on gross negligence or willful misconduct.

3.17. Insurance and Bonding.

The Unsecured Claimants Trustee shall obtain a fiduciary bond and insurance coverage (in the form of an errors and omissions policy, directors and officers policy, comprehensive general liability policy, or otherwise) with respect to the liabilities and obligations of the Unsecured Claimants Trustee under this Unsecured Claimants Trust

- 15 -

Agreement, it being understood that such coverage shall constitute an expense of administration of the highest and first priority.

### 3.18. Oversight Committee

Following the Effective Date, representatives of Medline Industries, Inc., Healthcare Services Group, Inc., and Respiratory Health Services, LLC (the "Oversight Committee") shall serve as an Oversight Committee to advise the Trustee and make certain determinations regarding the liquidation of the property of the Unsecured Claimants Trust (provided that such determinations otherwise could have been made by the Trustee in accordance with the provisions of this Unsecured Claimants Trust and the Plan). Approval of a majority of the members of such Oversight Committee shall be required for the Oversight Committee to act, provided that the Oversight Committee may delegate responsibility for discrete issues or decisions to one or more of its members. In the event that a member of the Oversight Committee resigns, the remaining members of the Oversight Committee shall file a motion with the Bankruptcy Court seeking the appointment of a substitute member. If no such substitute is appointed, then the Oversight Committee may continue to operate and to the extent there is any deadlock between them, they shall apply to the Bankruptcy Court for resolution. The Oversight Committee shall have the rights and powers set forth herein. In the event that a Oversight Committee shall not be formed or otherwise continue to exist under this Agreement, all references herein to required approval or other action of such Oversight Committee shall be of no force or effect. Members of the Oversight Committee shall be reimbursed from the Unsecured Claimants Trust for reasonable out of pocket expenses incurred in connection with work performed on the Oversight Committee. Members of the Oversight Committee shall have no liability for any actions taken in satisfaction of their duty as a member of the Oversight Committee, except for intentional and/or reckless misconduct.

## ARTICLE 4
## TAX MATTERS

### 4.1. Tax Treatment.

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Unsecured Claimants Trustee and the Unsecured Claimants Trust Beneficiaries) will treat the Unsecured Claimants Trust as a "Unsecured Claimants Trust" within the meaning of Treasury Regulations Section 301.7701-4(d). Consistent with this treatment, for all U.S. federal income tax purposes, the transfer of the Unsecured Claimants Trust Assets to the Unsecured Claimants Trust shall be treated as:

(a) a transfer of the Unsecured Claimants Trust Assets (subject to any obligations relating to those assets) directly to those Persons receiving Beneficial Interests and, to the extent Unsecured Claimants Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Accounts, followed by

(b) the transfer by such beneficiaries to the Unsecured Claimants Trust of the Unsecured Claimants Trust Assets (other than the Unsecured Claimants Trust Assets allocable to the Distribution Reserve Accounts) in exchange for Beneficial Interests.

Accordingly, the Unsecured Claimants Trust shall be treated for U.S. federal income tax purposes as a grantor trust and those Persons receiving Beneficial Interests shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Unsecured Claimants Trust Assets (other than such Unsecured Claimants Trust Assets as are allocable to the Distribution Reserve Accounts). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

4.2.    Tax Reporting.

(a)    The Unsecured Claimants Trustee shall file (or cause to be filed) all returns for the Unsecured Claimants Trust treating the Unsecured Claimants Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with this Section 4.5. The Unsecured Claimants Trustee shall also send (or cause to be sent) annually to each Holder of a Beneficial Interest a separate information statement setting forth such Holder's share of items of income, gain, loss, deduction or credit which shall be determined by the Unsecured Claimants Trustee in accordance with the allocation provisions set forth in Section 4.3 hereof. The Unsecured Claimants Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Unsecured Claimants Trust that are required by any governmental unit.

(b)    Each party (including the Unsecured Claimants Trustee, the Debtors and the Unsecured Claimants Trust Beneficiaries) shall report, for U.S. federal, state and local income tax purposes, its share of the Unsecured Claimants Trust's taxable income or loss consistently with Section 4.3 hereof and the information provided to it pursuant to Section 4.5(a) above.

4.3.    Tax Withholdings.

The Unsecured Claimants Trustee shall withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment, distribution or allocation of income or gain to the holders of Allowed Claims or Beneficial Interests. All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to such holders of Allowed Claims or Beneficial Interests for all purposes of this Trust Agreement. The Unsecured Claimants Trustee shall be authorized to collect such tax information from the holders of Allowed Claims or Beneficial Interests (including, without limitation, social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan, the Confirmation Order and this Unsecured Claimants Trust Agreement. The Unsecured Claimants Trustee may refuse to make a distribution to any holders of Allowed Claims or Beneficial Interests that fail to furnish such information in a timely fashion, until such information is delivered; provided, however, that upon the holder of an Allowed Claim or Beneficial Interest's delivery of such information, the Unsecured Claimants Trustee shall make such distribution to which the holder of an Allowed Claim or Beneficial Interest is entitled, without interest.

4.4.    Expedited Determination of Taxes.

The Unsecured Claimants Trustee may request an expedited determination of taxes of the Unsecured Claimants Trust, including the Distribution Reserve Accounts, or the

- 17 -

Debtors under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Unsecured Claimants Trust or the Debtors for any or all taxable periods (or part thereof) through the dissolution of the Unsecured Claimants Trust.

## ARTICLE 5
## DISTRIBUTIONS

5.1.    Distributions; Priorities; Withholding.

(a)    Subject to the terms and conditions of the Plan, the Unsecured Claimants Trustee shall make all distributions to the Unsecured Claimants Trust Beneficiaries, for or on account of all Allowed Administrative Claims, Allowed Priority Tax Claims, U.S. Trustee Fees, and all Allowed Claims in Classes 1, 2, 3 and 4 of the Plan, after reserving for all costs, expenses, and fees approved or projected by the Unsecured Claimants Trustee for the operation, maintenance, preservation, and liquidation of all Assets (including the prosecution or settlement of all Causes of Action and objections to Claims) under its direction or control, and the anticipated future capital needs of the Unsecured Claimants Trust and any other liabilities, costs and expenses incident to the operation of the Unsecured Claimants Trust that are anticipated to be incurred and/or to become due and payable at any time after the Effective Date, as determined by the Unsecured Claimants Trustee.

5.2.    Manner and Delivery of Payment or Distribution.

All distributions authorized under Section 5.1 hereof and made by the Unsecured Claimants Trustee to holders of Unsecured Claimants Trust Interests shall be made and delivered according to the provisions of Section 10.07 of the Plan.

## ARTICLE 6
## INDEMNIFICATION

6.1.    Indemnification of Unsecured Claimants Trustee and Oversight Committee.

(a)    To the fullest extent permitted by law, the Unsecured Claimants Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Unsecured Claimants Trustee and the members of the Oversight Committee and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "Unsecured Claimants Trustee Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Unsecured Claimants Trustee Indemnified Person) or other liability (collectively, "Losses") based upon, related to, arising out of or in connection with actions taken or omitted in connection with the operation of the Unsecured Claimants Trust; provided, however, that in no event shall the Unsecured Claimants Trust be responsible for any Losses of an Unsecured Claimants Trustee Indemnified Person that arise out of those acts or omissions which are finally judicially determined to have resulted substantially from such Unsecured Claimants Trustee Indemnified Person's gross negligence or willful misconduct. To the extent reasonable, the Unsecured Claimants Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred

- 18 -

by the Unsecured Claimants Trustee Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Unsecured Claimants Trust.

(b)     Any Indemnified Person may waive the benefits of indemnification under this Section 6.1, but only by an instrument in writing executed by such Indemnified Person.

(c)     The rights to indemnification under this Section 6.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation, common law rights to indemnification or contribution. Nothing in this Section 6.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Unsecured Claimants Trust Agreement, or any other agreement or instrument to which that Person is a party.

### ARTICLE 7
### NET UNSECURED CLAIMANTS TRUST RECOVERY

7.1.    <u>No Effect on Mutuality</u>.

Notwithstanding anything contained in this Unsecured Claimants Trust Agreement to the contrary, nothing herein shall affect the mutuality of obligations, if any, of any holder of any Claim under section 553 of the Bankruptcy Code.

### ARTICLE 8
### REPORTS TO UNSECURED CLAIMANTS TRUST BENEFICIARIES

8.1.    <u>Reports</u>.

(a)     The Unsecured Claimants Trustee shall cause to be prepared, as applicable, either: (i) at such times as may be required by the Exchange Act, if applicable, or (ii) at such times as reasonably requested by an Unsecured Claimants Trust Beneficiary, financial reports of the Unsecured Claimants Trust, to be delivered to the Unsecured Claimants Trust Beneficiaries together with any annual income tax reporting of the Unsecured Claimants Trust. To the extent required by law, the financial statements prepared as of the end of the fiscal year shall be audited by nationally recognized independent accountants in accordance with U.S. generally accepted accounting principles. The materiality and scope of audit determinations shall be established between the Unsecured Claimants Trustee and the appointed auditors with a view toward safeguarding the value of the Unsecured Claimants Trust Assets, but nothing relating to the mutually agreed scope of work shall result in any limitation of audit scope that would cause the auditors to qualify their opinion as to scope of work with respect to such financial statements.

(b)     The Unsecured Claimants Trustee may post any report required to be provided under this Section 8.1 on a web site maintained by the Unsecured Claimants Trustee or file such report with the Bankruptcy Court in lieu of actual notice to the Unsecured Claimants Trust Beneficiaries (unless otherwise required by law). The Unsecured Claimants Trustee shall provide the Unsecured Claimants Trust Beneficiaries notice of the web address where the information received pursuant to this Section 8.1 will be posted.

- 19 -

(c)     From the Effective Date until a Final Decree is entered, the Unsecured Claimants Trustee shall, within forty-five (45) days of the end of each calendar quarter, file with the Bankruptcy Court and submit to the United States Trustee, quarterly reports setting forth all receipts and disbursements of the Unsecured Claimants Trust as required by the guidelines of the United States Trustee.

## ARTICLE 9
## TERM; TERMINATION OF THE UNSECURED CLAIMANTS TRUST

9.1.    Term; Termination of the Unsecured Claimants Trust.

(a)     The Unsecured Claimants Trust shall be terminated at such time as (i) all of the Unsecured Claimants Trust Assets have been distributed pursuant to the Plan and this Unsecured Claimants Trust Agreement, (ii) the Unsecured Claimants Trustee determines, in its sole discretion, that the administration of the Unsecured Claimants Trust Assets is not likely to yield sufficient additional Unsecured Claimants Trust proceeds to justify further pursuit and (iii) all distributions required to be made by the Unsecured Claimants Trustee under the Plan and the Unsecured Claimants Trust Agreement have been made, provided, however, that in no event shall the Unsecured Claimants Trust be terminated later than five (5) years from the Effective Date unless an extension is granted by the Bankruptcy Court pursuant to Section 9.1(b) below.

(b)     Notwithstanding the foregoing, the Bankruptcy Court, upon motion by the Unsecured Claimants Trustee and after a hearing held within six (6) months before the expiration of the original term or any extended term, may extend, for a fixed period, the term of the Unsecured Claimants Trust if it is necessary to facilitate or complete the liquidation of the Unsecured Claimants Trust Assets. The Bankruptcy Court may approve multiple extensions of the term of the Unsecured Claimants Trust, provided, however, that such extensions, on a cumulative basis, may not exceed three (3) years without a favorable private letter ruling from the Internal Revenue Service that any further extensions would not adversely affect the status of the Unsecured Claimants Trust as a Unsecured Claimants Trust for United States federal income tax purposes.

(c)     If at any time the Unsecured Claimants Trustee determines, in reliance upon such professionals as the Unsecured Claimants Trustee may retain, that the expense of administering the Unsecured Claimants Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Unsecured Claimants Trust, the Unsecured Claimants Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Unsecured Claimants Trust, (ii) donate any balance to a charitable organization described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Unsecured Claimants Trust, and any insider of the Unsecured Claimants Trustee, and (iii) terminate the Unsecured Claimants Trust.

9.2.    Continuance of Trust for Winding Up.

After the termination of the Unsecured Claimants Trust and for the purpose of liquidating and winding up the affairs of the Unsecured Claimants Trust, the Unsecured Claimants Trustee shall continue to act as such until its duties have been fully performed. Prior

- 20 -

to the final distribution of all of the remaining Unsecured Claimants Trust Assets, the Unsecured Claimants Trust shall be entitled to reserve from such assets any and all amounts required to provide for its own costs and expenses, in accordance with Section 3.15 hereof, until such time as the winding up of the Unsecured Claimants Trust is completed. Upon termination of the Unsecured Claimants Trust, the Unsecured Claimants Trustee shall retain, until the expiration of the applicable statute of limitations in respect of the taxable years of the Unsecured Claimants Trust's existence unless otherwise ordered by the Bankruptcy Court, as a cost of administering the Unsecured Claimants Trust, the books, records, Unsecured Claimants Trust Beneficiary lists, the Trust Register, and certificates and other documents and files that have been delivered to or created by the Unsecured Claimants Trustee. At the Unsecured Claimants Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after the expiration of the applicable statute of limitations in respect of the taxable year in which the affairs of the Unsecured Claimants Trust were completed and wound up. Except as otherwise specifically provided herein, upon the termination of the Unsecured Claimants Trust, the Unsecured Claimants Trustee shall have no further duties or obligations hereunder.

## ARTICLE 10
## AMENDMENT AND WAIVER

10.1.   Amendment and Waiver.

(a)   The Unsecured Claimants Trustee in consultation with the Oversight Committee may amend, supplement or waive any provision of this Unsecured Claimants Trust Agreement without notice to or the consent of any other Unsecured Claimants Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Unsecured Claimants Trust Agreement provided that such amendments, supplements or waivers shall not adversely affect the distributions to be made under this Unsecured Claimants Trust Agreement to any of the Unsecured Claimants Trust Beneficiaries, or adversely affect the U.S. federal income tax status of the Unsecured Claimants Trust as a "Unsecured Claimants Trust"; (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Unsecured Claimants Trust as a "Unsecured Claimants Trust"; (iii) to comply with any requirements in connection with maintaining that the Unsecured Claimants Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act; (iv) to make the Unsecured Claimants Trust a reporting entity and, in such event, to comply with or seek relief from any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act or the Investment Company Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Unsecured Claimants Trust Agreement and the Plan.

(b)   Any amendment or waiver not covered by Section 10.1(a) above may only be made by the Unsecured Claimants Trustee upon approval of the Oversight Committee and the Bankruptcy Court upon notice and an opportunity for a hearing (and without the consent of any other Unsecured Claimants Trust Beneficiary); provided, however, that no change may be made to this Unsecured Claimants Trust Agreement that would adversely affect the distributions to be made under this Unsecured Claimants Trust Agreement to any of the Unsecured Claimants Trust Beneficiaries, or adversely affect the U.S. Federal income tax status of the Unsecured Claimants Trust as a "Unsecured Claimants Trust." Notwithstanding this Section 10.1, any amendments to

this Unsecured Claimants Trust Agreement shall not be inconsistent with the purpose and intention of the Unsecured Claimants Trust to liquidate in an expeditious but orderly manner the Unsecured Claimants Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1.  <u>Intention of Parties to Establish the Unsecured Claimants Trust</u>.

This Unsecured Claimants Trust Agreement is intended to create a Unsecured Claimants Trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Unsecured Claimants Trust Agreement may be amended in accordance with Section 10.1 hereof to comply with such federal income tax laws, which amendments may apply retroactively. The Unsecured Claimants Trust Agreement is not intended to create a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise any entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code.

11.2.  <u>Laws as to Construction</u>.

**THIS UNSECURED CLAIMANTS TRUST AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION.**

11.3.  <u>Jurisdiction</u>.

Without limiting any Person's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, notwithstanding anything contained herein to the contrary, (i) the Bankruptcy Court shall exercise jurisdiction to the greatest extent possible to enforce the terms of this Unsecured Claimants Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Unsecured Claimants Trust Agreement, any breach or default hereunder, or the transactions contemplated hereby; and (ii) any and all actions related to the foregoing or to this Unsecured Claimants Trust Agreement, or to any action taken, or failed to be taken, by the Unsecured Claimants Trustee, shall be filed and maintained, in the first instance, in the Bankruptcy Court and, if the Bankruptcy Court does not have or exercise jurisdiction, in the United States District Court for the Western District of Louisiana, and the parties, including the Unsecured Claimants Trust Beneficiaries, and Holders of Claims and Equity Interests, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court, in the first instance, and the United States District Court for the Western District of Louisiana, otherwise. Notwithstanding the foregoing, the Unsecured Claimants Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any claims or Causes of Action assigned to the Unsecured Claimants Trust.

11.4. <u>Severability</u>.

If any non-material provision of this Unsecured Claimants Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Unsecured Claimants Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Unsecured Claimants Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.5. <u>Notices</u>.

All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

If to the Unsecured Claimants Trustee, to:

Brian Ryniker
CBIZ MHM, LLC
5 Bryant Park at 1065 Avenue of the Americas
New York, NY 10018

With a copy to:

Francis J. Lawall
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799


If to any of the Debtors, to:

Trey Blalock
Health Care Navigator
4 West Red Oak Lane
Suite 201
White Plains, NY 10604

- 23 -

With a copy to:

Patrick J. Neligan, Jr.
Neligan Foley LLP
325 N. St. Paul, #3600
Dallas, TX 75201

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt. Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

11.6.  Fiscal Year.

The fiscal year of the Unsecured Claimants Trust will begin on the first day of January and end on the last day of December of each year.

11.7.  Headings.

The section headings contained in this Unsecured Claimants Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Unsecured Claimants Trust Agreement or of any term or provision hereof.

11.8.  Counterparts.

This Unsecured Claimants Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement. Delivery of a facsimile or other electronic transmission of an executed counterpart shall have the same effect as delivery of the original executed counterpart.

11.9.  Confidentiality.

The Unsecured Claimants Trustee shall, and each Unsecured Claimants Trust Beneficiary shall, and each of them shall instruct each of their officers, directors, employees, shareholders, partners, members, agents, attorneys, and other professionals (each, including the Unsecured Claimants Trustee and each Unsecured Claimants Trust Beneficiary, a "Covered Person") to, during the period that they serve in such capacity under this Unsecured Claimants Trust Agreement and following either the termination of this Unsecured Claimants Trust Agreement or such individual's ceasing to be the Unsecured Claimants Trustee or Unsecured Claimants Trust Beneficiary or such other person's removal, incapacity, or resignation from such capacity, hold strictly confidential and not use for personal gain, and not disclose except for the purpose of performing and exercising their rights and duties under this Unsecured Claimants Trust Agreement, any material, nonpublic information of or pertaining to the Unsecured Claimants Trust Assets or to any entity to which any of the Unsecured Claimants Trust Assets relates or of which it has become aware in its capacity (the "Information"), except (a) to the extent disclosure

- 24 -

is required by applicable law, order, regulation or legal process, (b) in respect of Information that was publicly available to a Covered Person or its affiliates prior to the disclosure of such Information pursuant to this Unsecured Claimants Trust Agreement, and (c) to any assignee or Participant (or any prospective assignee or Participant) of a Unsecured Claimants Trust Beneficiary, provided that any such recipient of such Information agrees to be bound by this Section 11.9. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Unsecured Claimants Trustee reasonably promptly (unless prohibited by law) so that the Unsecured Claimants Trustee may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section. In the event that no such protective order or other remedy is obtained, or that the Unsecured Claimants Trustee waives compliance with the terms of this Section and that any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required to furnish and will give the Unsecured Claimants Trustee written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

    11.10. <u>Entire Agreement</u>.

        This Unsecured Claimants Trust Agreement (including the Recitals, Schedules and Exhibits), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Unsecured Claimants Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Unsecured Claimants Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Unsecured Claimants Trust Agreement.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Unsecured Claimants Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**DEBTORS:**

**UNSECURED CLAIMANTS TRUSTEE:**

_____

## SCHEDULE A

### LIST OF CERTAIN ASSETS TO BE TRANSFERRED TO THE UNSECURED CLAIMANTS TRUST

1. All Cash of the Debtors. (*See* Section 6.03(b) of the Plan).
2. All Causes of Action of the Debtors (other than Causes of Action against the Released Parties which have been released under the Plan). (*See* Section 6.03(c) of the Plan).
3. All other personal property of the Debtors, whether tangible or intangible. (*See* Section 6.03(d) of the Plan).

## SCHEDULE B

### LIST OF RETAINED ASSETS

1. All of the Debtors' accounts receivable (until such time as the Trust provides written notice to HCN to transfer the accounts receivable). (*See* Section 6.03(b) of the Plan).
2. Interests in the Debtors.

## SCHEDULE C

### COMPENSATION TERMS OF ORIGINAL TRUSTEE

1.  The Trustee, a Managing Director at CBIZ MHM, LLC, shall be compensated at his standard hourly then in effect, which is subject to annual adjustments, and/or such other terms as may be agreed to in writing by the Trustee and the Oversight Committee. As of August 1, 2016, the Trustee's hourly rate is $625.

## Exhibit B

### Tort Claimants Trust Agreement

**[Pursuant to Section 6.05 of the Plan, the Tort Claimants Trust will only become effective in the event that there remains at least one unsettled Class 5 Claim as of the Effective Date of the Plan. As of the filing of the Amended Plan Supplement, the Plan Proponents believe that all Class 5 Claims will be settled or resolved as of the Effective Date. Consequently, the Plan Proponents have not attached the Tort Claimants Trust Agreement. In the event it becomes necessary to establish the Tort Claimants Trust, the form of agreement will be substantially the same as that of the Unsecured Claimants Trust Agreement and will be consistent with Section 6.05 of the Plan. However, a copy of the Personal Injury Claims Resolution Procedures, which would be an exhibit to the Tort Claimants Trust Agreement, is attached hereto.]**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, et al. | § | CASE NO. 14-50756 |
| | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

## PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES

The following alternative dispute resolution procedures (the "ADR Procedures") have been adopted in the above-captioned Chapter 11 cases (the "Bankruptcy Cases"), pursuant to the First Amended Joint Plan of Liquidation for New Louisiana Holdings, LLC, et al., Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Plan.

## I. CLAIMS SUBJECT TO ADR PROCEDURES

1.      The claims subject to the ADR Procedures include all Personal Injury Claims (as that term is defined in the Plan). Holders of Personal Injury Claims shall be referred to herein as "Personal Injury Claimants."

## II. ADR INJUNCTION

2.      Upon confirmation of the Plan, such Personal Injury Claimant (and any other person or entity asserted an interest in the relevant Personal Injury Claim) shall be enjoined from commencing or continuing any action or proceeding in any manner or any place, including the Bankruptcy Court, seeking to establish, liquidate, collect on, or otherwise enforce the Personal Injury Claim(s) identified in the ADR Notice other than through the ADR Procedures (the "ADR Injunction").

---

3.    The ADR Injunction will expire upon the earlier of (a) the resolution of a Personal Injury Claim or (b) the ADR Procedures have been completed with respect to that Personal Injury Claim. Except as expressly ordered by the Bankruptcy Court, the expiration of the ADR Injunction shall not extinguish, limit, or modify the automatic stay established by 11 U.S.C. § 362 or any similar injunction or stay that may be imposed upon the confirmation or effectiveness of a plan or plans in the Debtors' Bankruptcy Cases.

### III.  DESIGNATION OF CLAIMS AND NOTICE PROCEDURES

4.    On the Effective Date of the Plan, provided that there remains at least one unsettled Class 5 Claim, the Tort Claimants Trust shall be established and shall become effective. As soon thereafter as reasonably practicable, the Tort Claimants Trustee shall serve upon all Personal Injury Claimants holding unsettled Class 5 Claims the following materials: (a) a notice that the claim is a Personal Injury Claim subject to these ADR Procedures (the "ADR Notice"); (b) a copy of the order confirming the Plan; and (c) a copy of these ADR Procedures (collectively the "ADR Notice Package"). The form of the ADR Notice is attached hereto as **Exhibit A**. The ADR Notice shall be served upon the Personal Injury Claimants at the address listed on the Personal Injury Claimant's most recently filed proof of claim. The ADR Notice will also be served on any counsel of record in the Debtors' Bankruptcy Cases for any Personal Injury Claimant. For transferred claims, the ADR Notice will also be served on the transferee identified in the notice of transfer of the Personal Injury Claim.

### IV. OFFER EXCHANGE PROCEDURES

5.    In the first stage of the ADR Procedures, the parties will be required to exchange settlement offers (the "Offer Exchange Procedures"). Rule 408 of the Federal Rules of Civil Procedure shall apply to the ADR Procedures, including the Offer Exchange Procedures and,

except as permitted by Rule 408, no person may rely on, or introduce into evidence any offer, counteroffer, or other information conveyed during the Offer Exchange Procedures.

**A.     Initial Settlement Offer**

6.     In addition to notifying a Personal Injury Claimant that his or her Personal Injury Claim has been submitted to the ADR Procedures, the ADR Notice shall include an offer by the Tort Claimants Trustee to settle the Personal Injury Claim (a "Settlement Offer").

**B.     Personal Injury Claimant's Response**

7.     The Personal Injury Claimant will be required to sign an return the ADR Notice and respond to the Settlement Offer within twenty-one (21) days of the date the ADR Notice is mailed.  In the signed ADR Notice, the Personal Injury Claimant must advise the Tort Claimants Trustee whether the Personal Injury Claimant consents to binding arbitration of the Personal Injury Claim in the event the Personal Injury Claim is not settled in the course of the Offer Exchange Procedures and nonbinding mediation.  The Personal Injury Claimant shall make the election to either consent or not consent to binding arbitration by checking the appropriate box in the ADR Notice.

8.     The only permitted response to a Settlement Offer will be (a) acceptance of the Settlement Offer or (b) rejection of the Settlement offer coupled with a counteroffer (a "Counteroffer").  If the Personal Injury Claimant fails to respond or does not respond in compliance with this paragraph, the Offer Exchange Procedures will be deemed terminated with respect to the Personal Injury Claim and the Personal Injury Claim will be submitted to nonbinding mediation as described below.

**C.     Counteroffers**

9.     Counteroffers shall (a) provide all facts that substantiate the Personal Injury Claim in sufficient detail for the Tort Claimants Trustee to evaluate the validity and amount of

the Personal Injury Claim; (b) provide all documents that the Personal Injury Claimant contends supports the Personal Injury Claim; (c) state the dollar amount at which the Personal Injury Claimant is willing to accept as the amount of the Personal Injury Claim (the "Proposed Claim Amount"); (d) explain the calculation of the Proposed Claim Amount; (e) identify all third parties that are or may be liable for the Personal Injury Claim and any potential source of recovery other than the Debtors (i.e. third party insurance, patient compensation fund, etc.); and (f) provide the name and address of counsel representing the Personal Injury Claimant with respect to the Personal Injury Claim or, if applicable, state that the Personal Injury Claimant is proceeding *pro se*. The Proposed Claim Amount may not exceed the amount or improve the priority set forth in the Personal Injury Claimant's most recently filed proof of claim, but it may liquidate any previously unliquidated amounts referenced in the relevant proof of claim.

10.     The Counteroffer shall constitute an offer to allow the Personal Injury Claim as a Class 5 Claim in the Proposed Claim Amount under the Plan. If the Tort Claimants Trustee accepts the Counteroffer, the Personal Injury Claimant shall be bound by the acceptance and the Personal Injury Claim shall be resolved in accordance with the terms of the Counteroffer, and Personal Injury Claimants shall not be entitled to recover any consideration from the Tort Claimants Trustee or the Debtors other than the consideration ultimately distributed to holders of allowed Class 5 Claims under the Plan.

**D.     Tort Claimants Trustee's Response to a Counteroffer**

11.     The Tort Claimants Trustee must respond to any Counteroffer within twenty-one (21) days after their receipt of the Counteroffer (the "Response Deadline") by returning a written response (a) accepting the Counteroffer, (b) rejecting the Counteroffer, with or without making a revised Settlement Offer (the "Revised Settlement Offer"), or (c) requesting additional information. If the Tort Claimants Trustee fails to respond to a Counteroffer by the Response

Deadline, the Counteroffer shall be deemed rejected by the Tort Claimants Trustee, the Offer Exchange Procedures shall be deemed terminated with respect to the relevant Personal Injury Claim, and the Personal Injury Claim will be submitted to nonbinding mediation as discussed below.

12. If the Tort Claimants Trustee makes a revised Settlement Offer by the Response Deadline, the Personal Injury Claimant may accept the Revised Settlement Offer by providing the Tort Claimants Trustee with a written statement of acceptance within ten (10) days of the date of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline"). If the Personal Injury Claimant fails to respond to a Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer shall be deemed rejected by the Tort Claimants Trustee, the Offer Exchange Procedures shall be deemed terminated with respect to the relevant Personal Injury Claim, and the Personal Injury Claim will be submitted to nonbinding mediation as discussed below.

13. If the Tort Claimants Trustee requests additional information from the Personal Injury Claimant, the Claimant shall have fourteen (14) days from the date of such request to respond. If the Personal Injury Claimant timely responds, the Tort Claimants Trustee shall have fourteen (14) days from the date of the response to (a) accept the Counteroffer, (b) reject the Counteroffer, or (c) make a Revised Settlement Offer. If the Tort Claimants Trustee fails to respond to the Counteroffer within this period, the Counteroffer shall be deemed rejected by the Tort Claimants Trustee, the Offer Exchange Procedures shall be deemed terminated with respect to the relevant Personal Injury Claim, and the Personal Injury Claim will be submitted to nonbinding mediation as discussed below.

**E. Offer Exchange Termination Date**

14.     The Offer Exchange Procedures shall conclude and terminate upon the earlier of (the "Offer Exchange Termination Date"):  (a) the date on which the Offer Exchange Procedures are terminated and the Personal Injury Claim automatically advances to non-binding mediation under the provisions set forth above; (b) the date that any settlement offer for a Personal Injury Claim is accepted under the procedures set forth above; (c) any date mutually agreed upon by the Tort Claimants Trustee and the Personal Injury Claimant.  The Offer Exchange Termination Date may be extended by mutual written consent of the Tort Claimants Trustee and the Personal Injury Claimant.

## V. NONBINDING MEDIATION

### A.     Mediation Notice

15.     If the Tort Claimants Trustee and Personal Injury Claimant do not settle the Personal Injury Claim through the Offer Exchange Procedures, the Tort Claimants Trustee shall serve the Personal Injury Claimants with a notice of nonbinding mediation ("Mediation") within thirty (30) days of the Offer Exchange Termination Date (the "Mediation Notice").  The form of the Mediation Notice is attached hereto as **Exhibit B**.  The Mediation Notice will provide:  (a) a list of designated locations of the mediation (the "Designated Locations"), (b) a range of proposed dates for the mediation (the "Designated Dates"), and (c) a list of designated mediators for each Designated Location (the "Designated Mediators").

### B.     Scheduling of Mediation and Appointment of Mediators

16.     The Mediation shall be conducted by a Designated Mediator at one of the following Designated Locations:  (a) New Orleans, Louisiana; (b) Orlando, Florida; (c) Tampa, Florida; (d) Atlanta, Georgia; or (e) another location mutually agreed upon by the Debtors and the Personal Injury Claimant.  The Personal Injury Claimant shall choose both the Mediator and

14-50756 - #1289  File 08/26/16  Enter 08/26/16 17:39:34  Main Document  Pg 43 of 78

the location of the Mediation from the list of Designated Mediators and Designated Locations contained in the Mediation Notice.

17. Within thirty (30) days of the date of the Mediation Notice (the "Mediation Response Deadline"), the Personal Injury Claimant shall respond to the Mediation Notice in writing notifying the Tort Claimants Trustee of: (a) the location of the Mediation; (b) the Mediator; and (c) three (3) dates among the Designated Dates on which the Personal Injury Claimant is available for the Mediation. If the Personal Injury Claimant fails to respond to the Mediation Notice by the Mediation Notice Response Deadline, the Debtors shall choose the Mediator and the location and date of the Mediation from among the Designated Mediators, Designated Locations, and Designated Dates identified in the Mediation Notice and shall notify the Personal Injury Claimant in writing of the identity of the Mediator and the location and date of the Mediation within ten (10) days of the Mediation Response Deadline.

18. The Tort Claimants Trustee and Personal Injury Claimants shall cooperate in good faith to schedule the Mediation at dates, times, and locations convenient to all involved. To the maximum extent possible, in scheduling the Mediation the parties shall give due consideration to the respective schedules of the parties and the proximity of the Mediation to the Personal Injury Claimant. If the parties are unable to agree upon the date or location of the Mediation, the date and location of the Mediation shall be set by order of the Bankruptcy Court upon motion by either the Tort Claimants Trustee or the Personal Injury Claimants.

## C. Designation of Mediators

19. Any person appointed as a Mediator must: (a) be an impartial, neutral person; (b) have no financial or personal interest in the proceedings or in any related matter; (c) upon appointment, disclose any circumstances like to create a reasonable inference of bias. In the event a Mediator discloses any circumstances like to create a reasonable inference of bias, such

Mediator may be replaced at the written request of either the Debtors or the Personal Injury Claimant. Replacement mediators shall be chosen by the party requesting the replacement from the list of Designated Mediators contained in the Mediation Notice.

**D.    Mediation Rules**

20.    Mediations shall be conducted according to the Mediator's regular procedures, except where expressly modified by these ADR Procedures. In the event of any conflict, the ADR Procedures shall control. Any party that fails to participate in the Mediation in good faith, in accordance with the Mediator's procedures and these ADR Procedures may be subject to sanctions as discussed below.

21.    For each Mediation conducted under these ADR Procedures, the Mediator shall be entitled to charge the mediation fees disclosed to, and agreed to by, the Debtors and the Personal Injury Claimant. The Mediator's fee shall be shared equally by the Debtors and the Personal Injury Claimant.

22.    Rule 408 of the Federal Rules of Civil Procedure shall apply to the Mediation, except as permitted by applicable Federal Rules of Evidence, no person may rely on, or introduce into evidence any offer, counteroffer, or other information conveyed during the Mediation.

## VI. BINDING ARBITRATION

**A.    Binding Arbitration**

23.    If a Personal Injury Claimant has consented to binding arbitration, the Personal Injury Claim may, in the Tort Claimants Trustee's sole discretion, be arbitrated under the terms of this Section VI unless such claim is resolved in the Offer Exchange Procedures or Mediation. If the Personal Injury Claimant has expressly indicated that it does not consent to binding arbitration, the Personal Injury Claim shall be resolved in the Bankruptcy Court by the Tort

Claimants Trustee's commencement of proceedings pursuant to the Bankruptcy Code, including without limitation, estimating or objecting to the Personal Injury Claims. These ADR Procedures shall not alter the validity or enforceability of a pre-existing arbitration agreement, and shall not affect the Tort Claimants Trustee's rights with respect to such agreements.

**B.**     **Arbitration Notice**

24.     To initiate the arbitration process for a Personal Injury Claim, the Tort Claimants Trustee shall serve a notice of arbitration (the "<u>Arbitration Notice</u>"), with a copy of the Personal Injury Claimant's applicable proof(s) of claim attached, on the Personal Injury Claimant and and the American Arbitration Association (the "<u>AAA</u>").

**C.**     **Arbitration Rules and Procedures**

25.     For Personal Injury Claims that are not designated by the Tort Claimants Trustee as Complex Personal Injury Claims (as defined below), the arbitration of all Personal Injury Claims shall be conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the AAA (the "<u>Arbitration Rules</u>"). The arbitration shall be governed by the Arbitration Rules except where the Arbitration Rules are expressly modified in these ADR Procedures. The arbitration procedures described herein may be modified only upon the mutual consent of the Tort Claimants Trustee and the Personal Injury Claimant.

26.     The Tort Claimants Trustee may, in its sole discretion, designate certain Personal Injury Claims as complex personal injury claims ("<u>Complex Personal Injury Claims</u>"). The arbitration of all Complex Personal Injury Claims shall be conducted by a panel of three arbitrators selected pursuant to the Arbitration Rules. The AAA Procedures for Large, Complex Commercial Disputes shall be used for arbitration of all Complex Personal Injury Claims, in addition to the Arbitration Rules.

**D.**     **Governing Law**

27.     The ADR Procedures, as they related to arbitration proceedings, are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"). The enforceability of an arbitration award is governed by Section 9 of the FAA.

**E.     Appointment of the Arbitrator**

28.     Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall commence the following procedures for the appointment of arbitrator(s) (the "Appointment Procedures") by concurrently sending the Tort Claimants Trustee and the applicable Personal Injury Claimant an identical list of the names of at least eight (8) arbitrator candidates who meet the qualifications necessary for the matter. The Tort Claimants Trustee and the applicable Personal Injury Claimant shall have seven (7) business days from the date this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names in order of preference, and (iii) return the list to the AAA. If the Personal Injury Claim is not a Complex Personal Injury Claim, the AAA shall appoint a single arbitrator from the name(s) not stricken, giving consideration first to the preferences of the parties and second to scheduling and the availability of the arbitrator. If the Personal Injury Claim is a Complex Personal Injury Claim, the AAA shall appoint a panel of three (3) arbitrators from the name(s) not stricken, giving consideration first to the preferences of the parties and second to the scheduling and the availability of the arbitrators. The AAA shall appoint the arbitrator(s) in accordance with the Appointment Procedures within ten (10) business days of its receipt of the applicable Arbitration Notice.

29.     In designating the arbitrator in accordance with the procedures described herein, the AAA shall review the Arbitration Notice and the applicable Personal Injury Claim. Any person appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either from past arbitrations or former employment) in the law that is the subject of the Personal Injury Claim; (iii) have no financial or personal interest in the proceedings or, except when

otherwise agreed by the parties, in any related matter; and (iv) upon appointment, disclose any circumstances likely to create a reasonable inference of bias. In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be replaced by the AAA at the written request of the Tort Claimants Trustee or the Personal Injury Claimant within ten (10) days after such disclosure.

## F. Pre-Hearing Matters

30. Unless otherwise agreed to by the parties, any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator(s) telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for expeditious, final, and binding resolution. Upon a party's request, the arbitrator(s) may order that a substantive motion, such as a motion for summary judgment, be heard in person rather than telephonically. Any pre-hearing issue, matter, or dispute (other than with respect to merits issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by telephonic or electronic communication at least five days prior to the arbitration hearing.

## G. Discovery

31. Any requests for production of documents, electronically-stored information and things ("Document Requests") shall be made in writing and shall be limited to no more than twenty (20) requests, including discrete subparts. Items requested in the Document Requests must be produced within thirty (30) days after service of the Document Requests. All documents from discovery shall be confidential and shall not be (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein. There shall be no requests for admission or interrogatories.

**H.     Pre-Arbitration Statement**

32.     Unless otherwise agreed by the parties, on or before ten (10) days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other party or parties by email or overnight mail a pre-arbitration statement not to exceed fifteen (15) pages, excluding any attachments.

**I.     Time and Location of Arbitration Hearings**

33.     All arbitration hearings shall be conducted  in either (i) Dallas, Texas; (ii) New Orleans, Louisiana; (iii) Tampa, Florida; or (iv) any other location agreed to by the Debtors and Personal Injury Claimants; (collectively, the "Arbitration Locations").  To the maximum extent practicable, the scheduling and location of arbitration hearings shall give due consideration to the proximity of the Personal Injury Claimant and to the convenience of the parties to the Arbitration Location.  Within ten (10) days of appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial Arbitration Rule 20.

**J.     Arbitration Hearing**

34.     Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein, the arbitration hearing on a Personal Injury Claim must be held no later than ninety (90) days after the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties and their respective counsel, insurers (if any), and witnesses.  Nonparty witnesses shall be sequestered.  No post-hearing briefs may be submitted unless the arbitrator(s) requests such briefs, in which case such briefing shall be subject to the issues, timing, and page limitations the arbitrator(s) imposes.  There shall be no reply briefs.

**K.     Awards**

35.     The arbitrator(s) shall issue a written, reasoned opinion and award (the "Arbitration Award") within fourteen (14) days after the arbitration hearing.  The arbitrator(s)

shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award for a Personal Injury Claim. Any Arbitration Award shall be an allowed Class 5 Claim under the Plan. The Arbitration Award may not award a priority claim or otherwise determine the priority of the claim under the Bankruptcy Code; provided, however, that, within thirty (30) days after the issuance of an Arbitration Award, the Personal Injury Claimant may seek relief from the Bankruptcy Court to determine that some or all of the Arbitration Award is subject to treatment as a priority claim if the Personal Injury Claimant's applicable proof of claim filed as of the date of filing of the ADR Order asserted an entitlement to such priority. Further, no portion of a claim resulting from any Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b) interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance, other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any other form of equitable remedy; or (f) any relief not among the foregoing but otherwise impermissible under applicable bankruptcy or nonbankruptcy law. The Tort Claimants Trustee shall have the right within thirty (30) days after the issuance of an Arbitration Awards to file a motion seeking relief from the Bankruptcy Court to enforce the preceding sentence and obtain the disallowance of any portion of a claim included in an Arbitration Award in violation of clauses (a) through (f) herein. In all cases, the awarded claim shall be subject to treatment in accordance with the Plan and the order confirming the Plan. The entry of an Arbitration Award shall not grant the Personal Injury Claimant any enforcement or collection rights other than as expressly permitted under the Plan.

L.      **Appeals of Arbitration Awards**

36.     All arbitration awards shall be final and binding.  Other than the identities of the applicable Debtors and Personal Injury Claimants, the claims register number(s) assigned to the applicable arbitrated Personal Injury Claims, and the dollar amounts of the Personal Injury Claims as awarded in the arbitration awards, and except as otherwise required by law or agreed upon by the parties, all arbitration awards shall be treated as confidential.  No party shall have the right to appeal an arbitration award except pursuant to the appeal provisions of the FAA, in which case any appeal must be to the United States District Court for the Western District of Louisiana.  Any appeal shall be governed by the FAA.  The parties shall have ten (10) days from the date the arbitration award is served to appeal such award.  Failure to timely appeal shall result in the loss of any appeal rights.  Once any appeal has concluded or appellate rights are waived, the Tort Claimants Trustee shall update the claims docket in the chapter 11 cases accordingly and may file any notice of the liquidated amount of the Personal Injury Claim that it deems necessary or appropriate for such purpose.

**M.    Fees and Costs**

37.     Unless the parties have expressly agreed otherwise in writing, the fees and costs charged by the AAA and the arbitrator(s) shall be shared equally by the Tort Claimants Trustee and the Personal Injury Claimant.  Each party shall bear its own legal fees and expenses.  However, the arbitrator(s), in the arbitrator(s)' sole discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or unduly delaying the arbitration process.

## VII. SETTLEMENT OF PERSONAL INJURY CLAIMS

**A.    Settlement Permitted at Any Stage of the ADR Procedures**

38.     Personal Injury Claims may be settled by the Tort Claimants Trustee and a Personal Injury Claimant through the Offer Exchange  Procedures, Mediation, or by agreement at any point during these ADR Procedures.  To the extent that a Personal Injury Claimant has

agreed in writing to settle such Personal Injury Claim prior to the Effective Date of the Plan, such settlement shall be binding on the Personal Injury Claimant, the Debtors and the Tort Claimants Trustee without further action of the parties or order of the Bankruptcy Court. Promptly following the Effective Date of the Plan, the Tort Claimants Trustee (or the Debtors if all Personal Injury Claims have been settled prior to the Effective Date and, as a result, the Tort Claimants Trust is not formed) shall pay each settling Personal Injury Claimant the agreed upon amount set forth within the applicable settlement agreement.

## VIII. FAILURE TO RESOLVE A PERSONAL INJURY CLAIM THROUGH ADR PROCEDURES

### A. Litigation Generally

39.     Claims not resolved through the ADR Procedures shall proceed to litigation for resolution.  Notwithstanding anything herein, the Tort Claimants Trustee may terminate the ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation of the Personal Injury Claim as set forth herein.

### B. Litigation in the Bankruptcy Court

40.     If a Personal Injury Claim is not resolved via the ADR Procedures (an "Unresolved Personal Injury Claim"), the Tort Claimants Trustee shall commence proceedings in the Bankruptcy Court for the resolution of the Unresolved Personal Injury Claim, to the extent that (a) the Bankruptcy Court has subject matter jurisdiction over the Unresolved Personal Injury Claim and (b) the Unresolved Personal Injury Claim is not subject to the abstention provisions of 28 U.S.C. § 1334(c).  Disputes over the subject matter jurisdiction of the Bankruptcy Court or the application  of abstention shall be determined  by the Bankruptcy  Court unless otherwise required by federal law or the Bankruptcy Code.

### C. Litigation in Other Courts

41.     If the Unresolved Personal Injury Claim cannot be adjudicated in the Bankruptcy Court as a result of abstention or because of lack of or limitations upon subject matter jurisdiction (as determined by the Bankruptcy Court), then litigation of such Unresolved Personal Injury Claim shall proceed (a) if the Unresolved Personal Injury Claim was pending in a nonbankruptcy forum on the date the Debtors commenced their respective voluntary chapter 11 cases (the "Commencement Date"), then (i) in such nonbankruptcy forum, subject to the Tort Claimants Trustee's right to seek removal or transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court or the United States District Court for the Western District of Louisiana on request of the Tort Claimants Trustee;[1] or (b) if the Unresolved Personal Injury Claim was not pending in any forum on the Commencement Date, then in the United States District Court for the Western District of Louisiana or such other nonbankruptcy forum that, as applicable, (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Unresolved Personal Injury Claim, (iii) has in rem jurisdiction over the property involved in the Unresolved Personal Injury Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the applicability of this section shall be determined by the Bankruptcy Court.

**D.      Modification of the Automatic Stay**

42.     If litigation of an Unresolved Personal Injury Claim in a forum other than the Bankruptcy Court is required as set forth above, the ADR Order provides that the automatic stay imposed by section 362 of the Bankruptcy Code, or any subsequent Plan Injunction (collectively, the "Stay"), shall be modified solely to the extent necessary to permit the liquidation of the

---

[1] The Tort Claimants Trustee may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove and/or transfer to the United States District Court for the Western District of Louisiana any Unresolved Personal Injury Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

amount of such Unresolved Personal Injury Claim in the appropriate forum; provided, however, that any such liquidated claim (a) shall be subject to treatment under the applicable chapter 11 plan or plans confirmed in these cases; and (b) shall be treated as a Class 5 Claim under the Plan. No later than forty-five (45) days after the Bankruptcy Court determines that the terms of Section VIII.C above applies to an Unresolved Personal Injury Claim or at such other time as agreed to by the parties, the Tort Claimants Trustee shall either (a) file a notice of such modification of the Stay (a "Notice of Stay Modification") with the Bankruptcy Court and serve a copy of such notice on the Personal Injury Claimant or (b) file a motion seeking an order governing the terms upon which the Stay will be modified (a "Stay Motion") and serve such Stay Motion on the Personal Injury Claimant. The Stay shall be modified solely to the extent set forth above (a) as of the date that is forty-five (45) days after the filing of a Notice of Stay Modification, unless the Bankruptcy Court orders otherwise or the parties otherwise agree; or (b) as ordered by the Court in connection with a Stay Motion. If the Tort Claimants Trustee fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an Unresolved Personal Injury Claim, the Stay shall remain in effect with respect to such Unresolved Personal Injury Claim and the Personal Injury Claimant may seek a determination of the Bankruptcy Court regarding whether and on what terms the Stay must be modified to permit litigation in a nonbankruptcy forum as set forth in Section VIII.C above.

## IX. FAILURE TO COMPLY WITH THE ADR PROCEDURES

43.    If a Personal Injury Claimant or the Tort Claimants Trustee fails to comply with the ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or, with respect to a Personal Injury Claimant, an abandonment of or failure to prosecute the Personal Injury Claim, or both. Upon such findings, the Bankruptcy

Court may, among other things, disallow and expunge the Personal Injury Claim, in whole or part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees, and costs to the other party.

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, | § | CASE NO. 14-50756 |
| et al. | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date:

Claimant(s):

Claimant(s) Address:

Personal Injury Claim Number(s):

Amount(s) Stated In Proof(s) Of Claim:

**Deadline To Respond:**

By this notice (the "ADR Notice"), the above-identified claim(s) (the "Personal Injury Claim(s)") is submitted to alternative dispute resolution, pursuant to the procedures (the "ADR Procedures") established by the order confirming the First Amended Joint Plan of Liquidation for New Louisiana Holdings, LLC, et al., Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan"), entered by the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court") on _____ ___, 2016 and the Bankruptcy Court's standing Order Regarding Voluntary Mediation Program and Procedural Requirements, dated March 4, 2005 (together, the "ADR Order"). A complete copy of the ADR Procedures is enclosed for your reference. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Plan. The Tort Claimants Trustee has reviewed your Personal Injury Claim(s) and, pursuant to the ADR Procedures, offer the amounts set forth below for allowance of your Personal Injury Claim(s) as a Class 5 Claim in full satisfaction of the Personal Injury Claim(s) (the "Settlement Offer").

**You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the Deadline to Respond indicated above.** In addition, to the extent your most recent proofs) of claim **[does]/[do]** not (a) state the correct amount of your Personal Injury Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Personal Injury Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all

documents on which you rely in support of your Personal Injury Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response. If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to _____ [Tort Claimants Trustee] so that it is received by the Deadline to Respond, your Personal Injury Claims will be subject to mandatory mediation as set forth in Section ____ of the ADR Procedures.

In addition, you are required to indicated expressly whether you consent to binding arbitration of your Personal Injury Claim if your Personal Injury Claim cannot be settled. Please mark the box below to indicated whether you (a) consent to binding arbitration or (b) do not consent to (and seek to opt out of) binding arbitration. **Please note that your consent to binding arbitration cannot subsequently be withdrawn**. In addition, any attempt to opt out of binding arbitration in response to this ADR Notice shall be ineffective if you have previously consent in writing to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section ____ of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The Tort Claimants Trustee offers you an allowed Class 5 Claim in the amount of $_____ in full satisfaction of your Personal Injury Claim(s), to be satisfied in accordance with the Plan. The only permitted response (the "Claimant's Response") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer"). Accordingly, please select your Claimant's Response below:

_____ I/we agree to and accept the terms of the Settlement Offer.

_____ I/we reject the Settlement Offer. However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Personal Injury Claim(s), to be satisfied in accordance with the Plan:

Debtor: _____

Amount: _____

Priority: Class 5 Claim (presumed) or _____ other:* _____

*Note: If you choose a different priority, you must attach and explanation and any relevant documentation

> *Please indicate below whether you consent to binding arbitration for your Personal Injury*
> *Claim(s) by marking the appropriate line.*
>
> \_\_\_\_\_ I/ WE CONSENT TO BINDING ARBITRATION.
>
> \_\_\_\_\_ I/WE DO NOT CONSENT TO BINDING ARBITRATION.

[Signature of the Personal Injury Claimant's Authorized Representative]


By: _____
       Printed Name

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, | § | CASE NO. 14-50756 |
| et al. | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

**NOTICE OF NONBINDING MEDIATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Personal Injury Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

     By this Mediation Notice, _____ (the "Tort Claimants Trustee") submits the above-identified claim(s) (the "Personal Injury Claim(s)") in the above-referenced chapter 11 cases to mediation, pursuant to the procedures (the "ADR Procedures") established by the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court") and the Bankruptcy Court's standing Order Regarding Voluntary Mediation Program and Procedural Requirements, dated March 4, 2005 (together, the "ADR Order"). The Tort Claimants Trustee has been unable to resolve your Personal Injury Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures were terminated as to your Personal Injury Claim(s) as provided for in the ADR Procedures. Mediation shall be conducted in the Mediation Location set forth above, unless the parties agrees to a different location. As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

     A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section ___ of the ADR Procedures for more information regarding the mediation.

     [Signature of the Tort Claimants Trustee's Authorized Person]

# LIST OF MEDIATORS

| Name | Location | Experience |
|------|----------|------------|
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |
|      |          |            |

EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NEW LOUISIANA HOLDINGS, LLC, et al. | § | CASE NO. 14-50756 |
| | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

## NOTICE OF BINDING ARBITRATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Personal Injury Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

By this Arbitration Notice, _____ (the "Tort Claimants Trustee") submits the above-identified claim(s) (the "Personal Injury Claim(s)") in the above referenced cases to binding arbitration, pursuant to the procedures (the "ADR Procedures") established by the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court") and the Bankruptcy Court's standing Order Regarding Voluntary Mediation Program and Procedural Requirements, dated March 4, 2005 (together, the "ADR Order"). The Tort Claimants Trustee has been unable to resolve your Personal Injury Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures or through nonbinding mediation.

YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR PERSONAL INJURY CLAIM(S) WILL PROCEED TO BINDING ARBITRATION PURSUANT TO THE ADR PROCEDURES.

As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("AAA"). The ADR Procedures require you and the Tort Claimants Trustee to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section ___ of the ADR Procedures for more information regarding binding arbitration.

[Signature of the Tort Claimants Trustee's Authorized Person].

## Exhibit C

### Schedule of Assumed Contracts

None

## Exhibit D

### Schedule of Released Parties

The following shall be "Released Parties" as that term is used in the Plan:

Schwartzberg Descendants Trust; Schwartzberg 2004 Descendants Trust; HS Midwest Trust #1; Harris Schwartzberg 2003 Trust; Harris Schwartzberg Trust; Harris Schwartzberg 2004 GST-Trust-1; Harris Schwartzberg; Harris Schwartzberg 2004-GST-Trust-2; HS Midwest Trust #2; Judith Schwartzberg Trust; Judith Schwartzberg 2003 Trust; Judith Starer Schwartzberg 2004 GST Trust; JS Midwest Trust; Steven Schwartzberg 2003 Trust; Schwartzberg Family 2004-GST-Trust; FAM Midwest Trust; TSC-HSTr, LLC; TSC-HS, LLC; TSC-JS, LLC; TSC-FAM, LLC; The Schwartzberg Companies of New York, Inc., HS Master, LLC, HCN Leasing, LLC, HS National Trust #1, Desc National Trust , HS National Trust #2, Fam National Trust, JS National Trust, SA Mezz Holdings, LLC, Elite Rehabilitation of Louisiana, LLC, Elite Rehabilitation of Georgia, LLC, Elite Rehabilitation of Florida, LLC, Elite Rehabilitation of the Midwest, LLC Albert Schwartzberg; Florence Schwartzberg; Judith Schwartzberg Starer, Alan Witt, Cypress Master Holdings, LLC; Asset Navigator, LLC; Health Care Navigator, LLC; Halcyon Rehabilitation, LLC; Gulf Coast Health Care, LLC; Sescort, Inc.; Schwartzberg Associates, LLC; Hygenia Medical Equipment, LLC; HMS Purchasing, LLC; Maxwell Stolzberg; Eric Roth; Anita Gullo; Richard Kase; Mitchell Starer; Alex Paley; James Blalock III; Julie Gutzmann; Raymond Mulry; together with all of their respective members, managers, officers, directors, employees, advisors, professionals, attorneys, representatives, agents, independent contractors, trustees, beneficiaries, spouses, children, successors, and assigns.

3

## Exhibit E

### Transition Services Agreement

Attached

4

# SERVICES AGREEMENT

**THIS SERVICES AGREEMENT** (the "Agreement") is made effective as of _____, 2016 (the "Effective Date"), by and between HEALTH CARE NAVIGATOR LLC, a Delaware limited liability company ("HCN"), CHG LEGACY GROUP, LLC (f/k/a Cypress Health Group, LLC), a Delaware limited liability company ("CHG"), and each of the other debtor entities in the Bankruptcy Cases (as defined below) (each, a "CHG Affiliate" and, together with CHG, collectively, the "Debtors") and the Unsecured Claimants Trust (the "Trust"). HCN, the Debtors and the Trust are each individually referred to in this Agreement as a "Party" and, collectively as, the "Parties".

## RECITALS

**A.** The Debtors are debtors-in-possession under title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), and filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases"), starting on June 25, 2014 (the "Petition Date"), in the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division (the "Bankruptcy Court") (Case No. 14-50756).

**B.** Prior to and after the commencement of the Bankruptcy Cases, the Debtors were involved in the ownership and operations of a portfolio of skilled nursing facilities located in the States of Florida, Georgia, Illinois, Kansas, Texas, Missouri and Louisiana (each individually, a "Facility" and, collectively, the "Facilities").

**C.** The Debtors have no employees or ongoing business activities, as the operations of all remaining Facilities have been transferred to unrelated third parties since the commencement of the Bankruptcy Cases.

**D.** HCN retains individuals who are experienced, knowledgeable and skilled in delivering advisory, consulting and functional services in areas such as accounting, information technology and legal services.

**E.** Since the Petition Date, HCN personnel have coordinated on behalf of the Debtors the administration of the Bankruptcy Cases.

**F.** The Debtors and the Trust desire to formally engage HCN to provide the Services (as such term is defined below) to assist the Debtors and the Trust in complying with all of their obligations under the *Joint Plan of Liquidation for New Louisiana Holdings, LLC, et al., Proposed by the Debtors and the Official Committee of Unsecured Creditors* (as subsequently amended or modified, the "Plan"), which was approved by the Bankruptcy Court on or about August 24, 2016. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Plan.

**G.** The Debtors and the Trust believe that HCN's provision of the Services will be substantially more cost-effective than any other alternatives available to the Debtors and is otherwise in the best interests of the Debtors, the Trust and the creditors in the Bankruptcy

#40431328 v3

Cases. HCN is willing to provide such Services to the Debtors and the Trust, as applicable, on and in accordance with the terms and subject to the conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the promises and mutual obligations and undertakings herein contained, the Parties agree as follows:

## ARTICLE I
## SERVICES TO BE PROVIDED

**1.1    Services.** Exhibit A attached to and made a part of this Agreement describes the services to be provided by HCN to the Debtors and/or the Trust pursuant to this Agreement (the "Services"). The Services shall include those items listed in Exhibit A, as well as any other services incidental or reasonably related thereto, as agreed to by HCN and the Trust, that are necessary for the Debtors or the Trust to perform their obligations under the Plan.

**1.2.    Provision of Services.** HCN will provide the Services in substantially the same manner in which the Services were provided by HCN to the Debtors during the Bankruptcy Cases. HCN will provide the Services either through its own resources, the resources of its subsidiaries or affiliates, or by contracting with independent contractors as determined by HCN in its sole discretion; provided, however, that nothing contained herein shall be deemed to require HCN to retain any third party at HCN's expense to provide the Services set forth in Exhibit A if HCN did not use a third party to perform such Services during the Bankruptcy Cases. In the event the Trust requests that HCN retain a third party to provide any Service, the Trust shall reimburse HCN for all such third party expenses incurred by HCN or shall direct that such third party expenses be billed directly to the Trust. With respect to Services in connection with claims resolution and asset recovery, the Parties agree to use commercially reasonable efforts in the prosecution and pursuit thereof, after considering the time and expense associated with a particular task and weighing it against the reasonably expected benefits to be obtained thereby. In providing the Services, HCN will make its representatives reasonably available to meet with representatives of the Trust on a reasonable basis, subject to the schedules of the respective participants.

**1.3.    Independent Contractor.** HCN is at all times acting and performing under this Agreement as an independent contractor, and that no act, commission or omission by the Debtors, the Trust or HCN will be construed to make or constitute the other its or their partner, principal, agent, joint venturer or associate; provided, however, that HCN may be authorized to act as Debtor's and the Trust's agent, from time to time, as circumstances warrant.

**1.4.    Records.** HCN shall keep in accordance with its record retention policies full and detailed records dealing with the Services performed by it hereunder and shall provide access to such records to the Debtors and the Trust at all reasonable times.

## ARTICLE II
## FEES

**2.1.    General.** In consideration for releases that HCN will receive in connection with the terms of the Plan, and for other good and valuable consideration, the receipt and sufficiency of which is

acknowledged by HCN, no fees shall be payable by the Debtors or the Trust for Services provided by HCN to the Debtors and the Trust prior to or after the Effective Date of the Plan and until March 31, 2017. Commencing on April 1, 2017 and continuing thereafter until this Agreement is terminated or expires by its terms, the Trust shall pay HCN the hourly fees set forth on Exhibit B (collectively, the "Fee") in connection with providing the Services to the Trust in each such month. The Fee constitutes full compensation to HCN for all charges, costs and expenses incurred by HCN on behalf of the Trust in providing the Services, except as specified in Section 1.2 or unless otherwise specifically agreed to by the Parties.

**2.2.** **Payments.** From and after April 1, 2017 until this Agreement is terminated or expires by its terms, HCN shall deliver to the Trust, no later than fifteen (15) days following the end of a calendar month, an invoice for the Fee incurred for the previous month. The Trust shall pay the Fee to HCN no later than fifteen (15) days following receipt of the subject invoice.

**ARTICLE III**
**AUTHORITY; INFORMATION; COOPERATION; CONSENTS**

**3.1.** **Authority.** Each Party represents and warrants to the other Party that:

    (a)    it has the requisite authority to enter into and perform this Agreement;

    (b)    its execution, delivery, and performance of this Agreement have been duly authorized by all requisite action on its behalf; and

    (c)    this Agreement is enforceable against it.

**3.2.** **Information Regarding Services.** Each Party shall make available to the other Party any information required or reasonably requested by that other Party regarding the performance of any Service and shall be responsible for timely providing that information and for the accuracy and completeness of that information. HCN shall not be liable for any impairment of any Service caused by its not receiving information, either timely or at all, or by its receiving inaccurate or incomplete information from the Debtors or the Trust that is required or reasonably requested regarding that Service.

**3.3.** **Cooperation.** The Parties will use good faith efforts to cooperate with each other in all matters relating to the provision and receipt of Services. Such good faith cooperation will include providing electronic access to systems used in connection with Services and using commercially reasonable efforts to obtain all consents, licenses, sublicenses or approvals necessary to permit each Party to perform its obligations. The Parties will cooperate with each other in making such information available as needed in the event of any and all internal or external audits. If this Agreement is terminated in whole or in part, the Parties will cooperate with each other in all reasonable respects in order to effect an efficient transition and to minimize the disruption to the business of both Parties, including the assignment or transfer of the rights and obligations under any contracts.

**3.4.** __Further Assurances__. Each Party shall take such actions, upon request of the other Party and in addition to the actions specified in this Agreement, as may be necessary or reasonably appropriate to implement or give effect to this Agreement.

**ARTICLE IV**

**CONFIDENTIAL INFORMATION**

**4.1.** __Definition.__ For the purposes of this Agreement, "Confidential Information" means non-public information about the disclosing Party's or any of its affiliates' business or activities that is proprietary and confidential, which shall include, without limitation, all business, financial, technical and other information, including software (source and object code) and programming code, of a Party or its affiliates marked or designated "confidential" or "proprietary" or by its nature or the circumstances surrounding its disclosure should reasonably be regarded as confidential. Confidential Information includes not only written or other tangible information, but also information transferred orally, visually, electronically or by any other means. Confidential Information will not include information that (a) is in or enters the public domain without breach of this Agreement, or (b) the receiving Party lawfully receives from a third party without restriction on disclosure and to the receiving Party's knowledge without breach of a nondisclosure obligation.

**4.2.** __Nondisclosure.__ Neither HCN nor the Debtors nor the Trust shall disclose to any third-party or use any Confidential Information disclosed to it by the other except as expressly permitted in this Agreement. Each Party will take all reasonable measures to maintain the confidentiality of all Confidential Information of the other Party in its possession or control, which will in no event be less than the measures it uses to maintain the confidentiality of its own information of similar type and importance.

**4.3.** __Permitted Disclosure.__ Notwithstanding the foregoing, each Party may disclose Confidential Information (a) to the extent required by a court of competent jurisdiction or other governmental authority or otherwise as required or desirable to comply with applicable law or regulation, including without limitation disclosure obligations imposed under the federal securities laws, or (b) on a "need-to-know" basis under an obligation of confidentiality to its consultants, legal counsel, affiliates, accountants, banks and other financing sources and their advisors.

**4.4.** __Ownership of Confidential Information.__ All Confidential Information supplied or developed by either Party shall be and remain the sole and exclusive property of the Party who supplied or developed it.

**4.5** __Survival of Confidentiality Provisions.__ The terms of this Article IV shall survive termination of this Agreement.

## ARTICLE V
## TERM AND TERMINATION

**5.1.**   **Term.**  This Agreement shall commence on the Effective Date, and shall remain in effect for a period of one (1) year, unless terminated earlier pursuant to Section 5.2 of this Agreement.

**5.2.**   **Termination of Agreement.**  Any Party may terminate this Agreement immediately without liability upon written notice to the other Parties if the other Party breaches any term of this Agreement and fails to cure such breach within ten (10) days of receipt of written notice of such breach from the non-breaching Party.  From and after April 1, 2017, any Party may terminate this Agreement for any reason, without cause, by providing thirty (30) days advance written notice to the other Parties.  This Agreement may also be terminated at any time in writing signed by all of the Parties.

**5.3.**   **Termination Assistance Services.**  Upon notice of termination of this Agreement, HCN will cooperate in good faith with the Debtors and the Trust to provide the Debtors and the Trust (or their designee) with reasonable assistance to make an orderly transition from HCN to another supplier of the Services. Following termination of this Agreement, HCN shall continue to provide the Trust reasonable access to the Debtors' books and records, and shall make such information available for copying at the Trust's sole cost and expense.  The terms of this Section 5.3 shall survive termination of this Agreement.

## ARTICLE VI
## INSURANCE

**6.1**   **Maintain Comparable Insurance.**  At all times during the term of this Agreement, HCN shall, subject to insurance market conditions and other factors beyond its control, maintain policies of insurance, including for the benefit of HCN or any of its subsidiaries, directors, officers, employees or other covered Parties, which are comparable to those maintained by the Debtors.

## ARTICLE VII
## LIMITATION OF LIABILITY; INDEMNIFICATION

**7.1.**   **Limitation of Liability.**  HCN, its directors, officers, managers, members, employees and agents (each, a "HCN Party") shall not be liable to the Debtors or the Trust or such Party's directors, officers, managers, members, employees or agents (each, a "Debtor Party") and each Debtor Party shall not be liable to any HCN Party, in each case, for any special, indirect, incidental or consequential damages, of a Debtor Party or an HCN Party arising in connection with this Agreement and the Services provided hereunder.

## ARTICLE VIII
## REGULATORY MATTERS

**8.1**    **Compliance with Laws.**

(a)    In the performance of their respective obligations hereunder, HCN and Debtors shall comply with all applicable regulations and laws and do everything in their power to see to it that Debtor's business conducted therein are in compliance with the rules and regulations of all regulatory bodies, agencies or authorities having jurisdiction over Debtors.

(b)    All amounts due to HCN from the Trust pursuant to this Agreement have been determined by the Parties through good faith and arm's length bargaining to be commercially reasonable and to reflect fair market value. HCN, the Debtors and the Trust have entered into this Agreement with the intent of conducting their relationship and implementing the arrangements described in this Agreement in full compliance with applicable federal, state and local law.

(c)    The Parties shall comply with all privacy and data protection laws, rules and regulations, as applicable now or in the future. HCN confirms that it meets the definition of a "business associate" set forth in the regulations adopted pursuant to the Health Insurance Portability and Accountability Act (hereinafter, the Health Insurance Portability and Accountability Act and its implementing regulations (including, without limitation, the privacy and security regulations adopted at 45 C.F.R. Parts 160 and 164) as they may be amended from time to time are collectively referred to as "HIPAA"), and that this Agreement is subject to the requirements for business associate contracts with health care providers which involve the use of individually identifiable health information ("Protected Health Information"), including the terms of the Business Associate Addendum entered into by the Parties, as the same may be modified or amended, from time to time. HCN acknowledges that Protected Health Information may be provided to HCN in order for HCN to carry out its obligations under this Agreement. HCN may use and disclose the Protected Health Information only for the purposes of performing its obligations under this Agreement. HCN may not utilize or disclose such Protected Health Information for any other purpose.

**8.3**    **Record Retention.**    Upon written request, the Parties shall make available for a period of four (4) years after the furnishing of services under this Agreement to the Secretary of the U.S. Department of Health and Human Services, or any of its duly authorized representatives, this Agreement and any of the Parties' books, documents, and records that are necessary to certify the nature and extent of costs incurred pursuant to this Agreement and which are required to be made available under the Omnibus Reconciliation Act of 1980, Public Law 96-499, Section 952, or any regulation promulgated thereunder. Further, if HCN carries out any of its duties under this Agreement through a subcontract or assignment with a value or cost of $10,000.00 or more over a twelve (12) month period, such contract shall contain a clause to the effect that the contracting organization shall furnish its books, documents, and records upon request as described to verify the nature and extent of costs.

## ARTICLE IX
## GENERAL PROVISIONS

**9.1.    Assignment.** Neither Party may assign this Agreement or any rights or obligations hereunder without first obtaining the written consent of the other Party and the Trust. Subject to the foregoing, this Agreement shall be binding upon, and shall inure to the benefit of, the permitted successors and assigns of the Parties.

**9.2.    Prior Agreements.** This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter of this Agreement. Except as specifically provided herein, this Agreement may be changed only by a written amendment signed by both Parties.

**9.3.    Governing Law.** This Agreement is made in and shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflict of laws rules. Any dispute arising hereunder shall be adjudicated by the Bankruptcy Court. In the event of any lawsuit or other proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to an award of its costs and reasonable attorney's fees incurred at all levels of proceedings.

**9.4.    Severability.** In the event that any provision contained in this Agreement is held to be unenforceable by a court of competent jurisdiction, the validity, legality, or enforceability of the remainder of this Agreement shall in no way be affected or impaired thereby.

**9.5.    Force Majeure.** Any delay or failure by either Party in the performance of this Agreement will be excused to the extent that the delay or failure is due solely to causes or contingencies beyond the reasonable control of such Party.

**9.6.    Counterparts; Headings.** This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. The Article and Section headings in this Agreement are inserted for convenience of reference only and shall not constitute a part hereof.

**9.7    Notices.** All notices given, or that may be required, shall be in writing, and shall be sent to the parties thereto, by registered or certified mail, return receipt requested, or by courier service to the addresses set forth below, and shall be deemed to have been given when received by the Party to whom addressed:

|  |  |
|---|---|
| If to HCN, to: | Health Care Navigator LLC<br>4 West Red Oak Lane, Suite 201<br>White Plains, NY 10604<br>Attention: General Counsel |
| If to Debtors, c/o: | Neligan Foley LLP<br>325 N. St. Paul, Suite 3600<br>Dallas, TX 75201 |

14-50756 - #1289  File 08/26/16  Enter 08/26/16 17:39:34  Main Document  Pg 72 of 78

Attention: Pat Neligan

If to the Trust, to:     _____

    _____

    _____

Attention: _____

[Remainder of Page Intentionally Left Blank]

#40431328 v3

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first set forth above.

**HEALTH CARE NAVIGATOR LLC**

By:_____

    Name:

    Title:

**CHG LEGACY GROUP, LLC, ET AL.**

By:_____

    Name:

    Title:      Authorized Representative

**UNSECURED CLAIMANTS TRUST**

By:_____

    Name:

    Title:

#40431328 v3

## EXHIBIT A

## SERVICES

I.    HCN will, without charge, provide the following consulting and advisory services to the Debtors and the Trust to allow the Debtors and the Trust to comply with the provisions of the Plan, as more specifically described below:

      (a)    Completion and filing of Medicare and Medicaid reimbursement cost reports and related documents

      (b)    Preparation and filing of all tax returns; and informational support, including, *inter alia*, W-2's, 1099s, etc.

      (c)    Close out of all employee benefit programs, including, *inter alia*, pension and 401(k), programs, health coverage and related services.

      (d)    Subject to Section 5.3 of the Agreement, provide reasonable access to financial and related records sufficient to allow the liquidation of remaining claims against the Trust and collection of accounts receivable.

II.    HCN will also provide the following consulting and advisory services to the Debtors and the Trust, consistent with Paragraph 2.1 of the Agreement, to allow the Debtors and the Trust to comply with the provisions of the Plan, as more specifically described below:

      (a)    Legal Services, including informational support for litigation of claims filed by creditors in the Bankruptcy Cases as well as any preference litigation;

      (b)    Information Technology Services, including maintaining and providing access to the Debtors' electronic files as necessary to support Plan activities not otherwise covered by paragraph I(d), above.

      (c)    Additional services as agreed to by HCN, the Debtors and/or the Trust, that are necessary to allow the Debtors and the Trust to comply with the terms of the Plan.

# EXHIBIT B

## FEES

| NAME | HOURLY RATE |
|------|-------------|
| James A. Blalock III | $765 |
| Julie Gutzmann | $625 |
| Raymond Mulry | $575 |
| Support Staff | $265 |

85029v.4

#40431328 v3

**Exhibit F**

**Schedule of TCR Personal Injury Claims**

Attached

84965v.4

# TCR PERSONAL INJURY CLAIMS

The following TCR Personal Injury Claimants filed Proofs of Claim:

Estate of James Acker
Estate of Olive Alego
Estate of John Berry
Estate of Virginia Blevin
Estate of Alphonse Bouchard
Estate of Ora Lee Bryant
Judith Buss
David Deal
Leon Demps
Estate of Joyce Digrazia
Shelia Duerst
Estate of David Ferguson
Estate of Mildred Harpin
Estate of Patricia Harris
Estate of Juanita Henderson
Estate of Ruby M. Holley
Marguerite Jenney
Estate of Odell Jordan
Cloyce McGee-Southerland
Estate of Robert Metzger
Estate of Danuse Mohr
Estate of Calvin Monroe
Estate of Rosemary Mullen
Estate of James Nobles
Estate of Richard Pompei
Estate of Leo Poulin
Charles C. Rutledge, Sr.
Estate of David Santiago
Estate of Eldon Sipes
Estate of Bertha Smith
Henry Virgo
Donald Ware
Estate of Robert Whitmire
Estate of James J. Williams, Jr.
Estate of Beulah Willis
Estate of Verl Miller
Estate of Dorothy Mitchell
Mary Nance
Estate of Tara Oquendo
Estate of Dorthea Trump

Estate of Tillie Marie Fuchs
Estate of Richard Bartley
Estate of Helen Clarke
Donald Hochbaum
Estate of Maria Luisa Rios-Lopez
Estate of Ronald Trim
Estate of Eugene Williams
Estate of Gladys Wogoman
Carlo Baldini
Pheme Webb
Estate of William Waddle
Estate of Stephen J. Hampton
Estate of Esther R. Guccione

84982v.1